**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

United HealthCare Insurance Co.
and AARP,

Plaintiffs,

v.

Civil No. 01-2320 (RHK/JMM)
**MEMORANDUM OPINION AND ORDER**

AdvancePCS,

Defendant.

---

David B. Potter and Bret. A. Puls, Oppenheimer, Wolff & Donnelly L.L.P., Minneapolis Minnesota, and Michael J. Lyle, Christine P. Hsu, Maureen Testoni, and George J. Hazel, Weil, Gotshal & Manges, L.L.P., Washington, D.C., for Plaintiff United HealthCare Insurance Company.

Mark J. Briol and Vicki J. Bitner, Briol & Associates, P.L.L.C., Minneapolis, Minnesota, for Plaintiff AARP.

Scott G. Knudson, Briggs and Morgan, St. Paul, Minnesota, and W. Thomas McGough, Jr., Mary J. Hackett, and Christopher J. Soller, Reed Smith L.L.P., Pittsburgh, Pennsylvania, for Defendant.

---

## Introduction

On March 18, 2002, the Court entered a Memorandum Opinion and Order pursuant to which Defendant AdvancePCS is, inter alia, enjoined from

> (a) approving prescription discount claims containing or otherwise using the carrier number "H020," including but not limited to prescription discount claims using the carrier number "H020" in combination with any of the following group numbers -- 2100, 2200, 2300, 2400, and 3001-3051;
>
> (b) continuing to approve prescription discount claims for any AARP Program participant for whom, prior to September 1, 2001, AdvancePCS



MAR 22 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

approved claims pursuant to its agreement with Retired Persons Services, Inc.;

(c) treating prescription discount claims containing or otherwise using the unique carrier and group numbers that AdvancePCS had utilized as PBM for the AARP Program, including but not limited to the carrier number "H020" in combination with any of the following group numbers -- 2100, 2200, 2300, 2400, and 3001-3051 -- as claims intended for submission to an AdvancePCS prescription discount plan; and

(d) using any identifying information for any AARP Program participants for the purpose of soliciting those participants or encouraging them to enroll in an AdvancePCS prescription discount plan.

Before the Court are three motions by AdvancePCS relating to the foregoing injunction. The first seeks an order staying or suspending the preliminary injunction Order pending appeal. The second seeks an order modifying or clarifying the preliminary injunction. The third seeks an expedited briefing schedule for resolution of the first two motions. The Court directed the Plaintiffs to file and serve responses to the foregoing motions by 9:30 a.m. on Friday, March 22, thereby effectively granting AdvancePCS's request for expedited briefing. The Court addresses the other two motions below.

## I. Motion for a Stay or Suspension of the Preliminary Injunction

AdvancePCS seeks a stay or suspension of the preliminary injunction Order pending its appeal of that decision pursuant to Rule 62(c) of the Federal Rules of Civil Procedure. Rule 62(c) provides that

> [w]hen an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party.

Fed. R. Civ. P. 62(c). In evaluating a motion to suspend (i.e., stay) an injunction pursuant to Rule 62(c), the district court considers four factors: (1) whether the stay applicant has made a strong showing that it is likely to succeed on the merits; (2) whether the applicant will be irreparably harmed absent a stay; (3) whether the issuance of a stay will substantially injure the other parties interested in the proceeding; and (4) whether a stay is in the public interest. United States v. City of St. Paul, 193 F.R.D. 640, 640 (D. Minn. 2000). Thus, the factors to be considered by the Court in evaluating AdvancePCS's Rule 62 motion are virtually identical to the factors considered by the Court in assessing the initial motion for a preliminary injunction.

**1. Likelihood of success on the merits**

In the context of a stay motion under Rule 62(c), the likelihood of success on the merits factor focuses "not necessarily on whether the applicant has shown a likelihood that its appeal will be successful, although this is relevant, but whether the order involves the determination of substantial and novel legal questions." Ben Oehrleins & Sons & Daughter, Inc. v. Hennepin Cty., 927 F. Supp. 348, 350 (D. Minn. 1996) (citing In re Workers' Compensation Refund, 851 F. Supp. 1399, 1401 (D. Minn. 1994)). In support of its motion, AdvancePCS has not called to the Court's attention any "substantial and novel legal questions" presented by the preliminary injunction Order. From the Court's own review of that Order, the only novel question presented appears to be the scope of the private remedy afforded by Minn. Stat. § 325F.71. As that section merely provides a

supplemental penalty for violations of the Minnesota Deceptive Trade Practices Act, it is by no means a question that is central to the Court's Order. The other claim for which the Court found Plaintiffs were likely to succeed on the merits is controlled by basic principles of statutory interpretation and presents neither substantial nor novel issues.

