**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**THIRD DIVISION**

UNITED HEALTHCARE
INSURANCE CO. and AARP,

Civil No. 01-2320 RHK/AJB

Plaintiffs,

vs.

**ORDER ON MOTION TO AMEND**

ADVANCEPCS,

Defendant.

---

This matter came before the Court on Plaintiff's Motion to Amend the Complaint for Punitive Damages. [Docket No. 98]. Hearing was held on March 11, 2003, at the U.S. Courthouse, 316 Robert St., St. Paul, Minnesota. Michael J. Lyle, Esq., Christine P. Hsu, Esq., Mark J. Briol, Esq., Bret A. Puls, Esq., and Amy Ihlan, Esq., appeared on behalf of the plaintiffs, United Healthcare Insurance Company et al. W. Thomas McGough, Jr., Esq., and Christopher J. Soller, Esq., appeared on behalf of defendant, AdvancePCS. Plaintiffs submit that they should be allowed to amend their complaint to include punitive damages. Based on the file, affidavits, memoranda and arguments of counsel,

**IT IS HEREBY ORDERED THAT** Plaintiff's Motion to Amend Complaint for Punitive Damages be **granted** in part and **denied** in part, as provided below. [Docket No. 98].

Dated: 4/18/03

Arthur J. Boylan
United States Magistrate Judge

FILED APR 18 2003
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD_______
DEPUTY CLERK_______

# MEMORANDUM

## BACKGROUND

Plaintiff United Healthcare Insurance Company ("United") operates a prescription drug discount card program for Plaintiff AARP that provides discounted prices on prescription drugs to participating members of AARP. AARP members who wish to participate in the program pay a fee and are provided with a card that entitles them to discounted drug prices from participating pharmacies. In addition, AARP members who participate in certain AARP health insurance policies may use the discount card. Approximately 3.5 million AARP members participate in this drug discount program.

AARP contracts with a pharmacy benefit management company ("PBM"). The PBM is responsible for obtaining pharmacies to participate in the program and issuing cards to AARP participants. The cards issued to the participants contain the participant's name as well as a unique participant number. In addition, the card contains what is sometimes referred to as a "carrier group number." This number is a combination of a "carrier number" and a unique "group number." AARP members would present the cards to the pharmacist who would then electronically transmit the information on the card, as well as the requested prescription, to the PBM. The PBM confirms the person's eligibility and informs the pharmacists of the discounted price for the prescription.

In addition to providing discounted prices, the AARP program provides a Drug Utilization Review ("DUR"). Over nine million adverse drug reactions occur every year in older Americans. To help prevent this from occurring to their members, AARP provides the DUR, which is a process that keeps track of all prescriptions processed by the PBM and alerts the

pharmacy of any potential harmful drug interactions. AARP advertises this benefit to its customers through documentation that accompanies the enrollment forms. The information obtained through the DUR is the property of AARP and not the PBM.

Defendant AdvancePCS was the PBM for the AARP Plan until September 1, 2001. During the time that AdvancePCS was the PBM, AdvancePCS issued cards to all participating AARP members with an assigned carrier number (which was "H020") and a group number that was unique to AARP participants. The cards also contained the defendant's bank identification number (BIN) so that the pharmacy could identify the benefits manager to whom to send the patient information. On the first visit to the pharmacy, the AARP member would present this card to the participating pharmacists. The pharmacists would enter all of the patient information, including the patient identification number, the carrier-group number and the BIN, into the computer. This information was then saved as the "Patient Profile." Since the pharmacist had a Patient Profile stored in the computer, it became standard practice for the pharmacists not to require that the customer present his or her card on return visits. This common practice began while the defendant was the PBM for the AARP program.

In April 2001, AARP selected United to assume operational control of the AARP discount card program. United then selected Express Scripts Inc. ("ESI") to be the PBM. The defendant was advised of this on April 18, 2001. Defendant's relationship with United was terminated as of September 1, 2001. United, through ESI, issued new cards to all AARP members and informed the members that the new prescription drug card would need to be presented to the pharmacists after the effective date of September 1, 2001.

