IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| UNITED HEALTHCARE INSURANCE CO. and AARP, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 01-CV-2320 RHK/AJB |
| ADVANCEPCS, | ) | |
| Defendant. | ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF OBJECTIONS/APPEAL FROM JUNE 14, 2004 AND JUNE 18, 2004 ORDERS OF MAGISTRATE JUDGE BOYLAN**

WEIL, GOTSHAL & MANGES LLP
1501 K Street NW, Suite 100
Washington, DC 20005
(202) 682-7000
(202) 857-0940 (fax)

BRIOL & ASSOCIATES, PLLC
3700 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
(612) 337-8410
(612) 337-5151 (fax)
Attorneys for Plaintiff AARP

OPPENHEIMER WOLFF & DONNELLY LLP
Plaza VII, Suite 3300
45 South Seventh Street
Minneapolis, MN 55402
(612) 607-7000
(612) 607-7100 (fax)
Attorneys for Plaintiff United HealthCare Ins. Co.

## INTRODUCTION

With a pair of orders relating to pre-trial expert discovery, Magistrate Judge Boylan has arbitrarily limited the testimony of fact witnesses and placed Plaintiffs in an untenable position that severely prejudices their ability to fairly present their case at trial. While the original scheduling order in this matter limited the parties to five "experts" (which Plaintiffs always understood to mean traditional litigation experts), Magistrate Boylan has now broadened that limit to include fact witnesses with opinion testimony incidental to and helpful to the understanding of their factual testimony. While Plaintiffs properly disclosed their three traditional litigation experts, AdvancePCS has made clear that it will attempt to leverage the Magistrate Judge's orders to exclude otherwise admissible testimony from numerous fact witnesses Plaintiffs may offer at trial. Much of this probative, admissible testimony from Plaintiffs' fact witnesses is in direct rebuttal to positions taken by AdvancePCS in this case and, in some instances, was in direct response to AdvancePCS's attempts to impeach these fact witnesses during deposition discovery. Because the orders are prejudicial, clearly erroneous and contrary to law, Plaintiffs move this Court for an appeal under Local Rule 72.1(b).

## BACKGROUND

In their Fed. R. Civ. P. 26(a)(2) expert disclosure, Plaintiffs timely and appropriately disclosed the three expert witnesses who they retained and who they may call at trial to provide expert witness testimony (together with Rule 26(a)(2)(B) expert reports for each). Plaintiffs also listed, under Rule 26(a)(2)(A), certain non-party, lay witnesses who Plaintiffs thought "may be used at trial to present evidence under Rules 702, 703 or 705 of the Federal Rules of Evidence." Fed. R. Civ. P. 26(a)(2)(A). Plaintiffs only did so in an overabundance of caution, because these lay witnesses offered, in response to deposition questioning by AdvancePCS's counsel, incidental opinion testimony based on their own perception and personal knowledge that *could*

be argued by AdvancePCS to cross into the realm of Federal Rule of Evidence 702.[1]

Notwithstanding Plaintiffs' proper and timely Rule 26(a)(2) disclosures, AdvancePCS moved to compel Plaintiffs to further identify as "experts" *any* individual who *will* offer Rule 702 opinion testimony at trial and limit the number of such individuals to five. During oral argument on Defendant's motion, Magistrate Judge Boylan ruled that, in addition to the required disclosures for "retained experts" under Rule 26(a)(2)(B), the parties would be required to produce further disclosures for every other individual (whether retained expert or pure fact witness) identified under Rule 26(a)(2)(A). The order required these disclosures to provide a summary of each individual's opinions and the bases therefore. Magistrate Boylan also ordered that each side may call no more than five "expert" witnesses at trial and that all employee and non-employee lay witnesses, who have not been retained or specially employed, shall count toward the limit of five. See Exhibit A to the Affidavit of Bret A. Puls ("Puls Aff.").

