Only the Westlaw citation is currently available.

NOTICE: THIS OPINION IS DESIGNATED AS UNPUBLISHED AND MAY NOT BE CITED EXCEPT AS PROVIDED BY MINN. ST. SEC. 480A.08(3).

Court of Appeals of Minnesota.

CASINO RESORTS, INC., Appellant,
v.
MONARCH CASINOS, INC., Respondent,
Casino Resource Corporation, Respondent.

No. C3-97-843.

Dec. 30, 1997.

Hennepin County District Court, File No. 9519558.

James V. Roth, James V. Roth, P.A., 1221 Nicollet Mall, Suite 305, Minneapolis, MN 55403 (for appellant)

Carleton R. Hoy, Hoy & Hoy, P.O. Box 1800, Sioux Falls, SD 57101-1800, (for respondent Monarch Casinos, Inc.)

Lawrence A. Moloney, Doherty, Rumble & Butler, 3500 Fifth Street Towers, 150 South Fifth Street, Minneapolis, MN 55402-4235 (for respondent Casino Resource Corporation)

Considered and decided by LANSING, Presiding Judge, HUSPENI, Judge, and WILLIS, Judge.

UNPUBLISHED OPINION

LANSING, Judge.

*1 This appeal involves a failed gaming opportunity contemplated between Casino Resorts, Inc. and Monarch, Inc. Casino Resorts challenges the summary judgment dismissing its contract claim against Monarch and its tortious interference claims against a competing gaming developer, Casino Resource Corporation. Because we find no genuine issues of material fact and because the district court did not err in its application of the law, we affirm.

FACTS

Casino Resorts bases its claims on a letter of intent, drafted by its president and executed by Casino Resorts and Monarch in July 1993. In the letter of intent, Casino Resorts' predecessor corporation expressed an interest in acquiring certain gaming-related assets held by Monarch. The document specifically states that the contemplated transaction is subject to three conditions precedent: (1) a definitive and mutually satisfactory purchase agreement, (2) shareholder approval of the purchase agreement, and (3) approval by respective counsel. Monarch agreed that after acceptance of the letter of intent and prior to the closing date, neither Monarch nor its agents would directly or indirectly initiate or solicit any discussions or negotiations with any third party.

The original closing date was set for July 31, 1993. Casino Resorts, however, decided not to go forward with this closing date or a subsequent closing date tentatively scheduled for November 1993. No purchase agreement was ever prepared or executed, and Casino Resorts never held a shareholders' meeting. Casino Resorts claims, however, that it was ready to proceed but was waiting for Monarch to provide it with a valuation of Monarch's assets.

In March 1994, approximately eight months after the execution of the letter of intent, Monarch negotiated a preliminary agreement with the Tribal Chairman of the Pokagon Band of Potawatomi Indians to provide management of its proposed gaming activities. The agreement provides that if the Pokagon Band obtained federal recognition and decided to consider entering into gaming activities, Monarch would be given the first opportunity to present and negotiate a management agreement.

In an effort to raise capital to finance

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Westlaw.

EXHIBIT F

potential gaming related transactions, including the Pokagon opportunity, Monarch prepared a document entitled "Market Strategy, Analysis and Financial Projections" ("market report") in the fall of 1994 and sent it to potential investors. The document made no mention of Casino Resorts, Inc., or the July 1993 letter of intent. The market report did, however, refer to "Casino Resorts of Washington and Michigan, Inc." approximately fifty-eight times. Casino Resorts of Washington was a shell corporation established by Casino Resorts' president at Monarch's request and in conjunction with potential but ultimately unrealized gaming opportunities in Washington. Casino Resorts of Michigan was never actually incorporated.

Casino Resource Corporation (CRC) was among the potential investors initially contacted by Monarch in the fall of 1994, and on January 4, 1995, CRC and Monarch executed a memorandum of understanding, providing for joint pursuit of the Pokagon project and two other projects. Under the agreement, any rights Monarch possessed with respect to the Pokagon project were to be transferred to CRC, which loaned Monarch funds to cover the expenses of developing the gaming opportunities.

***2** In mid-January 1995, Casino Resorts learned of the agreement between CRC and Monarch. Casino Resorts notified both Monarch and CRC that it believed it still had a binding letter of intent with Monarch and claimed that, in anticipation of closing, Casino Resorts had raised, with Monarch's knowledge, in excess of $500,000 before December 1994. Monarch and CRC proceeded with their agreement.

Casino Resorts sued Monarch for breach of contract. Casino Resorts also sued CRC for tortious interference with contractual relations and tortious interference with prospective business advantage. The district court granted both Monarch's and CRC's motions for summary judgment. The court reasoned that the evidence of damages was purely speculative, Casino Resorts had failed to perform the requisite conditions precedent, and CRC lacked sufficient knowledge of the purported contract between Casino Resorts and Monarch to intentionally interfere. Casino Resorts now appeals.

DECISION

Summary judgment is appropriate when the pleadings, depositions, interrogatories, affidavits, and admissions on file "show that there is no genuine issue as to any material fact" and that the litigant is entitled to judgment as a matter of law. Minn. R. Civ. P. 56.03. To withstand summary judgment the claimant must put forward evidence sufficient to establish the existence of all elements essential to its case. *Lubbers v. Anderson,* 539 N.W.2d 398, 401 (Minn.1995). In reviewing summary judgment, this court views the evidence in "the light most favorable to the party against whom judgment was granted." *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993).

