Only the Westlaw citation is currently available.

United States District Court, D. Minnesota.

Gloria TUTTLE, as Trustee for the next-of-kin of Bill Tuttle, a.k.a. William R. Tuttle, deceased, Plaintiff,
v.
LORILLARD TOBACCO COMPANY; National Tobacco Company, L.P.; The Pinkerton Tobacco Company; and the Smokeless Tobacco Council; Defendants.

No. CIV991550PAM/JGL.

July 5, 2001.

MEMORANDUM AND ORDER

MAGNUSON, J.

*1 This matter is before the Court on a Motion to Dismiss filed by Defendants Lorillard Tobacco Company, National Tobacco Company, and the Pinkerton Tobacco Company, and a Motion to Dismiss filed by Defendant the Smokeless Tobacco Council. For the reasons that follow, the Court grants in part and denies in part the Motions.

BACKGROUND

Plaintiff Gloria Tuttle's husband, Bill Tuttle ("Tuttle"), died of oropharynx and larynx cancer on July 27, 1998. Having first been introduced to smokeless tobacco in the summer of 1954, Tuttle chewed tobacco regularly throughout his adult life, quitting only upon being diagnosed with cancer in October 1993. Plaintiff contends that Tuttle's death was wrongfully caused by Defendants' negligent, misleading, and fraudulent conduct with respect to the design, manufacturing, marketing, and promotion of smokeless tobacco.

On September 21, 1999, Plaintiff, Trustee for Tuttle's next-of-kin, brought suit in Anoka County District Court alleging negligence, strict liability, breach of warranty, common law fraud, consumer fraud, unlawful trade practices, deceptive trade practices, and false advertising by all named Defendants. Defendants removed the case to federal court on October 13, 1999. Thereafter, Defendants filed motions to dismiss, which this Court granted in part and denied in part. The Court dismissed Plaintiff's strict liability and breach of warranty claims as barred by the statute of limitations, dismissed Plaintiff's common law and statutory fraud claims without prejudice for failing to plead with particularity, and dismissed Plaintiff's negligence claim against the Smokeless Tobacco Council ("STC") without prejudice for failing to properly allege the duty element. The Court also dismissed Defendants Worldwide Sports and Entertainment and National Tobacco Finance Corporation from the suit for lack of personal jurisdiction. On December 19, 2000, Plaintiff filed a Second Amended Complaint. In addition to redrafting the Complaint pursuant to the Court's Order, Plaintiff added a common law conspiracy count. Once again, Defendants have moved for dismissal.

DISCUSSION

A. Standard

For the purposes of Defendants' Motions to Dismiss, the Court takes all facts alleged in Plaintiff's Second Amended Complaint as true. *Westcott v. Omaha,* 901 F.2d 1486, 1488 (8th Cir.1990). Further, the Court must construe the allegations in the Second Amended Complaint and reasonable inferences arising from that Complaint favorably to Plaintiff. *Morton v. Becker,* 793 F.2d 185, 187 (8th Cir.1986). A motion to dismiss will be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." *Id.; see also Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).

B. Manufacturing Defendants' Motion to Dismiss

Through this Motion, smokeless tobacco

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

EXHIBIT S

manufacturers Lorillard Tobacco Co., National Tobacco Co., and The Pinkerton Tobacco Company (collectively "the Manufacturing Defendants") seek the dismissal of all of Plaintiff's claims except her negligence claim. Each asserted ground for dismissal is discussed in turn.

1. *Rule 9(b)*

***2** The Manufacturing Defendants once again argue that Plaintiff has failed to plead her common law and statutory fraud [FN1] claims with particularity pursuant to Fed. R Civ. P. 9(b). As this Court previously held, *see Tuttle v. Lorillard Tobacco Co.,* 118 F.Supp.2d 954, 963 (D.Minn.2000), in order to meet 9(b)'s heightened pleading requirement, a plaintiff must set forth the "who, what, when, where, and how: the first paragraph of any newspaper story." *Parnes v. Gateway 2000, Inc.,* 122 F.3d 539, 549-50 (8th Cir.1997). "Because one of the main purposes of the rule is to facilitate a defendant's ability to respond and to prepare a defense to charges of fraud, conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Commercial Property Invs., Inc. v. Quality Inns Int'l, Inc.,* 61 F.3d 639, 644 (8th Cir.1995) (internal citation omitted). Although the Manufacturing Defendants contend that Plaintiff has failed to plead each element of common law and statutory fraud with sufficient particularity, their primary challenge is to Plaintiff's pleading of reliance.

