Only the Westlaw citation is currently available.

United States District Court,
D. Minnesota.

Anthony C. RENO and Kimberly Reno,
Plaintiffs,
v.
SUPPORTKIDS, INC., Child Support Enforcement, Inc., and Richard C. Fry,
Defendants.

No. Civ.01-2331(JNE/JSM).

April 13, 2004.

Karl Oliver, Oliver Group, for Plaintiffs Anthony C. Reno and Kimberly Reno.

Jonathan Bye, Lindquist & Vennum, P.L.L.P., for Defendants Supportkids, Inc. and Richard C. Fry.

No appearance was made for Defendant Child Support Enforcement, Inc.

ORDER

ERICKSEN, J.

*1 Anthony C. Reno and Kimberly Reno (collectively, Plaintiffs) brought this action against Supportkids, Inc. and Richard C. Fry (collectively, Defendants) after Defendants attempted to collect child support Mr. Reno allegedly owed his first wife by, among other things, filing a "Notice of Lien" against Plaintiffs' homestead. [FN1] Plaintiffs' ten-count Complaint asserts claims under Minnesota common law for fraud, slander of title, abuse of process, defamation, intentional infliction of emotional distress, and negligence and under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 (2000), the Uniform Deceptive Trade Practices Act, Minn.Stat. §§ 325 D.44-.48 (2002), and the Minnesota Consumer Fraud Act, Minn.Stat. §§ 325F.68-.70 (2002). Plaintiffs also assert a claim for declaratory relief. The case is before the Court on Defendants' motion for summary judgment. [FN2] For the reasons set forth below, the Court grants the motion in part and denies the motion in part.

FN1. Child Support Enforcement, Inc. is also listed as a defendant. There is nothing in the record to indicate that such an entity exists or, if it does, that it has been served. Accordingly, the Court directs Plaintiffs to show cause why their claims against Child Support Enforcement, Inc. should not be dismissed. *See* Fed.R.Civ.P. 4(m).

FN2. Plaintiffs' Motion to Strike and Defendants' Motion to Strike are also before the Court. The Court denies both motions at this time.

## II. BACKGROUND

Mr. Reno and the woman now known as Sonia Falcon were married in Louisiana in 1975. They had a daughter in October 1976. On May 2, 1980, Mrs. Falcon was granted a legal separation from Mr. Reno and custody of their daughter. Mr. Reno was ordered to pay child support of $60 per week. By Louisiana court judgment dated June 23, 1981, a divorce was decreed. Mrs. Falcon was granted custody of their daughter, and Mr. Reno was ordered to pay child support of $45 per week. This judgment has not been amended or vacated.

In 1987, Mrs. Falcon married Robert Falcon. On October 21, 1987, Mr. Falcon adopted Mr. Reno and Mrs. Falcon's daughter. The parties agree that as a result of the adoption, Mr. Reno had no obligation to pay child support after October 21, 1987. The parties also agree that as of the date of the adoption, Mr. Reno owed some amount of back child support. The parties do not agree on the amount owed, though Plaintiffs estimate that, at most, Mr. Reno owed $3,000 to $4,000.

Between 1987 and 1999, Mrs. Falcon made no efforts to seek payment from Mr. Reno for back child support. In early 1999, Mrs. Falcon retained Supportkids to enforce and collect Mr. Reno's past-due support. Supportkids is a Texas corporation that is engaged in the business of providing private child support enforcement. In her application to Supportkids, Mrs. Falcon claimed that Mr. Reno owed $13,589.25. In the fall of 1999,

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Westlaw.

EXHIBIT T

representatives of Supportkids called Plaintiffs. Although the number and content of those calls is disputed, Plaintiffs allege there were many such calls and that during them Supportkids indicated that Mr. Reno owed $120,000 in back child support and that if he did not pay his past-due support, Supportkids was going to charge him with a felony, put him in prison, and take his driver's license and home. At some point during the calls, Mrs. Reno informed Supportkids that Mr. Reno could not possibly owe $120,000 because his support obligations ended after Mr. Falcon adopted his daughter. After the calls began, Mrs. Reno investigated Supportkids and found out that they were not a governmental agency. Plaintiffs never made any payments as a result of Supportkids' actions.