To succeed on its appeal, AdvancePCS must establish that this Court abused its discretion in issuing the preliminary injunction. Thus, the Eighth Circuit must conclude that the district court "clearly erred in its characterization of the facts, made a mistake of law, or abused its discretion in considering the equities." Shen v. Leo A. Daly Co., 222 F.3d 472, 477 (8th Cir. 2000) (internal quotations omitted). The issues raised by AdvancePCS are not persuasive for demonstrating a strong showing of a likelihood of success on appeal.

AdvancePCS argues that "a significant issue on appeal" will be that the Court took no testimony and provided AdvancePCS with no opportunity for cross-examination in deciding the preliminary injunction motion. AdvancePCS has repeatedly contended that there is no "presumption" that motions for injunctive relief are decided on briefs and affidavits as opposed to an evidentiary hearing. This argument plainly ignores the Local Rules of this Court. As Magistrate Judge Mason observed in his March 1, 2002, Order, the 1999 advisory committee notes to Local Rule 7.1 (regarding dispositive motions brought by represented parties) state that "[r]ule 7.1(b)(2) ***specifically contemplates that the factual basis for a dispositive motion will be established with affidavits and exhibits***

***served and filed in conjunction with the*** initial motion and ***responding party's memorandum of law***." D. Minn. L.R. 7.1(b)(2) 1999 adv. ctte. notes (emphasis added). The Local Rule further provides that "[m]otions for injunctive relief . . . are considered dispositive motions for the purposes of this rule." Id. 7.1(b). Although AdvancePCS filed about a dozen exhibits with its responsive brief, it apparently did not deem it necessary to file and serve supporting affidavits until at least two weeks later, after Plaintiffs had already filed and served their reply brief. Thus, AdvancePCS partially complied with the Local Rules. Nor does AdvancePCS take into account that the Court granted its motion for leave to file a surreply brief and additional affidavits, effectively giving it the last word on the motion prior to oral argument. AdvancePCS failed to comply with the Local Rules and did not provide the Court with adequate grounds for making an exception to the Local Rules on dispositive motions.[1] The Court believes that this will not be a significant issue on appeal.

AdvancePCS also complains that, because only a commercial injury -- i.e., harm to Plaintiffs' reputation and goodwill -- and not personal harm to AARP members is at issue, there is a "greatly reduced" need "for emergent enforcement of the Order."

---

[1] AdvancePCS argued that a two-day evidentiary hearing was necessary for the resolution of Plaintiffs' preliminary injunction motion. Dealing only in generalities, AdvancePCS never made an adequate offer of proof (either in a written submission or at the oral argument on the motion) as to (1) who would be called to testify if an evidentiary hearing were held, (2) the substance of the proposed testimony, and (3) why the hearing would require two days.

AdvancePCS does not contend that the Court's conclusion that the threat of harm to Plaintiffs' goodwill and reputation is a "threat of irreparable harm" under Dataphase that justifies injunctive relief. Indeed, AdvancePCS itself argues that, if the preliminary injunction is not stayed, it will be threatened with irreparable harm in the form of harm to goodwill. Furthermore, AdvancePCS ignores the Court's findings that (1) AdvancePCS's conduct is undermining the effectiveness of the Plaintiffs' DUR system and (2) the number of AARP Program participants who benefit from the DUR service is significant.

AdvancePCS further complains that the Plaintiffs' four-month delay in bringing suit and requesting injunctive relief undermines any "emergent circumstances necessitating the immediate enforcement of the Order."[2] In the preliminary injunction Order, the Court dealt with the issue of the alleged "delay" and found it unpersuasive then. It is not more persuasive now.

Finally, AdvancePCS complains that the bond set in this case "appears to have been arbitrary." In opposing Plaintiffs' motion for a preliminary injunction, AdvancePCS presented no evidence concerning the appropriate amount of a bond should an injunction

---

[2] If AdvancePCS will quote from the Court's Order, it behooves it to do so accurately. AdvancePCS asserts that the undersigned "recognized that 'the AARP Program has returned to levels consistent with the activity for the program prior to September 1, 2001.'" (Mem. Supp. Mot. to Stay or Suppress Prelim. Inj. at 4.) AdvancePCS omits the first half of that sentence: "Where chain pharmacies have instituted blocks . . . ." That phrase provides the context for the Court's observation, and is consistent with other evidence before the Court that, where such blocks are not in place, AdvancePCS is still siphoning off the claims of AARP Program participants.

be entered. At the oral argument on the motion, Defendant simply argued that the bond should be set in the amount Plaintiffs have sought as damages – $54 million. The amount of compensatory damages allegedly incurred by Plaintiffs as a result of Defendant's conduct has no obvious bearing on the potential costs and damages to Defendant if an injunction is wrongfully entered.