On September 1, 2001, AdvancePCS launched a new "open enrollment" prescription

drug discount program called AdvancePCS Prescription Plan (the "AdvancePCS Plan"). According to affidavits submitted by plaintiffs, the procedures involved with the AdvancePCS plan were contrary to established industry practice. First, the defendant's plan retained the original carrier-group number (H020) of the AARP discount prescription program. Second, AdvancePCS stopped checking the group numbers and patient identification numbers that were used to determine eligibility. These actions by AdvancePCS resulted in all claims with the H020 carrier number, regardless of whether the customer had intentionally enrolled in the AdvancePCS Plan, being processed through AdvancePCS. Plaintiffs have alleged that this resulted in a significant decrease in the number of AARP members participating in the AARP plan as managed by ESI.

According to evidence submitted by plaintiffs, established industry practice is that the PBM reprograms its system to reject claims whose carrier-group number was attached to a program that it no longer services. This then notifies the pharmacists that the customer is no longer eligible for discounts through that program. Since the new AdvancePCS Plan was an "open enrollment" program, no eligibility requirement was necessary. Any AARP member who, as a matter or routine or habit, went to his or her regular pharmacists and requested a prescription would automatically, without the necessity of the customer's knowledge or notice, be processed through the AdvancePCS Plan unless the customer had remembered to bring the new AARP card. Since AdvancePCS continued to accept AARP carrier-group numbers, the pharmacist and customer would not receive notice that the claim was being administered by AdvancePCS and not the AARP plan until after the claim had been processed.

The Patient Profile that had been established during the customers' participation in the

AARP program remained the property of AARP. Because of AARP's proprietary interest in the Patient Profile, AdvancePCS was prevented from using this information. Therefore, if customers presented their drug prescriptions at their usual pharmacy and did not bring their new AARP discount drug card, their prescription would be filed as usual, but through the AdvancePCS plan and without the benefit of the DUR. Plaintiffs have submitted statistics that indicate that the DUR is a significant benefit to the consumer and particularly to the senior citizen.

## DISCUSSION

The plaintiffs claim that the defendant's conduct shows a deliberate disregard for the rights and safety of the AARP members who might unknowingly use the AdvancePCS Plan. Since these customers are unaware that their claim has been processed outside the AARP Plan, they are unaware that they are not covered by the DUR. The plaintiffs contend that the defendant's conduct places those persons relying on the DUR at risk of serious health consequences. In addition, the plaintiffs contend that an AARP customer who may unknowingly have one prescription diverted to the AdvancePCS Plan loses the benefit of the AARP Plan being able to track all of their drug usage since the information from the AdvancePCS system is unavailable to AARP to ensure an accurate DUR.

Plaintiffs also contend that defendant's conduct is in clear disregard of ESI's right to an expectation of a certain number of AARP member participants. Plaintiffs' affidavits clearly show a marked decline in the number of claims processed by pharmacies participating in the AdvancePCS Plan. In addition, plaintiffs allege that these numbers increased drastically in pharmacies where pharmacists were electronically notified when they attempted to process a claim with the H020 number that they should clarify with the customer the plan that was to be

used. Finally, plaintiffs contend that defendant acted with clear disregard for the rights of United with respect to its business relations with the participating pharmacies and the rights of AARP with respect to their continuing good relationship with AARP members, participating pharmacies and pharmacists.

**Punitive Damages**

When a motion to amend the pleadings to include punitive damages for a state law claim comes before this court, the court must apply the procedural standards and requirements of the State of Minnesota. Ulrich v. City of Crosby, 848 F. Supp. 861, 866 (D. Minn. 1994). Under Minnesota Statute, the plaintiff may not claim punitive damages in the original complaint. MINN. STAT. § 549.191. The plaintiff must gain leave of the court to amend the complaint to include a claim for punitive damages. Id. "A plaintiff need not demonstrate an entitlement to punitive damages per se, but only an entitlement to allege such damages." Hern v. Bankers Life Casualty Co., 133 F. Supp. 2d 1130, 1135 (D. Minn. 2001). "[T]he evidence in support of the motion should be thoroughly examined, without considering evidence submitted in opposition." Northwest Airlines, Inc. v American Airlines, Inc., 870 F. Supp. 1499, 1503 (D. Minn. 1994).