Recognizing a possible ambiguity in the Magistrate Judge's ruling, under which it could be suggested that even lay witnesses with incidental Rule 702 opinion testimony could count toward the five expert limit at trial, counsel for United contacted Defendant's counsel to confirm Plaintiffs would only be calling three traditional expert witnesses (i.e., retained experts or other individuals who are provided facts and data outside their own knowledge and asked to render an opinion thereon for purposes of trial) and that none of the Plaintiffs' lay witnesses will be called to testify as a traditional litigation expert. Plaintiffs' counsel sought to confirm the understanding that the five expert limit applies only to traditional litigation experts—not lay witnesses who might give incidental opinion testimony. Defendant, however, took the position

[1] See Express One Int'l. v. Sochata, 2001 WL 363073 at *5 (N.D. Tex 2001) (noting that given "the lack of clarity in the cases concerning the distinction between lay and expert opinions, it is very risky for a party not to designate such persons" under Rule 26(a)(2)(A)).

that the Magistrate Judge intended to include pure fact witnesses with incidental Rule 702 opinion testimony within the five "expert" limit. This placed Plaintiffs in an untenable and prejudicial position because it arguably limits the number of *fact* witnesses they can call at trial, simply because such individuals *may* incidentally offer opinion testimony helpful to the understanding of their own factual testimony, if that testimony *may* be argued to constitute Rule 702 testimony at trial.

In an attempt to remedy the potential ambiguity and to avoid prejudice and confusion at trial, Plaintiffs submitted the required two-page letter to Judge Boylan under Local Rule 7.1(g), seeking leave to file a motion to clarify/reconsider. The letter summarized Plaintiffs' request that the Court make clear that the five expert limit under the scheduling order applies only to traditional litigation experts and was not intended to apply to fact witnesses whose testimony, based on their own factual observations and personal knowledge, may include incidental opinion testimony. See Puls Aff., Ex. B.

On June 18, 2004, Judge Boylan held an informal conference call to address the matter. The result of that conference call was another order that maintained the prejudicial requirement that any witness, whether lay or expert, party or non-party, who *may* offer any Rule 702 testimony at trial would count toward the five "expert" limit. See Puls Aff., Ex. C. Moreover, and despite the fact that neither party requested such a ruling, Judge Boylan broadened his order to require that any *lay* witness who might offer opinion testimony under Rule 701 (lay opinion) must likewise be disclosed and must likewise provide a disclosure summarizing his/her lay opinions. Id. The order is not only prejudicial, confusing and nearly impossible to comply with, but is also fundamentally contrary to the Rules of Civil Procedure and Rules of Evidence. For this reason, Plaintiffs hereby appeal the Magistrate Judge's orders pursuant to Local Rule 72.1(b)(2).

## ARGUMENT:

### EXTENDING THE FIVE "EXPERT" LIMIT TO FACT WITNESSES WITH INCIDENTAL OPINION TESTIMONY IS CLEARLY ERRONEOUS AND PREJUDICIAL TO PLAINTIFFS

The Court must modify or set aside any portion of a Magistrate Judge's order found to be clearly erroneous or contrary to law. See 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); Local Rule 72.1(b)(2). "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Chakales v. Comm'r of Internal Revenue, 79 F.3d 726, 728 (8th Cir. 1996). The orders from which Plaintiffs now appeal contain two clearly erroneous requirements that will cause substantial prejudice to Plaintiffs and significant confusion relating to the introduction of witness testimony at trial.

By extending the five expert limit to pure fact witnesses with incidental opinion testimony, Magistrate Judge Boylan's orders are erroneous and prejudicial to Plaintiffs at trial. While courts have significant discretion in managing cases before them, an arbitrary limit on the number of witnesses, even traditional expert witnesses, is improper and prejudicial in most circumstances. For example, under Fed. R. Civ. P. 16, a court may limit the time of trial, may preclude duplicative and cumulative testimony, and may facilitate the "just, speedy and inexpensive disposition of the action." Express One Int'l, Inc. v. Sochata, 2001 WL 363073 (N.D. Tex. 2001). However, there is "nothing in the Federal Rules or in the cases which specifically gives the court authority to limit the number of experts a party can designate." Id.; see also Green Constr. Co. v. Kan. Power & Light Co. 1 F.3d 1005, 1014 (10th Cir. 1993) ("It is certainly within the district court's discretion to limit the number of experts, *provided the witnesses are not excluded arbitrarily, or on the basis of mere numbers*.") (Emphasis added). Further, while limits on the number of witnesses a party may call can increase the speed of trial

and decrease litigation costs, such limits are not valid if they deny a party the opportunity to effectively present its case. U.S. v. Downing, 753 F.2d 1224, 1243 n.27 (3d. Cir. 1985) ("[I]f the testimony is highly probative and meets the conditions set forth above concerning reliability, the likelihood of misleading the jury, and the requisite specificity in the offer of proof, the parties are entitled to present it, whether or not it adds to the length of the trial . . . .").