I

A condition precedent is one that must be performed before the agreement of the parties becomes operative. *Lake Co. v. Molan,* 269 Minn. 490, 498, 131 N.W.2d 734, 740 (1964). If the event required by the condition does not occur, there is no breach of contract because the contract is unenforceable. *Aslakson v. Home Sav. Ass'n,* 416 N.W.2d 786, 789 (Minn.App.1987). One who has caused the nonperformance of a condition precedent, however, cannot take advantage of the nonperformance. *Olson v. Penkert,* 252 Minn. 334, 343, 90 N.W.2d 193, 200 (1958).

It is undisputed that none of the conditions precedent were performed; Monarch and Casino Resorts did not obtain the approval of their respective counsel, a purchase agreement was never drafted, Casino Resorts did not seek or obtain the approval of its shareholders, and a closing never occurred. Casino Resorts claims, however, that Monarch's failure to quantify its assets prevented Casino Resorts from satisfying the conditions precedent. Accordingly, Casino Resorts argues that Monarch should not be permitted to avail

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

itself of this claim.

While the asset valuation may have been helpful to performance of the conditions precedent, it was not a prerequisite for fulfilling them. Thus, Monarch, through its failure to quantify its assets, did not procure the nonperformance of the conditions precedent. The district court was justified in concluding that the parties' actions constituted mutual nonperformance, which, under Minnesota law, results in a discharged contract. *See Miller v. O.B. McClintock Co.*, 210 Minn. 152, 163, 297 N.W. 724, 730 (1941).

II

***3** Summary judgment in favor of Monarch and CRC was also appropriate because Casino Resorts failed to demonstrate damages. The controlling principle is that damages that are speculative, remote, or conjectural are not recoverable. *Hornblower & Weeks-Hemphill Noyes v. Lazere,* 301 Minn. 462, 467, 222 N.W.2d 799, 803 (1974). It is for the court, and not the jury, to determine the proper rule of damages and when damages are too speculative. *Mississippi & Run River Boom Co. v. Prince,* 34 Minn. 71, 77, 24 N.W. 344, 346 (1885). Uncertainty as to the amount of damages is not fatal to recovery, but a claim cannot be maintained when it is uncertain that there are any damages at all. *Cardinal Consulting Co. v. Circo Resorts, Inc.* 297 N.W.2d 260, 267 (Minn.1980).

The general rule is that damages for lost future profits of a new business are not recoverable, because the evidence is inherently too speculative. *Leoni v. Bemis Co., Inc.,* 255 N.W.2d 824, 826 (Minn.1977) (citing *Village of Elbow Lake v. Otter Tail Power Co.*, 281 Minn. 43, 46, 160 N.W.2d 571, 574 (1968)). The supreme court has recognized two exceptions to this rule: a new business that operates as part of a national enterprise with a profit record, *see id.*, and a new business that involves the sale of discrete travel packages that allowed a reliable calculation of the loss. *Cardinal,* 297 N.W.2d 267- 69.

Casino Resorts' claimed loss is not comparable to either of these exceptions. Casino Resorts projects its losses based on the assumption that the letter of intent would have allowed them to develop the Pokagon Band's gaming operation. But even if that opportunity were considered part of the agreement, the damages are still speculative. The development of any casino facilities by the Pokagon Band requires governmental authorizations, including a compact approved by the governor of Michigan and ratified by the Michigan legislature. A compact was approved by the governor of Michigan in early 1996, but the Michigan legislature failed to ratify it. Michigan voters, in November 1996, approved a referendum authorizing up to three casinos in the Detroit area. The passage of this referendum may increase the likelihood that the Pokagon compact will be approved, but it does not ensure ratification. At the present time, no resort or casino has been or can be developed for the Pokagon Band project. Even if the necessary state approvals are obtained, additional federal approvals, which may take as long as two years, are necessary.

Casino Resorts has failed to establish that it has sustained any loss, much less a loss that could be reasonably measured. The district court correctly concluded that the damages were too speculative, and, because proof of damages is required for each of Casino Resorts' claims, summary judgment on all claims was appropriate.

III

***4** A cause of action for tortious interference with contract requires: "(1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) intentional procurement of its breach; (4) without justification; and (5) damages." *Kjesbo v. Ricks,* 517 N.W.2d 585, 588 (Minn.1994).

Tortious interference with prospective contractual relations occurs when one "intentionally and improperly interferes with another's prospective contractual relation" and is subject to liability "for the pecuniary harm resulting from the loss of the benefits of

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works
Westlaw.

the relations, whether the interference consists of (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or (b) preventing the other from acquiring or continuing the prospective relation." *United Wild Rice, Inc. v. Nelson,* 313 N.W.2d 628, 633 (Minn.1982).

It is not necessary to prove that a third party possessed actual knowledge of a contractual relationship between other parties. *Swaney v. Crawley,* 154 Minn. 263, 265, 191 N.W. 583, 584 (1923). It is enough to demonstrate that defendant had knowledge of facts which, if followed by reasonable inquiry, would have led to a complete disclosure of the contractual relations and the rights of the parties. *Id.*

CRC received a copy of the market report in which Casino Resorts of Washington and Michigan, Inc. are mentioned approximately fifty-eight times. The market report does not, however, refer to Casino Resorts, Inc. No evidence suggests that CRC and Monarch discussed the references to Casino Resorts of Washington and Michigan, Inc. But according to Monarch's principal shareholder, if Casino Resorts of Washington and Michigan had been discussed, he would have explained that Monarch owned them. Thus, there is no evidence that CRC had knowledge of the letter of intent between Monarch and Casino Resorts or that a reasonable inquiry would have led to that knowledge. The district court correctly concluded that summary judgment was appropriate on the tortious interference claims.

Affirmed.

1997 WL 793134, 1997 WL 793134 (Minn.App.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Westlaw.