FN1. Plaintiff alleges that Defendants violated the following Minnesota statutes: Minn.Stat. § 325F.69 (Consumer Fraud Act); Minn.Stat. § 325D.13 (Unlawful Trade Practices Act); Minn.Stat. § 325D.44 (Deceptive Trade Practices Act); and Minn.Stat. § 325F.67 (False Statement in Advertising).

As an initial matter, the Court notes that Plaintiff repeatedly makes the argument that her statutory fraud claims need not be pleaded with specificity pursuant to Rule 9(b) because under Minnesota law statutory fraud is broader than common law fraud. This very argument was rejected in the first round of motions to dismiss: "Notwithstanding the relative breadth of the consumer protection statutes, Rule 9(b) applies where, as here, the gravamen of the complaint is fraud." *Tuttle,* 118 F.Supp.2d at 963. As such, Plaintiff's arguments in this regard are misplaced and will not be discussed further.

After carefully reviewing the Second Amended Complaint, the Court is satisfied that Rule 9(b)'s stringent pleading requirements have been met. Plaintiff has provided more than sixty statements made by the Manufacturing Defendants and their trade association, STC, regarding the health effects and addictiveness of smokeless tobacco products. (2d Am.Compl.¶¶ 65a-65qqq.) For most of the statements, Plaintiff has included the source, speaker, date, and, where appropriate, the location the statement was made. (*See id.*) Thus, the primary flaw in Plaintiff's original Complaint-her failure to set forth the allegedly fraudulent conduct of the Manufacturing Defendants-has been adequately remedied. *See Magnus v. Fortune Brands, Inc.,* 41 F.Supp.2d 217, 223 n. 2 (E.D.N.Y.1999) (holding that because plaintiffs specified the alleged fraudulent statements, identified the speakers, and stated where and when the statements were made, plaintiffs' fraud and deceit claim was pled with sufficient particularity to satisfy Rule 9(b)).

Moreover, despite the Manufacturing Defendants' protestations to the contrary, Plaintiff does provide information as to "how" the allegedly statements were fraudulent and relied upon. Plaintiff specifically alleges that the Manufacturing Defendants and STC knew or should have known that the statements were false or misleading. (2d Am.Compl.¶¶ 67-68.) In addition, Plaintiff alleges that Tuttle relied on the allegedly fraudulent statements by continuing to use smokeless tobacco. (*Id.* ¶ 70.) The Court acknowledges that Plaintiff may not have set forth the factual basis for her assertion of reliance with exacting specificity. For example, Plaintiff has not identified when and where Tuttle saw or heard the statements. Nevertheless, the Court is certain that the information provided by Plaintiff is sufficient to "facilitate ...



Westlaw.

[D]efendant [s'] ability to respond and to prepare a defense to [the] charge[ ] of fraud." *Commercial Property Invs.*, 61 F.3d at 644. It is evident from the Second Amended Complaint that Plaintiff intends to establish reliance by demonstrating that Tuttle was aware of the allegedly fraudulent statements and that he relied on those statements to his detriment by continuing to use smokeless tobacco. [FN2] Whether the facts gleaned during discovery will ultimately support this contention is a matter for another day. The Manufacturing Defendants' Rule 9(b) challenge must fail.