***2** In April 2000, Supportkids retained Mr. Fry, an attorney in Texas, to file, on behalf of Mrs. Falcon, a Notice of Lien against the Plaintiffs' homestead in Anoka County, Minnesota, in the amount of $122,474.07. Mr. Fry filed the Notice of Lien, using the Interstate Child Support Lien Form.

In June 2000, Supportkids learned that Plaintiffs were in the process of refinancing a mortgage on their home, and it contacted the mortgage company, Northland Mortgage, about the lien. Northland Mortgage nonetheless provided the refinancing, and no proceeds were paid to Defendants or Mrs. Falcon. Later, Plaintiffs attempted to refinance their mortgage for a second time. They assert that their application for refinancing was denied, at least in part, because of the lien filed by Supportkids.

Plaintiffs filed this action in December 2001. Among other things, they claimed that the lien Defendants filed was invalid because Defendants did not comply with Minn.Stat. § 548.27 of the Minnesota Uniform Enforcement of Foreign Judgments Act (UEFJA). On August 21, 2003, Defendants voluntarily discharged the lien and acknowledged their error in filing the lien.

III. DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the nonmoving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

The Court held a hearing on Defendants' motion for summary judgment on December 1, 2003. The Court orally granted Defendants' motion with respect to Counts I, II, III, IV, V, VII, IX, and X. The Court's reasons for granting those motions were stated on the record. For the convenience of the reader, the Court will provide, at subsections AH, *infra,* a summary of its rulings on those counts. [FN3]

FN3. Defendants' counsel prepared the summary. The Court asked Defendants' counsel to prepare the summary at the motion hearing, and Defendants' counsel submitted a draft of the summary to Plaintiffs' counsel before the summary was submitted to the Court.

*A. Fraud*

In Count I of their Complaint, Plaintiffs allege that Defendants committed fraud by engaging in a "scheme and artifice to defraud the Renos of $122,474.04." This claim fails because, even assuming there was a such a "scheme and artifice to defraud," it is

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

undisputed that the scheme did not succeed. Specifically, Plaintiffs testified that they did not believe Supportkids' statements concerning past due child support and that they had actually concluded and continue to maintain that support is no longer due. Moreover, in response to Supportkids' actions, Plaintiffs made no payments to Mrs. Falcon or Supportkids.

***3** Under Minnesota law, the elements of a cause of action for fraud are: (1) there must be a representation; (2) that representation must be false; (3) it must have to do with a past or present fact; (4) that fact must be material; (5) it must be susceptible of knowledge; (6) the representer must know it to be false, or in the alternative, must assert it as of his own knowledge without knowing whether it is true or false; (7) the representer must intend to have the other person induced to act, or justified in acting upon it; (8) that person must be so induced to act or so justified in acting; (9) that person's action must be in reliance upon the representation; (10) that person must suffer damage; (11) that damage must be attributable to the misrepresentation, that is, the statement must be the proximate cause of the injury. *Davis v. Re-Trac Mfg. Corp.*, 149 N.W.2d 37, 38-39 (Minn.1967). Here, because Plaintiffs never believed the alleged misrepresentations, Plaintiffs did not act in reliance upon them and thus did not suffer any damage as a result of such reliance.

Plaintiffs claim that as a result of Defendants' actions, they suffered various harms, such as an inability to refinance their home that allegedly prevented Mr. Reno from expanding his car refurbishing business and prevented them from repairing their home's foundation. These items, however, do not satisfy the reliance element for a cause of action of fraud but rather are simply examples of damages Plaintiffs allegedly suffered due to Defendants' actions. Accordingly, the Court concludes that Defendants are entitled to summary judgment on Count I.