### 2. Irreparable harm to AdvancePCS absent a stay

AdvancePCS argues that, if the injunction is not stayed pending appeal, it will be forced to reject all claims under the H020 number "regardless of the consumers' voluntary choice to enroll in the AdvancePCS Plan," thus causing irreparable harm to its goodwill and causing it to lose its "substantial business investment in creating, marketing, and launching the AdvancePCS plan." (Mem. Supp. Mot. to Stay or Suppress Prelim. Inj. at 6.) AdvancePCS asserts that, as of February 28, 2002, there were "nearly 10,000" consumers enrolled in its Prescription Plan who "were not enrolled through the adjudication of a claim using the former AARP Program carrier-group numbers."[3] (Mar. 19, 2002 Bessant Aff. ¶ 8.) These enrollment figures were not presented to the Court in

---

[3] AdvancePCS breaks down how many customers have enrolled either through registration with his or her physician (approx. 3,850), or through registration with his or her pharmacist (approx. 1,450), or through registration directly with AdvancePCS (approx. 4,050). (March 19, 2002 Bessant Aff. ¶ 8.) These three groups total ***approximately 9,350*** participants, a figure which AdvancePCS has generously described as "nearly 10,000."

connection with AdvancePCS's opposition to the preliminary injunction.[4]

The record establishes that AdvancePCS has been transmitting various messages to the pharmacists who participate in its network and that those messages encompass more than simply the words "claim rejected." By the Third Affidavit of Kirby Bessant, AdvancePCS has demonstrated that it can identify those customers who have enrolled voluntarily into the AdvancePCS program (as opposed to "through the adjudication of a claim using the former AARP Program carrier-group numbers") and the route through which they became enrolled (physician versus pharmacist versus direct). If AdvancePCS can identify those customers for purposes of its motion to the Court, it stands to reason that AdvancePCS can identify those customers for purposes of transmitting a message to pharmacists that prompts them -- in response to the rejection of a discount claim -- to call AdvancePCS and obtain new carrier and group numbers for submitting the claim. AdvancePCS bears the burden of establishing how these 9,350 voluntary participants would be "displaced" or how AdvancePCS would be foreclosed "from providing the benefits of the AdvancePCS Plan" barring a stay of the injunction. AdvancePCS has

---

[4] Had the Court known that there were approximately 9,350 voluntary participants in the AdvancePCS Prescription Plan, it might have determined that those participants would give rise to a monthly claims volume of only about 28,000 claims -- assuming, that is, that the average number of trips to the pharmacy made by each participant was three, thus causing three discount claims to be submitted to AdvancePCS for each participant. Such a volume obviously represents a mere fraction of the more than 670,000 AARP Program participant claims per month that Plaintiffs complain have been diverted by AdvancePCS's conduct. (Jan. 3, 2002 Hedblom Aff. ¶ 25.)

failed to meet that burden. Without a showing of a threat of irreparable harm, there is no basis for a stay. The Court will deny AdvancePCS's motion for a stay or suspension of the injunction pending appeal.

## II. Motion for and Order Modifying or Clarifying the Preliminary Injunction

AdvancePCS has also moved to modify the March 18, 2002 preliminary injunction Order pursuant to Rule 62(c) of the Federal Rules of Civil Procedure, quoted above. By an Amended Notice of Motion and Motion, AdvancePCS clarified that it was not seeking modification of paragraph 2 of the preliminary injunction Order; thus, the issue before the Court is whether modifications to paragraphs 1(a), 1(b), and 1(d) are appropriate.

AdvancePCS argues that it cannot comply with paragraph 1(b) because "once it closes the carrier-group numbers specified by the Court, it will not know, or be able to determine, whether a new enrollee in its program under a new carrier-group number is or is not also participating in the AARP Program." AdvancePCS complains that paragraph 1(b) prevents it from competing against the Plaintiffs in the discount cash-card market because, although AdvancePCS could relaunch the AdvancePCS Plan with a new carrier number, it would be prohibited by paragraph 1(b) from enrolling AARP Program participants solely because they had participated in the AARP Program.

Plaintiff responds that the key word in paragraph 1(b) is "continuing." The purpose of paragraph 1(b) is to prevent AdvancePCS from continuing to provide services to those who were diverted into and automatically enrolled in AdvancePCS's Prescription

Plan after September 1, 2001. Thus, Plaintiffs argue, "paragraph 1(b) applies only to those individuals that were wrongfully diverted and for whom Defendant is continuing to process claims pursuant to the diversion. It does not prevent Defendant from engaging in legitimate marketing efforts like any other competitor and lawfully enrolling individuals in its plan." (Pls.' Mem. Opp'n to Mot. to Modify at 6-7.)