The motion "must be accompanied by one or more affidavits showing the factual basis for the claim." MINN. STAT. § 549.191. These affidavits must provide clear and convincing evidence that the defendant acted with a deliberate disregard to the rights and safety of others. Gamma-10 Plastics v. American President Lines, Ltd., 32 F.3d 1244, 1255 (8th Cir. 1994). Deliberate disregard is defined by Minnesota Statute as follows:

> A defendant has acted with deliberate disregard for the rights and safety of others if the defendant has knowledge of facts or intentionally disregards facts that create a high probability of

> injury to the rights and safety of others and: (1) deliberately proceeds to act in conscious or intentional disregard of the high degree of probability of injury to the rights or safety of others; or (2) deliberately proceeds to act with indifference to the high probability of injury to the rights or safety of others.

MINN. STAT. § 549.20 subd. 1(b).

The purpose of allowing punitive damages is "to punish the perpetrator, to deter repeat behavior and to deter others from engaging in similar behavior." Jensen v. Walsh, 623 N.W.2d 247, 251 (Minn. 2001). In an effort to punish and deter one who acts with deliberate disregard of the rights or safety of others more severely than one who merely acts in a negligent manner, "it is therefore appropriate, in determining whether punitive damages should be allowed, to focus on the wrongdoer's conduct rather than to focus on the type of damage that results from the conduct." Id. (explaining why punitive damages should be applied in an action for intentional property damage as well as for an action for personal injury).

**Deliberate Disregard for the Rights or Safety of Others**

**A. Deliberate Disregard for the Economic Rights of Others**

AdvancePCS deliberately continued to use the carrier-group number for AARP members even after the AARP program had been terminated. Plaintiffs have submitted evidence that AdvancePCS was well aware of the confusion caused by the old AARP Plan numbers being retained as active. Internal memos from AdvancePCS indicate a dramatically increased number of phone calls to the customer help line that were caused by pharmacist's confusion as to the AARP carrier-group number remaining as a valid claim processing number.

According to internal memos from AdvancePCS, the standard procedure was for the PBM to terminate the carrier-group number when it no longer was the manager of that particular

drug discount plan. Failure to reprogram the claim processing number system led to consumer confusion, which may have resulted in customers being unknowingly diverted to AdvancePCS's Plan.

Plaintiffs' affidavits also demonstrate that AdvancePCS was aware that customers were being diverted from using the AARP Plan to the economic detriment of those managing that plan. In considering plaintiffs' affidavits, and not considering evidence submitted by the defendant in opposition to this motion, Northwest Airlines, Inc., 870 F. Supp. 1499, 1502 (D. Minn. 1994) (finding plaintiff's evidence sufficient to allow a plea of punitive damages without examining defendant's evidence to the contrary), the evidence submitted by plaintiffs demonstrates a prima facie case for punitive damages by showing clear and convincing evidence that AdvancePCS acted with deliberate disregard for the economic rights of the managers of the AARP Plan.

**B. Deliberate Disregard for the Safety of the AARP Members**

According to affidavits submitted by plaintiffs, the new AdvancePCS Plan caused considerable confusion. During the initial stages of the new AdvancePCS Plan, AdvancePCS received a substantial increase in calls to its help line. Internal documents from AdvancePCS indicate that over fifty percent of the call volume was due to confusion over the lack of a rejection notice for the termination of AdvancePCS as the administrator of the AARP Plan. This confusion indicates that AARP members were unaware of the possible diversion of their claims. If an AARP member was diverted unknowingly to the AdvancePCS Plan, that customer would unknowingly be at risk for possible negative drug interactions. Plaintiff has submitted affidavits demonstrating the relatively high incidence of negative drug interaction notices, and the related

alerts issued to the consumer, when the PBM had that customer's accurate DUR. This information was available to defendant and, as a long-term participant in this business, AdvancePCS would have been well aware of the value of the DUR to the customer's safety. This constitutes a prima facie showing that AdvancePCS deliberately disregarded the safety of the senior citizens that had inadvertently been diverted from their AARP membership program to the open enrollment AdvancePCS program.