Plaintiffs did not object to the limit placed on the number of expert witnesses, because Plaintiffs always understood the limit applied to traditional litigation experts (i.e., retained experts or other individuals who are provided facts and data outside their own knowledge and asked to render an opinion thereon for purposes of trial). See, e.g., Duluth Lighthouse For the Blind v. C.G. Bretting Mfg. Co., Inc., 199 F.R.D. 320, 324 (D. Minn. 2000) (suggesting that the difference between a traditional litigation expert witness and a fact witness with incidental opinion testimony is the provision of facts outside the witnesses' own perceptions and the witnesses' ability to respond to hypothetical questioning); Hartzell Mfg., Inc. v. American Chemical Technologies, Inc., 899 F.Supp. 405, 408-409 (D. Minn. 1995) (same). However, it simply goes too far to extend that arbitrary limit to any witness, including a pure fact witness, who utters one sentence of factually-based opinion testimony deemed at trial to cross into the realm of Rule 702 due to his or her background or experience. The probative, non-cumulative testimony of fact witnesses, including incidental opinion testimony, is proof that Plaintiffs are entitled to present at trial.[2]

---

[2] In Express One, plaintiffs were permitted to call seventeen "Provisional Experts" who were allowed to testify "as to opinions and inference which [were] rationally based on their actual perception, *including* scientific and technical matters," despite defendant's contention that the number of experts was excessive. Id. (emphasis in original). Responding to this argument, the court noted that because Express One "merely wants to insure a Provisional Expert's testimony about matters actually perceived by the witness will not be kept out of evidence, I do not find abuse by Express One . . . ." Id. Similarly, in Hartzell Mfg., Inc. v. Am. Chem. Technologies, Inc., 899 F. Supp. 405, 409 (D. Minn. 1995), the court allowed a Rule 701 employee witness to

To bring the abstract to the concrete, Plaintiffs retained Arthur Cobb, Claude Martin and John Maxwell as expert witnesses in this case. See Puls Aff., Ex. D. Plaintiffs provided them facts and, in some cases assumptions, outside their own knowledge and asked each to render an opinion relating to this case. Each expert was properly and timely disclosed and each properly and timely provided a written expert report meeting the requirements of Rule 26(a)(2)(B). These are precisely the type of individuals Plaintiffs have always understood to fall under the scheduling order's definition of an "expert" and are the type of individuals to whom Plaintiffs understood the five "expert" limit would apply.

By contrast, certain non-party fact witnesses responded to deposition questioning by AdvancePCS with opinion testimony incidental to and helpful to the understanding of their factual testimony. Such witnesses include Bob Dufour, an employee of Wal-Mart pharmacies; Thomas Morrison and Mary Ellen Mitchell, employees of CVS pharmacies; Marjorie Simos and Charles Kneese, who at the time of the transition were employees of ESI; and Edwin Hedblom, a former United employee. Each of these individuals have factual knowledge of the events and occurrences giving rise to this action. The CVS and Wal-Mart employees, for instance, have direct factual knowledge of how AdvancePCS's actions impacted pharmacies, pharmacists and in some cases customers. Charles Kneese from ESI had contact with and communications with pharmacy chains prior to and after AdvancePCS began improperly diverting claims from the

---

testify "to the knowledge that he has gained from industry experience, and from his review of the records prepared . . . in the ordinary course of business." The court also noted that "the mere fact that the witness, by virtue of his education, training or experience, is capable of being qualified as an expert, does not serve as a valid objection to his expression of lay opinion testimony." Id., citing Farner, 562 F.2d at 529; see also Allied Systems, Ltd. v. Teamsters Automobile Transport Chauffeurs, 304 F.2d 785, 792 (8th Cir. 2002) (allowing lay opinion testimony); Duluth, 199 F.R.D. 320 (same); Teen-Ed, Inc. v. Kimball Intern., Inc., 620 F.2d 399, 409 (3rd Cir. 1980) (allowing lay witnesses to "testify to the knowledge that he has gained from his industry experience. . . .").

AARP Program. Marjorie Simos was the primary contact between ESI and AdvancePCS leading up to the transition and has direct factual knowledge of admissions made by AdvancePCS that it represented it would no longer process AARP Program claims after it was terminated as PBM for the program. Simply put, these individuals are fact witnesses, not "expert" witnesses in the traditional sense.