FN2. The Manufacturing Defendants argue that Plaintiff must plead and prove reliance in order to prevail on her statutory fraud claims because the relaxed causation standard recently reaffirmed by the Minnesota Supreme Court in *Group Health Plan, Inc. v. Philip Morris Inc.*, 621 N.W.2d 2, 13 (Minn.2001) does not apply to her statutory fraud claims. The Second Amended Complaint makes clear, however, that Plaintiff intends to establish causation by demonstrating that Tuttle relied on Defendants' statements. (*See* 2d Am. Compl. ¶¶ 67-70.) Thus, Plaintiff does not appear to have invoked *Group Health'* s relaxed causation standard.

***3** The Manufacturing Defendants also argue that Plaintiff may not base her claim on the statements contained in the Second Amended Complaint because all of them were made at least twenty-years after Tuttle began using smokeless tobacco. The Court disagrees. Plaintiff concedes that the Defendants' statements did not cause Tuttle to begin using smokeless tobacco. Instead, she contends that the statements resulted in his continued use of smokeless tobacco. (2d Am.Compl.¶ 70.) Therefore, the statements made before October 1993 are fully relevant to this case because they may have caused, or contributed to, Tuttle's injuries.

2. *Statute of Limitations*

The Manufacturing Defendants also argue that Plaintiff's statutory fraud claims are barred by the statute of limitations. The parties do not dispute that the six-year limitations period under Minn.Stat. § 541.05, subd. 1(2) applies. Working backwards, the Manufacturing Defendants argue that Plaintiff may not assert any claims based on Tuttle's purchase of smokeless tobacco before September 21, 1993, six years before the original Complaint was filed. According to Plaintiff, the statute of limitations began to run in October 1993, when Tuttle was informed that he had cancer, and at which time he ceased purchasing and using smokeless tobacco.

Section 541.05, subd. 1(2) provides that actions in which "liability [is] created by statute" must be commenced within six years. Courts, including this Court, have consistently held that § 541.05, subd. 1(2), applies to Minnesota's consumer protection statutes. *See Klehr v. A.O. Smith Corp.*, 875 F.Supp. 1342, 1352 (D.Minn.1995) (Davis, J.); *Veldhuizen v. A.O. Smith Corp.*, 839 F.Supp. 669, 676 (D.Minn.1993) (Doty, J.); *Estate of Riedel by Mirick v. Life Care Ret. Cmtys.*, 505 N.W.2d 78, 83 (Minn.Ct.App.1993). Further, when actions are based on Minnesota's consumer protection statutes, the "cause of action accrues ... on the date of sale when the alleged statutory violations occurred." *Veldhuizen*, 839 F.Supp. at 676. Because § 541.05, subd. 1(2) does not include a discovery allowance, the accrual date of the statute may not be tolled on that basis. *Klehr*, 875 F.Supp. at 1352; *Veldhuizen*, 839 F.Supp. at 677.

Plaintiff argues that a discovery allowance should be read into the statute despite the legislature's failure to include such language. Plaintiff suggests that decisions in which this Court has declined to read a discovery allowance into the statute are no longer valid in light of *State of Minnesota v. Philip Morris, Inc.*, 551 N.W.2d 490, 496 (Minn.1996), in which the court made clear that the consumer protection statutes are to be broadly construed to enhance consumer protection. Plaintiff contends that the Minnesota Supreme Court's liberal approach should extend to § 541.05, subd. 1(2), when the consumer protection statutes are the underlying bases for liability, such that the statute of limitations should be read to include a discovery provision. The Court is not persuaded. Notwithstanding the broad construction of the consumer protection

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Westlaw.