*B. FDCPA*

In Count II of their Complaint, Plaintiffs seek damages under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692. This claim fails as a matter of law because the FDCPA does not apply to the collection of child support obligations. *See, e.g., Hicken v. Arnold, Anderson & Dove, PLLP,* 137 F.Supp.2d 1141, 1143 (D.Minn.2001) (courts have "consistently held [the collection of child support payments] is not covered under the FDCPA"); *see also Mabe v. G.C. Serv. Ltd. P'ship,* 32 F.3d 86, 88 (4th Cir.1994) (child support obligations "do not qualify as 'debts' under the FDCPA because they were not incurred to receive consumer goods or services"); *Raeffele v. Marrama,* 164 F.Supp.2d 224, 227 (D.Mass.2001) (child support obligations do not fall within the definition of the term "debt" for purposes of the FDCPA because they are not incurred in exchange for consumer goods or services, but instead are imposed by the state to force obligors to fulfill their parental duties to support their children); *Brown v. Child Support Advocates,* 878 F.Supp. 1451, 1454 (D.Utah 1994) (Congress simply did not include child support obligation in its coverage under the FDCPA).

Although Plaintiffs now concede that the FDCPA does not apply to the collection of child support obligations, they argue that Defendants were not attempting to collect a child support obligation because, Plaintiffs claim, no such obligation continued to exist. Irrespective of whether the obligation continued to exist, Defendants were engaged in an attempt to collect child support; thus, their actions were not governed by the FDCPA. Accordingly, the Court concludes that Defendants are entitled to summary judgment on Count II.

*C. DTPA*

***4** Count III of Plaintiffs' Complaint alleges violations of the Uniform Deceptive Trade Practices Act (DTPA), Minn.Stat. § 325D.44-.48. With respect to the Plaintiffs' claims in this count for money damages, those claims fail because money damages are not available under the DTPA. Instead, the statutory remedies available for a DTPA violation are limited to injunctive relief. *See* Minn.Stat. §

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Westlaw.

325D.45, subd. 1; *Jets Prolink Cargo, Inc. v. Brenny Transp., Inc.*, 2003 WL 22047910, at * 4 (D.Minn. Aug. 29, 2003); *Simmons v. Modern Aero, Inc.*, 603 N.W.2d 336, 339-40 (Minn.Ct.App.1999). Although Plaintiffs concede that this is the current state of Minnesota law on this issue, they apparently ask this Court to change that law. It is not the role of this Court to do so.

Plaintiffs also seek to enjoin Supportkids' use of the name "Child Support Enforcement" as falsely implying that it is a government agency. Plaintiffs, however, testified that any initial confusion they had regarding Defendants' use of the name disappeared when Mrs. Reno confirmed that Defendants were not affiliated with any governmental agency. Injunctive relief is therefore not available because Plaintiffs are not persons "likely to be damaged by a deceptive trade practice." *See* Minn.Stat. § 325D.45, subd. 1,; *see also Jets Prolink Cargo, Inc.*, 2003 WL 22047910 at * 4 (noting that injunctive relief is inappropriate under Minn.Stat. § 325D.45 when there are no material facts at issue regarding risk of future harm to plaintiff). Accordingly, Defendants are entitled to summary judgment on Count III.

*D. MCFA*

In Count IV of their Complaint, Plaintiffs allege violations of the Minnesota Consumer Fraud Act (MCFA), Minn.Stat. § 325F.68-.70. This claim fails for two reasons. First, the MCFA "does not apply to all allegations of fraud, but only to those where there is a nexus between the alleged fraud and the sale." *Banbury v. Omnitrition Int'l, Inc.*, 533 N.W.2d 876, 882 (Minn.Ct.App.1995); *see also* Minn.Stat. § 325F.68, subd. 1 (limiting application of the MCFA to fraud "in connection with the sale of any merchandise"). Plaintiffs neither pled nor presented evidence of any fraud in connection with the sale of Defendants' services to Mrs. Falcon. Second, the causation element of an MCFA claim "requires that reliance on the defendant's statements be proven." *See Wiegand v. Walser Auto. Groups, Inc.*, 670 N.W.2d 449, 454 (Minn.Ct.App.2003). As discussed above, there is no evidence here of any such reliance. Accordingly, the Court grants Defendants' motion with respect to this claim.

*E. Declaratory Judgment*

In Count V of their Complaint, Plaintiffs seek a declaratory judgment based upon the FDCPA, the DTPA and the MCFA. Each of these claims fails for the reasons discussed above. Moreover, any declaratory relief requested as to the validity of the lien is moot because Defendants have already voluntarily discharged the lien. As to any request for a declaration that the child support obligation is void, Plaintiffs have never joined Mrs. Falcon, the person to whom any obligation is owed and who is a necessary party to any such claim. Accordingly, the Court grants Defendants' motion with respect to Count V.