Plaintiffs are correct that paragraph 1(b) was not intended to prevent legitimate competition between the AARP Program and whatever program AdvancePCS intends to offer the marketplace.[5] Plaintiffs are also correct that the purpose of that paragraph is to prevent AdvancePCS from continuing to process discount claims for AARP Program participants who became "enrolled" in AdvancePCS's plan through the Defendant's adjudication of a claim after September 1, 2001 using the AARP Program's carrier-group numbers. The Court concludes that, to clarify the scope and purpose of paragraph 1(b), it shall be modified to read as follows:

> (b) continuing to approve prescription discount claims for any AARP Program participant because AdvancePCS "enrolled" that AARP Program participant in an AdvancePCS plan through the adjudication of a claim using the former AARP Program carrier-group numbers.

To that extent, the Defendant's motion will be granted.

---

[5] In the affidavits and other submissions filed by AdvancePCS prior to the preliminary injunction hearing, it referred to its program as the "AdvancePCS Prescription Plan." In the Third Affidavit of Kirby Bessant, AdvancePCS refers to its prescription discount plan as the "AdvancePCS $R_X$Savings Program." (Mar. 19, 2002 Bessant Aff. ¶ 4.) AdvancePCS offers no explanation for this change in nomenclature.

AdvancePCS also seeks modification of section 1(a) of the order, arguing that it is overbroad and precludes AdvancePCS from processing the claims of persons who voluntarily enrolled in the AdvancePCS plan and for whom carrier code H020 is used in conjunction with group numbers having nothing to do with the AARP Program. As discussed above, the Court's preliminary injunction order does not "displace" those persons (approximately 9,350) who voluntarily enrolled with AdvancePCS. AdvancePCS can identify those persons in their computer records and can use its network to communicate with pharmacists about those customers and ensure that their claims are processed. Furthermore, AdvancePCS has represented to the Court that it intends to issue cards to these voluntary enrollees "soon." Upon being able to present a card that provides different carrier and group numbers from those used in connection with the AARP Program, there will be no potential confusion for AdvancePCS's customers.

The Court used the phrase "including but not limited to" in relation to the group numbers out of a concern that AdvancePCS may have used other group numbers in connection with the AARP Program of which the Plaintiffs were unaware. As it turns out, the Court was correct. Mr. Bessant's third affidavit identifies an additional number, "3052," about which Plaintiffs did not know. (Mar. 19, 2002 Bessant Aff. ¶ 4.) The Court concludes that it is unnecessary to modify paragraph 1(a).

Finally, AdvancePCS seeks modification of paragraph 1(d), which enjoins AdvancePCS from "using any identifying information for any AARP Program

participants for the purpose of soliciting those participants or encouraging them to enroll in an AdvancePCS prescription discount plan." (Mar. 18, 2002 Mem. Op. and Order at 42.) AdvancePCS argues that this paragraph, construed broadly, "could be read to preclude AdvancePCS from soliciting AARP Program participants after the rejection of a claim because some 'identifying information' (such as the former H020 carrier number) was involved." (Def.'s Mem. Supp. Mot. to Modify at 8.)

Plaintiffs respond that allowing AdvancePCS to market its competing program to each individual AARP Program participant every time AdvancePCS rejects a claim intended for the AARP Program (as directed by the Court's injunction) would circumvent the injunction and in fact allow AdvancePCS to benefit from the questionable conduct that warranted the injunction in the first place. The Court agrees. But for AdvancePCS's administration of the AARP Program, its receipt of membership and eligibility data from AARP and RPS, and its continued use of the carrier-group numbers associated with the AARP Program after having been terminated as the program's pharmacy benefit management company, it would not have such an opportunity to market its competing program to those individuals. The Court declines to modify paragraph 1(d) of the Order.

## CONCLUSION

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS ORDERED** that

1. Defendant's Motion for an Order Expediting Consideration of the Motion to Modify and Motion to Stay (Doc. No. 66) is **GRANTED.**

2. Defendant's Motion to Stay or Suspend the Order Granting the Preliminary Injunction (Doc. No. 64) is **DENIED**.

3. Defendant's Motion to Modify or Clarify the Order Granting the Preliminary Injunction (Doc. No. 61), as amended (Doc. No. 67), is **GRANTED IN PART**. Paragraph 1(b) of the March 18, 2002, Memorandum Opinion and Order, at page 42, is **MODIFIED** to read:

> (b) continuing to approve prescription discount claims for any AARP Program participant because AdvancePCS "enrolled" that AARP Program participant in an AdvancePCS plan through the adjudication of a claim using the former AARP Program carrier-group numbers.

Dated: March 22, 2002

RICHARD H. KYLE
United States District Judge