### C. The Scope of the Minnesota Punitive Damages Statute with Respect to "Others"

AdvancePCS argues that ESI and the AARP senior citizen members are not included in the meaning of "others" in Minnesota Statute section 549.20 subdivision 1(b). The Minnesota statute does not define the scope of "others," nor have Minnesota courts published case law specifically addressing this issue. This court, however, remains unpersuaded that the Minnesota Statute requires such a narrow reading. Section 549.20 mentions "others" in general terms, not specifically related to a particular individual or the plaintiff in the action.

In addition, section 549.20 lists specific factors by which punitive damages may be properly measured. See MINN. STAT. § 549.20 subd. (3). These factors all relate to the defendant and the defendant's conduct. Id. The statute includes factors such as the profitability of the misconduct to the defendant, the duration of the misconduct, the attitude and conduct of the defendant upon discovery of the misconduct, and total effect of the other punishment to the defendant. Id. The type of injury or person injured is not relevant according to the factors listed in the statute. Since the statute focuses on the defendant's conduct, and not on the injury suffered or who suffered the injury, this court is not persuaded that "others" in Minnesota Statue section 549.20 refers solely to a party to the legal action. The language of the statute indicates that the

scope of the statute should be interpreted more broadly than the defendant suggests. For the above reasons, the court finds that defendant's deliberate disregard to the rights and safety of ESI and AARP members may be considered when determining if punitive damages may be pled in the amended complaint.

**Unjust Enrichment**

The claim of unjust enrichment is a quasi-contractual claim where, in the interest of justice, the court implies a contract between the parties. Southtown Plumbing, Inc. v. Har-Ned Lumber Co., Inc., 493 N.W.2d 137, 140 (Minn. Ct. App. 1992). Minnesota courts have not addressed the issue of whether or not punitive damages may be applied to a claim of unjust enrichment. Under Minnesota law, however, punitive damages are not allowed for breach of contract even if the breach was done with malice. Barr/Nelson, Inc. v. Tonto's, Inc., 336 N.W.2d 46, 53 (Minn. 1983); In re Silicon Implant Ins. Coverage Litigation, 652 N.W.2d 46, 74 (Minn. Ct. App. 2002) ("Punitive damages are not permitted in breach-of-contract cases absent an independent tort."). This court will apply Minnesota law with respect to contract theory towards remedies available in an unjust enrichment claim. Since a breach-of-contract action may not sustain a claim for punitive damages, this court declines to extend punitive damages to a claim of unjust enrichment.

## CONCLUSION

According to the arguments set out above, plaintiffs may not amend the complaint to include punitive damages with respect to the unjust enrichment claim. Plaintiffs have properly shown, however, a prima facie case that AdvancePCS acted with deliberate disregard for the economic rights of ESI and with deliberate disregard for the safety of AARP members. An order

on a motion to amend the pleadings to add punitive damages decides only whether plaintiffs have shown a prima facie case of defendant's deliberate disregard for the rights or safety of others. See MINN. STAT. 549.191.[1] Here, they have done so. Whether or not plaintiffs will receive such damages is an issue to be decided only after full discovery and an examination of all the evidence.

AJB

[1] Defendant argues that since AARP was unable to provide the DUR for AARP members for a short period during the transition of the program management, the plaintiffs come with unclean hands. This argument is unpersuasive, though, since punitive damages is not an equitable claim but a legal one. See, MINN. STAT. § 549.191.