Concomitant with their factual testimony, these individuals responded to questioning by AdvancePCS with incidental opinion testimony that was based on their own factual observations and knowledge. None of these lay witnesses were provided materials outside their own knowledge and none were asked to make assumptions or render opinions on Plaintiffs' behalf. Instead, in response to questions posed by AvancePCS's counsel, they offered testimony directly rebutting positions taken by AdvancePCS in this case. For instance, Charles Kneese, a senior director for network services for ESI, stated in response to questions posed ***by AdvancePCS*** that:

> Q. You had mentioned when we were talking this morning and in your affidavit about the rejection notice that you believe should have been sent by AdvancePCS. Is there a particular message that is required in this circumstance that AdvancePCS is to send?
>
> A. I think the minimum in my opinion that should have been returned was the NCPDP standard that the member is not eligible.
>
> * * *
>
> A. AdvancePCS or any other PBM for that matter does not have to go to NCPDP and say, 'What message should we use?' I think there is a certain expectation, a certain standard, according to, you know, the industry and how business is conducted that would dictate that that message should have been the one used.

Puls Aff., Ex. E. As another example, Bob Dufour, an employee with Wal-Mart pharmacies, stated during his deposition:

> Q. Why do you disagree with me?
> A. . . . I understood what AdvancePCS was doing, and I very much disagreed that it was a wrong way to do business. If they presented CCP02 to us in a manner of saying this is open enrollment, that is one thing. Its another business situation to say not only we're going to have open enrollment, but we're losing a major plan

> and we're going to convert them without their knowledge . . . this situation, I think, this was handled the wrong way.
>
> * * *
>
> Q. Yeah. You don't think that that causes any confusion where the pharmacist receives a rejection and has to tell the customer that their claim has been rejected, your card is invalid.
> A. There may be cases where it does, but the vast majority, I don't think it does.
> Q. And upon what experience to you base that?
> A. Experience as a pharmacist and also working in third-party administration.

Puls Aff., Ex. E. Again, this testimony was elicited ***by AdvancePCS***. AdvancePCS has made clear, however, that it may now attempt to argue that such testimony, which was largely elicited by AdvancePCS and which is damaging to positions taken by AdvancePCS in this litigation, should now be excluded simply because it *might* be construed to fall within Rule 702.

By including, without adequate justification, within the five "expert" limit those witnesses whose testimony *may* include incidental 702 opinion, the Magistrate Judge has, at this pretrial stage, arbitrarily barred Plaintiffs from effectively presenting their case to the District Court, and more importantly, to the jury.[3] Plaintiffs maintain that the above testimony, and similar testimony from these and other witnesses, is properly admissible as lay opinion testimony under Rule 701, or at most as incidental Rule 702 testimony, necessary to lay the foundation for and helpful to to the understanding of factual testimony. See U.S. v. Martinez-Figueroa, 363 F.3d 679, 682-83 (8th Cir. 2004) (permitting lay opinion testimony "to help the jury or court understand the facts about which the witness is testifying. . ..."); Allied Systems, Ltd. v. Teamsters Automobile Transport Chauffeurs, 304 F.2d 785, 792 (8th Cir. 2002) ("Personal knowledge or perception acquired through review of records prepared in the ordinary course of

---

[3] See, e.g., Giladi v. Strauch, 2001 WL 103553 (S. D. N. Y. 2001) (magistrate refused to prohibit admissibility or limit number of experts plaintiffs could call, noting that "[a]dmissibility is more properly determined by Judge Berman at trial, and my ruling on the discovery issue is not intended to prejudge that issue.").

business, or perceptions based on industry standards is a sufficient foundation for lay opinion testimony."). Notwithstanding, it is clear that AdvancePCS will argue that such testimony is purely Rule 702 "expert" testimony and attempt to leverage the Magistrate Judge's scheduling order as a means to keep from the jury probative testimony rebutting AdvancePCS' positions. The Magistrate Judge's orders should not be allowed to be used as such an improper tool for AdvancePCS to circumvent Plaintiffs' due process right to present probative testimony at trial. Because the Rules of Civil Procedure provide no authority to limit the number of witnesses in this manner and because the extension of the five "expert" limit to lay witnesses is contrary Plaintiffs' right to a fair trial, the Magistrate's decision was clearly erroneous and contrary to law.