statutes, the Court will not read language into a statute when the legislature could have included such language with ease, but did not. *See, e.g.,* Minn.Stat. § 541.05, subd. 1(6) (providing that actions based on fraud "shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud"). Indeed, in *Group Health,* the court reaffirmed the principle that "it is not the role of this court to extend the reach of consumer protection beyond what was intended by the legislature." 621 N.W.2d at 11 . Moreover, the Court will not impose the expansive breadth of the substantive consumer protection statutes on a procedural statute of limitations that applies to countless other substantive statutes unrelated to Minnesota's consumer protection laws. In any event, the Court is not convinced that no sales predicated on alleged statutory violations took place within the statutory period. Plaintiff alleges that Tuttle used smokeless tobacco up until the day he learned of his illness in October 1993. (*See* 2d Am. Compl. ¶ 15.) Therefore, Tuttle may well have purchased smokeless tobacco within the statute of limitations. Defendants' allegedly misleading statements could have contributed to Tuttle's decision to continue purchasing and using smokeless tobacco within that period, even though they may have been uttered outside of the statutory period. Accordingly, the Court is satisfied at this time that Plaintiff's Complaint was filed within the statute of limitations. However, if called upon to do so, the Court will revisit this issue at a later stage in the litigation when the parties have further information with which to assess this issue. The Court therefore denies the Manufacturing Defendants' Motion as to this issue without prejudice.

3. *Deceptive Trade Practices Act*

***4** The Manufacturing Defendants seek dismissal of Plaintiff's claim under the Deceptive Trade Practices Act ("DTPA"), Minn.Stat. §§ 325D.43. [FN3] They first argue that Plaintiff does not have standing to pursue injunctive relief, the only allowable relief under the DTPA. Plaintiff maintains that damages are an appropriate remedy under the Act and that, in any event, she has standing to seek injunctive relief. The Court disagrees with Plaintiff's contentions.

FN3. Plaintiff bases her DTPA claim on the following statutory provisions:

Subdivision 1. A person engages in a deceptive trade practice when, in the course of business, vocation, or occupation, the person:

(5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;

(7) represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

(13) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

Minn.Stat. § 325D.44, subd. 1.

The language of the DTPA makes plain that injunctive relief is the sole statutory remedy for conduct falling within its ambit: "[a] person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable." Minn.Stat. § 325D.45, subd. 1. Consistent with the plain language of the statute, courts have uniformly held that the sole remedy for violations of the DTPA is injunctive relief. *See Transclean Corp. v. Bridgewood Servs., Inc.,* 77 F.Supp.2d 1045, 1101 (D.Minn.1999) (Erickson, J.) ("The Plaintiff's claim, under the [DTPA], must be dismissed, because injunctive relief is the sole statutory remedy under the Act."); *Simmons v. Modern Aero, Inc.,* 603 N.W.2d 336, 339 (Minn.Ct.App.1999) ("The legislature granted to the courts the discretion to only award an injunction against such deceptive trade practices, specifically limiting this relief 'under the principles of equity." '); *Alsides v. Brown Institute, Ltd.,* 592 N.W.2d 468, 476 (Minn.Ct.App.1999) ("We ... conclude that the sole statutory remedy for deceptive trade practices is injunctive relief."); *Johnny's, Inc. v. Njaka,* 450 N.W.2d 166, 168

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

(Minn.Ct.App.1990) (noting in dicta that injunctive relief, not damages, is the statutory remedy for deceptive trade practices). Plaintiff argues that the Minnesota Supreme Court's recent decision in *Ly v. Nystrom,* 615 N.W.2d 302 (Minn.2000), undermines those cases to the extent that they preclude the recovery of damages under the DTPA. *Ly,* however, is inapposite. *Ly* involved the interpretation of the Consumer Fraud Act, Minn.Stat. § 325F.69, and has no direct bearing on the scope or application of the DTPA. Nor does *Ly* have an indirect bearing on the DTPA.