*F. Abuse of Process*

***5** In Count VII of their Complaint, Plaintiffs allege that Defendants' filing of the lien constituted an abuse of process. Assuming, without deciding, that the filing of the lien does constitute "process" within the meaning of this tort, in order to prevail on this claim Plaintiffs must show that Defendants placed the lien on their property for an ulterior purpose and that they did so to accomplish a result not within the scope of that process. *See Pow-Bel Constr. Corp. v. Gondeki*, 192 N.W.2d 812, 814 (Minn.1971); *Hoppe v. Klapperich*, 28 N.W.2d 780, 783 (Minn.1947); *Kellar v. VonHoltum*, 568 N.W.2d 186, 192 (Minn.Ct.App.1997). Because Defendants' filing of the lien, though perhaps flawed, was for the purpose of collecting child support, there is no evidence of an ulterior purpose sufficient to support a claim for abuse of process. Accordingly, Defendants are entitled to summary judgment on Count VII.

*G. Intentional Infliction of Emotional Distress*

In Count IX of their Complaint, Plaintiffs assert a claim for intentional infliction of emotional distress. The tort of intentional infliction of emotional distress is "sharply limited to cases involving particularly

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

egregious facts" and that a "high threshold standard of proof" is required to submit the claim to a jury. *Langeslag v. KYMN, Inc.*, 664 N.W.2d 860, 864 (Minn.2003) (quoting *Hubbard v. United Press International, Inc.*, 330 N.W.2d 428, 439 (Minn.1983)). Specifically, Plaintiffs must establish four elements: (1) the conduct was extreme and outrageous; (2) the conduct was intentional or reckless; (3) and caused emotional distress; and (4) the distress was severe. *Langeslag,* 664 N.W.2d at 864. The Minnesota Supreme Court has said that the defendant's "extreme and outrageous" conduct must be "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." *Id.* at 865. To qualify as extreme and outrageous, the conduct "must lead an average member of the community to exclaim 'outrageous!." ' *Id.* The Court concludes as a matter of law that Defendants' alleged conduct was not so "extreme and outrageous" such that it "pass[ed] the boundaries of decency and is intolerable to the civilized community." Accordingly, the Court grants Defendants' motion for summary judgment with respect to Count IX.

*H. Negligence*

Count X of Plaintiffs' Complaint is for negligence. The Court concludes that this claim fails as a matter of law because Defendants owed no legal duty in this regard towards Plaintiffs. Whether a defendant owes a plaintiff a legal duty is a matter for the court to decide as a question of law. *Donaldson v. YWCA of Duluth,* 539 N.W.2d 789, 792 (Minn.1995). Plaintiffs have not cited any support for the proposition that someone collecting child support owes a legal duty of non-negligence to the child support obligor. Instead, Plaintiffs simply argue that Defendants had a duty to Plaintiffs to insure that the lien was valid before they filed it. If, however, Plaintiffs were correct, in every lawsuit the plaintiff would have an obligation to insure that their lawsuit was valid before filing it, thus giving rise to a claim of negligence every time a lawsuit was unsuccessful. Such a result is clearly at odds with established jurisprudence, including the so-called American Rule under which the prevailing party in litigation is generally not entitled to an award of attorneys' fees. Because Defendants did not owe Plaintiffs a duty of non-negligence with respect to the filing of their lien, Defendants are entitled to summary judgment on Count X.

*I. Remaining Counts*

***6** At the December 1 hearing, the Court took Counts VI and VIII under advisement.

*1. Slander of Title*

In Count VI, Plaintiffs allege that Defendants slandered their title by filing a lien against their property. The elements required for a slander of title claim are: (1) there was a false statement concerning real property owned by the plaintiff; (2) the false statement was published to others; (3) the false statement was published maliciously; (4) the publication of the false statement concerning title to the property caused the plaintiff pecuniary loss in the form of special damages. *Paidar v. Hughes,* 615 N.W.2d 276, 279-80 (Minn.2000). The "filing of an instrument known to be inoperative is a false statement that, if done maliciously, constitutes slander of title." *Id.* at 280. Attorneys' fees incurred to remove a cloud on title constitute special damages in a slander of title action. *Id.*

Defendants assert that they are entitled to summary judgment on this claim because Plaintiffs have not presented admissible evidence that Defendants maliciously filed an instrument known to be inoperative. In response, Plaintiffs assert that there are genuine issues of material fact with respect to the issue of maliciousness that preclude summary judgment.