The Magistrate Judge's additional requirement of disclosure summaries of any and all opinion testimony from fact witnesses is likewise contrary to law *on its face*.[4] Fed. R. Civ. P. 26 sets out, explicitly and in great detail, the procedures for expert opinion discovery. "Rule 26(a)(2) of the Federal Rules of Civil Procedure does not require a party to provide the name of any person who may be used at trial to present evidence under Rule 701." Wilburn v. Maritrans GP Inc., 139 F.3d 350, 356 (3rd Cir.1998). Nor does it require production of expert witness reports for witnesses who are not "retained or specially employed to provide expert testimony in the case." Moore's Federal Practice 3d § 26.23[1]-26.23[2][d][i] at 26-66, 26- 67, 26-70.

[4] It is pertinent to point out that neither the initial scheduling order in this matter nor Defendant's motion to compel further disclosure of "experts" addressed anything related to lay opinion testimony to be offered at trial by fact witnesses under Federal Rule of Evidence 701. The matter before the Magistrate Boylan had nothing to do with fact discovery, but rather simply related to testimony of expert witnesses and the disclosure of such witnesses during expert discovery. The *sua sponte* decision by Magistrate Judge Boylan to require identification of fact witnesses and disclosure of reports summarizing any potential Rule 701 testimony that *could* come from the mouths of such witnesses at trial was simply outside the scope of the issue brought before the Court.

Simply put, nothing in the Federal Rules of Civil Procedure or the Local Rules of Practice support the Magistrate Judge's order requiring written descriptions of fact witness opinion testimony.[5] The Magistrate Judge's erroneous change in the Rules is especially prejudicial to Plaintiffs, because the Magistrate's order impermissibly removes AdvancePCS's burden of discovery, instead assigning to Plaintiffs the burden of making affirmative disclosure of potential trial testimony.[6] Because the Federal Rules of Civil Procedure provide no authority for a court to alter the discovery rules in the manner prescribed by the Magistrate, the Magistrate's order was clearly erroneous and contrary to law.

## CONCLUSION

For the foregoing reasons, the June 14, 2004 and June 18, 2004 orders entered by Magistrate Judge Boylan are prejudicial to Plaintiffs, clearly erroneous and contrary to law. Accordingly, Plaintiffs request, pursuant to Fed. R. Civ. P. 72(a) and Local Rule 72.1(b), that this Court set aside the portions of those orders including fact witnesses, rather than traditional litigation experts, within the five "expert" limit and the portions of those orders requiring disclosures of opinion testimony beyond that which is required by Fed. R. Civ. P. 26(a)(2)(B).

---

[5] Nor does there exist just reason for the Magistrate Judge's ruling in this regard. Defendant had the opportunity during fact discovery, which closed on March 1, 2004, to explore any such opinion, and in many cases did.[5] See, e.g., Hartzell, 899 F.Supp. at 410 (noting that there would be no harm for a party to introduce an employee lay witnesses to testify "on matters which, arguably have the content and flavor of expert opinion," where the opposing party had a fair opportunity to depose the individual prior to trial).

[6] Furthermore, the disclosure the Magistrate's order requires potentially violates the work product doctrine. Information or materials assembled in anticipation of litigation or in preparation for trial are discoverable only upon a showing of substantial need and undue hardship by the party seeking discovery. Fed. R. Civ. P. 26(b)(3). Strategies, plans, memoranda, notes, and summaries of potential witness testimony fall squarely within the scope of the rule. See, e.g., In re Atl. Fin. Sec. Litig., 121 F.R.D. 141, 144 (D. Mass 1988); Chiperas v. Rubin, No. CIV. A. 96-130, 1998 WL 531845, at *1 (D.D.C. 1998).

Dated: June 28, 2004

Respectfully submitted,

s/Bret A. Puls

David B. Potter (MN #121642)
Bret A. Puls (MN #305157)
OPPENHEIMER WOLFF & DONNELLY LLP
Plaza VII, Suite 3300
45 South Seventh Street
Minneapolis, MN 55402
(612) 607-7000
(612) 607-7100 (fax)

-and-

Michael J. Lyle
Holly E. Loiseau
Christine P. Hsu
Eric C. Lyttle
WEIL, GOTSHAL & MANGES LLP
1501 K Street NW, Suite 100
Washington, DC 20005
(202) 682-7000
(202) 857-0940 (fax)

Attorneys for Plaintiff United HealthCare Ins. Co.

s/Mark J. Briol

Mark J. Briol (MN #126731)
Vicki J. Bitner (MN #213998)
BRIOL & ASSOCIATES, PLLC
3700 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
(612) 337-8410
(612) 337-5151 (fax)

Attorneys for Plaintiff AARP