In *Ly,* the court concluded that an individual's right to bring suit under Minnesota's private attorney general statute, Minn.Stat. § 8.31, subd. 3(a), mirrors the right of the attorney general to bring suit under § 8.31, subd. 1. *Id.* at 313-14. Under § 8.31, subd. 1, the attorney general is "provided broad statutory authority ... to investigate violations of law regarding unlawful business practices barred by a variety of statutory prohibitions." *Id.* at 310. Likewise, under § 8.31, subd. 3(a), private citizens injured by a violation of the "laws entrusted to the attorney general to investigate and enforce may recover damages together with costs and attorney fees." *Id.* The private attorney general statute "advances the legislature's intent to prevent fraudulent representations and deceptive practices with regard to consumer products by offering an incentive for defrauded consumers to bring claims in lieu of the attorney general." *Id.* at 311. Section 8.31, subd. 1, sets out specific statutes under which the attorney general may sue. The DTPA is not one of the statutes expressly mentioned in that provision. Nevertheless, Plaintiff argues that because the attorney general has not been explicitly precluded from bringing DTPA claims under § 8.31, subd. 1, she should be able to bring her DTPA claim for damages under § 8.31, subd. 3(a), as a private attorney general. As Plaintiff notes, however, no Minnesota court has directly addressed whether the attorney general may raise a DTPA claim under § 8.31, subd. 1. More importantly, the Minnesota Supreme Court has explicitly recognized that the DTPA "contains its own legislative grant of standing and, thus, requires no reference to Minn.Stat. § 8.31." *State of Minnesota,* 551 N.W.2d at 496. Therefore, the Court must consider the plain language of the DTPA without regard to § 8.31. As previously noted, the DTPA does not permit the recovery of injunctive relief.

***5** Plaintiff also argues that subdivision 3 of the DTPA authorizes the recovery of damages. This argument is meritless. Subdivision 3 reads: "[t]he relief provided in this section is in addition to remedies otherwise available against the common law or other statutes of this state." Minn.Stat. § 325D.45, subd. 3. This provision does not broaden the remedies available under the DTPA, but rather makes clear that the DTPA is not the exclusive remedy for conduct falling within its scope. Thus, if a defendant's conduct constitutes common law fraud as well as a violation of the DTPA, a plaintiff may seek relief in the form of damages under the common law.

Finally, Plaintiff argues that because the Minnesota Supreme Court has declared that the consumer protection statutes are to be "aggressively prosecuted," the DTPA should be liberally read to permit the recovery of damages. *See State of Minnesota,* 551 N.W.2d at 495. As the Minnesota Court of Appeals noted, however, "[a]ggressive prosecution does not mean that we are permitted to misconstrue or expand those remedies provided by the legislature." *Simmons,* 603 N.W.2d at 339. The legislature made clear that the sole remedy for violations of the DTPA is injunctive relief, and as such, the Court will not expand on that remedy.

The question then becomes whether Plaintiff has standing to pursue injunctive relief. The Manufacturing Defendants argue that Plaintiff lacks standing because injunctive relief under the DTPA is limited to persons "likely to be damaged by a deceptive trade practice of another." Minn.Stat. § 325D.45, subd. 1. Because Tuttle, the person injured by the Manufacturing Defendants' alleged violations of the DTPA, can no longer be harmed by continued violations, there can be no future harm as contemplated by § 325D.45. Plaintiff does not specifically address this



Westlaw.

argument in her memorandum.

For different reasons, the Court agrees with the Manufacturing Defendants' conclusion that Plaintiff may not pursue injunctive relief under the DTPA. This is a wrongful death lawsuit, predicated on Minn.Stat. § 573.02. ( *See* 2d Am. Compl. ¶ 1.) This statute provides that "[w]hen death is caused by the wrongful act or omission of any person or corporation, the trustee ... may maintain an action therefor if the decedent might have maintained an action, had the decedent lived, for an injury caused by the wrongful act or omission." The purpose of the wrongful death statute is to compensate the decedent's next of kin for pecuniary losses suffered by reason of the decedent's death. *Shumway v. Nelson,* 107 N.W.2d 531, 533 (Minn.1961). Accordingly, "the surviving spouse and next of kin are given rights within the limits of the statute to recover *damages* measured by the monetary loss to those who come within its provisions." *Beck v. Groe,* 70 N.W.2d 886, 892 (Minn.1955) (emphasis added). The granting of injunctive relief, even for the purported public good, goes beyond the scope of appropriate remedies provided by the wrongful death act. [FN4] Plaintiff's DTPA claim must be dismissed with prejudice. [FN5]

FN4. Neither party has raised the issue of whether Plaintiff may pursue injunctive relief under the other consumer protection statutes. Because the other statutory claims invoke the private attorney general statute, which appears to permit private plaintiffs to recover damages as well as injunctive relief, the Court's analysis with respect to Plaintiff's DTPA claim is not necessarily determinative of Plaintiff's request for injunctive relief under those statutes.