Defendants acknowledged that there is evidence in the record that they filed a lien, in an inflated amount, against Plaintiffs' homestead. (*See* Defs' Reply Mem. at 5.) When Defendants filed the lien, they had information that Mrs. Falcon believed that the "Past-Due Support Owed" was $13,598.25. Defendants offer no explanation as to how

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Westlaw.

they translated this amount into a lien of $122,474.07. Instead, they point out that they voluntarily removed the lien after learning that it was not filed in compliance with Minnesota statutes. [FN4] Viewing this evidence in the light most favorable to Plaintiffs, reasonable factfinder could conclude that Defendants acted maliciously when they filed the lien. Accordingly, Defendants' summary judgment motion with respect to Count VI is denied.

FN4. Regardless of how Defendants learned of their procedural filing error, it is noteworthy that they did not voluntarily remove the lien until approximately one and one-half years after the Complaint was filed. During that time, the amount of the lien was always in dispute. Accordingly, the fact that they eventually removed the lien does not necessarily show a lack of maliciousness.

*2. Defamation*

Count VIII of Plaintiffs' Complaint asserts a claim for defamation. Plaintiffs must prove the following elements to prevail on their defamation claim: (1) the allegedly defamatory statements were false; (2) they were communicated to a person other than the Plaintiffs; (3) they tend to harm the Plaintiffs' reputation in the community. *Stuempges v. Park, Davis & Co.,* 297 N.W.2d 252, 255 (Minn.1980). In addition, unless the defamation is per se, there must be proof of actual damage. *Id.*

The parties dispute whether Plaintiffs need to establish actual damages. Plaintiffs' defamation claim does not focus on statements allegedly made by Defendants about Plaintiffs' business, trade, or professional conduct. Accordingly, Plaintiffs' claim is not for defamation per se, and they must prove actual damage. *See Becker v. Alloy Hardfacing & Eng'g Co.,* 401 N.W.2d 655, 661 (Minn.1987) (false statements about a person's business, trade, or professional conduct are defamatory per se). Defendants argue that the defamation claim fails because Plaintiffs have not presented any admissible evidence that any alleged defamatory statements damaged them. Specifically, Defendants argue that there is no admissible evidence that Plaintiffs would have been able to refinance but for Defendants' actions. Moreover, Defendants assert that it is speculation to assume that Plaintiffs would have been able to refinance, given Plaintiffs' credit history. Defendants note that Mr. Reno admits that his credit was bad before Supportkids contacted him, that both Mr. and Mrs. Reno separately filed bankruptcy, that Mrs. Reno's car had been repossessed, and that both had a judgment entered against them for writing checks with insufficient funds. In response, Plaintiffs assert that they were damaged because they were unable to refinance their home and because they had to pay higher interest rates than they would have had to otherwise pay if they had not been defamed. Moreover, they assert that Mr. Reno was damaged because he was not able to obtain credit for purchases he needed to make for his business. Viewing this evidence in the light most favorable to Plaintiffs, a reasonable factfinder could conclude that Plaintiffs have suffered damage as a result of Defendants' allegedly defamatory statements. Accordingly, Defendants' summary judgment motion with respect to Count VIII is denied.

III. CONCLUSION

***7** Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendants' motion for summary judgment [Docket No. 31] is GRANTED IN PART and DENIED IN PART.
2. Counts I, II, III, IV, V, VII, IX, and X are DISMISSED.
3. Defendants' motion to strike [Docket No. 35] is DENIED.
4. Plaintiffs' motion to strike [Docket No. 41] is DENIED.
5. Pursuant to Federal Rule of Civil Procedure 4(m), Plaintiffs shall show cause within twenty (20) days from the date of this Order why the claims against Defendant Child Support Enforcement, Inc. should not be dismissed for failure to make service upon them within 120 days of the filing of the Complaint.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Westlaw.

2004 WL 828150 (D.Minn.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works