FN5. Because the Manufacturing Defendants' first argument is dispositive, the Court need not address the remaining arguments made in support of their Motion to Dismiss Plaintiff's DTPA claim.

4. *False Statement in Advertising*

*6 The Manufacturing Defendants also argue that Plaintiff's False Statement in Advertising claim under Minn.Stat. § 325F.67 fails as a matter of law because the allegedly misleading statements were not "advertisements" within in the meaning of that statute. Plaintiff argues that the statements need not be advertisements per se, but may be any statement used to sell or promote smokeless tobacco. The Court agrees with Plaintiff's position.

Apart from the Manufacturing Defendants' claim that the term "advertisement" limits the scope of § 325F.67 to traditional marketing, the Court is unaware of any authority requiring such a narrow interpretation of that statute. Moreover, a plain reading of the statute invites a broad reading of the term "advertisement." *See* Minn.Stat. § 325F.67 (prohibiting "advertisements of any sort" which "contain[ ] any material assertion, representation, or statement of fact which is untrue, deceptive, or misleading."). The aim of § 325F.67 is to protect consumers from misleading statements designed to induce them to purchase certain products. *See id.* The Court acknowledges that the statements identified in Plaintiff's Second Amended Complaint are not, strictly speaking, advertisements. However, the Court is not concerned with the precise form those statements were presented to the public. To the extent that the statements were indirectly, or perhaps even directly, used to promote or to increase the purchase and use of smokeless tobacco, they may be included in the definition of "advertisement."

The Court therefore adopts Plaintiff's broad interpretation of the statute, which squarely conforms with the Minnesota Supreme Court's liberal approach to the consumer protection statutes, among them the False Statement in Advertising statute. *See State of Minnesota,* 551 N.W.2d at 496. The statements claimed to have been made by the Manufacturing Defendants-independently and through STC-are sufficient to plead a claim of false advertising under Minnesota law.

5. *Conspiracy*

The Manufacturing Defendants contend that Plaintiff's newly added conspiracy count fails as a matter of law because her common law

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

fraud claim should be dismissed for failure to plead with particularity. As discussed above, Plaintiff's common law fraud claim was pleaded properly and will not dismissed. Defendants' argument as to her conspiracy count therefore fails.

C. STC's Motion to Dismiss Pursuant to 12(b)(6) and 9(b)

Through this Motion, Defendant STC seeks to have all of Plaintiff's claims against it dismissed. In addition to joining in the arguments made by the Manufacturing Defendants, STC makes several more arguments based on its status as a non-manufacturing Defendant.

1. *Negligence*

STC first contends that Plaintiff's negligence claim should be dismissed under Rule 12(b)(6). In order to maintain a claim for negligence, Plaintiff must establish the following familiar elements: 1) the existence of a duty; 2) breach of that duty; 3) proximate cause between the breach of duty and Plaintiff's injury; and 4) actual injury to Plaintiff. *See Hudson v. Snyder Body, Inc.,* 326 N.W.2d 149, 157 (Minn.1982). STC argues that Plaintiff cannot meet this test as a matter of law because as a trade association it had no legal duty to Tuttle or any other consumer. Plaintiff responds that because STC assumed a duty to speak publicly about the risks of chewing smokeless tobacco, it also had a duty to act non-negligently.

***7** As the Court previously noted, "[i]t is well established that one who voluntarily assumes a duty must exercise reasonable care or he will be responsible for damages resulting from his failure to do so." *Tuttle,* 118 F.Supp.2d at 964 (quoting *Isler v. Burman,* 232 N.W.2d 818, 822 (Minn.1975)). "However, trade associations are not ordinarily found to have assumed a duty to the purchasing public unless they have some measure [of] control over their manufacturing members or some direct involvement in the development or marketing [of] of the product." *Id.* Because Plaintiff did not plead such a relationship between STC and the Manufacturing Defendants in her original Complaint, the Court dismissed the negligence claim against STC with leave to amend. Plaintiff has not challenged the standard set forth in the Court's first Memorandum and Order. After reviewing the Second Amended Complaint, the Court is satisfied that Plaintiff should be permitted to go forward with her negligence claim against STC.

In her Second Amended Complaint, Plaintiff has more specifically pleaded STC's relationship to the Manufacturing Defendants: "the primary purpose of the STC was and is to provide information about the smokeless tobacco industry to the public." (2d Am.Compl. ¶ 25.) According to the Second Amended Complaint, STC is also charged with the task of "promoting" the smokeless tobacco industry and its products "in a most favorable manner to all audiences and to defend the industry and its products." (*Id.* ¶ 26.) Most importantly, although there is no allegation that STC had any role in the manufacture of smokeless tobacco products, Plaintiff does allege that STC "prepared, directed, conducted, reviewed and funded scientific testing and research on smokeless tobacco on behalf of the smokeless tobacco manufacturers." (*Id.* ¶ 32.) Arguably, then, STC was involved in the development of the smokeless tobacco products manufactured by the Manufacturing Defendants and ultimately distributed to consumers, including Tuttle. Therefore, the Court is satisfied that the Second Amended Complaint can be properly read as asserting a viable claim of negligence against STC.

2. *Rule 9(b)*

The Court's Rule 9(b) analysis above applies with equal force to STC's challenge based on the sufficiency of the Second Amended Complaint. In addition to the arguments made by the Manufacturing Defendants, STC argues that many of the allegedly misleading statements set forth in the Second Amended Complaint are protected by the First Amendment, and therefore may not form the basis of a fraud claim. Even if true, such arguments are more appropriately addressed on summary judgment, where the nature and

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

sufficiency of the evidence is considered. *See Enter. Bank v. Magna Bank,* 92 F.3d 743, 747 (8th Cir.1996).

3. *Statutory Fraud*

Finally, STC argues that Plaintiff cannot state a claim of fraud under any of Minnesota's consumer protection statutes because STC's statements were not made "in connection with the sale of merchandise." The Court agrees that Plaintiff must ultimately demonstrate that the statements were made "in connection with the sale of merchandise," *see* Minn.Stat. §§ 325F.69, 325D.13, but disagrees that she cannot do so as a matter of law. According to Plaintiff's Second Amended Complaint, STC played a vital role in the public promotion of the Manufacturing Defendants' smokeless tobacco products. (2d Am.Compl.¶¶ 24-31.) Thus, even if STC did not itself manufacture or distribute tobacco products, STC's promotional statements may be viewed as connected with the sale of those products because the statements were allegedly designed to increase public use of smokeless tobacco. Furthermore, the Court does not believe that the Minnesota Supreme Court would construe the consumer protection statutes as narrowly as STC urges this Court to do. *See State of Minnesota,* 551 N.W.2d at 496 ("These statutes are generally very broadly construed to enhance consumer protection."). The Court therefore concludes that Plaintiff has properly asserted her claims of statutory fraud against STC.

CONCLUSION

*8 For the foregoing reasons, and upon all of the files, records, and proceedings herein, the Court grants in part and denies in part Defendants' Motions to Dismiss.

Accordingly, IT IS HEREBY ORDERED that:

1. The Manufacturing Defendants' Motion to Dismiss (Clerk Doc. No. 66) is GRANTED IN PART AND DENIED IN PART;
2. STC's Motion to Dismiss (Clerk Doc. No. 73) is GRANTED IN PART AND DENIED IN PART; and
3. Count VI of Plaintiff's Second Amended Complaint (Clerk Doc. No. 60) is DISMISSED WITH PREJUDICE.

2001 WL 821831, 2001 WL 821831 (D.Minn.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works