Only the Westlaw citation is currently available.

United States District Court,
D. Minnesota.

JETS PROLINK CARGO, INC., Jasun Scott and Rafael Llorente, Plaintiffs,
v.
BRENNY TRANSPORTATION, INC., Joyce Brenny, The National Association of Small Trucking Companies, Dancel Transportation, Inc., Daniel Wright, M & M American, Inc., Mike Burke and TransCore Commercial Services, Inc. d/b/a DAT Services, Defendants.

No. Civ. 02-1294 ADMRLE.

Aug. 29, 2003.

Richard W. Curott, Curott & Associates, Milaca, MN, for and on behalf of Plaintiffs.

Jon K. Iverson, Iverson Reuvers, LLC, Bloomington, MN, for and on behalf of Defendants Daniel Wright and Dancel Transportation, Inc.

Lisa R. Griebel, Terhaar, Archibald, Pfefferle & Griebel, LLP, Minneapolis, MN, for and on behalf of Defendant M & M American, Inc.

MEMORANDUM OPINION AND ORDER

MONTGOMERY, J.

I. INTRODUCTION

*1 On August 12, 2003, the Motion to Dismiss and/or for Summary Judgment [Docket No. 99] of Defendant M & M American, Inc. ("M & M"), and the Motion for Summary Judgment [Docket No. 90] of Defendants Dancel Transportation, Inc. ("Dancel"), and Daniel Wright ("Wright") were argued before the undersigned United States District Judge. Also before the Court is the Motion of Plaintiffs Jets Prolink Cargo, Inc. ("Jets"), Jasun Scott and Rafael Llorente (collectively, "Plaintiffs") seeking an Order Continuing the Motions for Summary Judgment [Docket No. 113]. For the reasons set forth below, M & M's Motion is granted, Dancel and Wright's Motion is granted and Plaintiffs' Continuance Motion is denied.

II. BACKGROUND

At issue is the interaction of Jets, a shipment carrier, with several different Defendant transportation brokerage firms. While only two Defendants have Motions for Summary Judgment currently pending, the facts largely concern another Defendant, Joyce Brenny ("Brenny").

In early January 2002, Brenny contracted for Jets to serve as carrier for a shipment. Brenny alleges that Plaintiffs double brokered [FN1] the shipment and fraudulently tried to get additional money from her company, Brenny Transportation, Inc., a Minnesota corporation. Compl. ¶ IV. To check out Plaintiffs' business practices, Brenny obtained an authorized carrier profile on Plaintiffs from an Internet site. The profile provided Brenny with the name of Dancel, a Missouri corporation. Compl. ¶ VII. After contacting Dancel and others, Brenny formed the belief that Plaintiffs had engaged in similar practices with other transportation brokerage companies. Brenny asserts that someone from Dancel contacted her to discuss Dancel's experiences with Plaintiffs. Brenny Aff. at 141. Later, Brenny also spoke to Wright, the President of Dancel, who faxed to Brenny a copy of a letter he had previously sent to the Federal Bureau of Investigation ("F.B.I.") on August 22, 2001, regarding Dancel's negative business experience with Plaintiffs. *Id.* at 143; Wright Aff. Ex. 1. In this letter, Wright related that he believed Plaintiffs had double brokered a product shipment that Plaintiffs claimed they were carrying for Dancel on their own trucks by tendering the shipment to a different carrier and then holding the shipment while demanding pre-delivery payment from Dancel. *Id.* Wright described the practice as "fraud, blackmail, and theft." *Id.* Brenny alleges her experience with Plaintiffs was similar.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Westlaw.

EXHIBIT U

FN1. "Double brokering is when a licenced broker gives a load to someone representing themselves as a contract licensed carrier, takes that shipment, does not put it on their own insured licensed equipment, in turn gives it to a different carrier with no knowledge to the broker and usually makes a [profit]...." Brenny Dep. at 166.

On or about January 14, 2002, after receiving Wright's letter to the F.B.I. and talking with "other people in the trucking industry" about their experiences with Plaintiffs, Brenny drafted a letter on Brenny Transportation, Inc., letterhead to "one and all in the trucking industry" warning brokers and carriers to "beware" of Jets. Brenny Dep. at 134, 137-38, 156, Ex. 1 (Curott Aff. Ex. A). After securing Wright's permission, the first letter concludes "if you want any further information from two [companies] [FN2] that were hurt by these people please call: Daniel Wright with Dancel Transportation ... or Joyce Brenny, with Brenny Transportation." *Id.* Ex. 1. Plaintiffs allege Brenny widely distributed this letter. Compl. ¶ XVI. Brenny admits she had several conversations with Wright during the month after the letter was distributed "because there were so many people calling both of [them]," but does not recall whether or not she ever sent Wright a copy of the additional letters. Brenny Dep. at 148-49.

FN2. The print of Brenny's first letter, Brenny Deposition Exhibit 1, is almost indecipherable, therefore this word cannot be read and must be inferred.

***2** Among the recipients of the first letter was Mike Groseth ("Groseth"), an employee of M & M, an Ohio corporation. Groseth Aff. ¶¶ 1, 11; Compl. ¶ VIII. Groseth spoke with Brenny on the telephone to discuss M & M's two business dealings with Jets. Groseth Aff. ¶ 12; Brenny Dep. at 199. Groseth asserts that Brenny did not request to include his name or M & M's phone number on any documents and that he did not give permission for her to do so. Groseth Aff. ¶ 12. However, Brenny asserts that she asked Groseth if she could put his name and number in her letter and that Groseth said it would be "okay." Brenny Dep. at 152. Brenny created a second version of her letter, including the statement "if you would like any further information from *Three* companies that have been hurt by these people please call: Daniel Wright, with Dancel Transportation ..., Joyce Brenny, with Brenny Transportation ..., or Mike, with M & M American...." [FN3] Brenny Dep. Ex. 2 (emphasis in original). A third version was later created amending this section to read: "We have now acquired a list of numerous people hurt by this scam-unfortunately we can no longer disclose our names because of extreme threats received from the above people." *Id.* Ex. 3. Neither of these versions were transmitted to M & M nor disseminated by M & M. Groseth Aff. ¶¶ 13, 14. Brenny admits that she did not talk to any other Defendant about the third and final version of her letter. Brenny Dep. at 172. Brenny stopped disseminating the letter after receiving a letter from Plaintiffs' attorney. *Id.* 165.

FN3. Brenny's letter included telephone numbers for each listed party.

Plaintiffs allege that each of the three letters contain multiple defamatory statements. Plaintiffs assert that Dancel, Wright and M & M "conspired with [Brenny] ... to create and publish the defamatory statements...." Compl. ¶ XXII. The crux of Plaintiffs' claims against these Defendants is that they "joined in" with Brenny's allegedly defamatory statements by virtue of their telephone conversations with Brenny.

## III. DISCUSSION

### A. M & M's Motion to Dismiss

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss claims for lack of jurisdiction over the person. Fed.R.Civ.P. 12(b)(2). In considering a motion to dismiss, the pleadings are construed in the light most favorable to the non-moving party, and the facts alleged in the complaint must be taken as true. *Hamm v. Groose,* 15 F.3d 110, 112 (8th Cir.1994); *Ossman v. Diana Corp.,* 825 F.Supp. 870, 879-80 (D.Minn.1993). Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

non-moving party, and the court must also draw all reasonable inferences in the non-moving party's favor. *Ossman,* 825 F.Supp. at 880; *White Stone Partners, L.P. v. Piper Jaffray Cos.,* 978 F.Supp. 878, 879 (D.Minn.1997).

A complaint should be dismissed "only if it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations." *Frey v. City of Herculaneum,* 44 F.3d 667, 671 (8th Cir.1995) (citations omitted); *Hafley v. Lohman,* 90 F.3d 264, 266 (8th Cir.1996). "A motion to dismiss should be granted as a practical matter ... only in the unusual case in which the plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Frey,* 44 F.3d at 671.

***3** A plaintiff need only make a prima facie showing of personal jurisdiction over the defendant to survive a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). *Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd.,* 89 F.3d 519, 522 (8th Cir.1996).

To establish personal jurisdiction, the facts presented must satisfy the requirements of the forum state's long-arm statute, and the exercise of personal jurisdiction over the defendant must not violate due process. *Id.* The amenability of a foreign corporation to the jurisdiction of a federal district court is controlled by the law of the state in which the federal court sits. *Moran v. Vermeer Mfg. Co.,* 498 F.Supp. 1274, 1278 (W.D.Mo.1980) (citing *Simpkins v. Council Mfg. Corp.,* 332 F.2d 733, 736 (8th Cir.1964)). Because Minnesota's long-arm statute, Minn.Stat. § 543.19 (1988), extends jurisdiction to the maximum limit consistent with due process, this court need only evaluate whether the requirements of due process are satisfied. *Wessels, Arnold & Henderson v. National Med. Waste, Inc.,* 65 F.3d 1427, 1431 (8th Cir.1995).

Due process mandates that a court exercise personal jurisdiction over a non-resident defendant only when the defendant has "certain minimum contacts" with the state, such that summoning the defendant to the forum state does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). Sufficient contacts exist when the defendant's conduct and connection with the forum state are such that the defendant should "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980). The unilateral activities of one claiming some relationship with the non-resident defendant are not enough to satisfy the minimum contacts requirement. *Hanson v. Denckla,* 357 U.S. 235, 253 (1958). In every case there must be some act by which a defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* Jurisdiction is proper where the contacts proximately result from actions by the defendant that create a "substantial connection" with the forum state. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476 (1985).

M & M does not have sufficient contacts with Minnesota to meet the personal jurisdiction requirements. Whether or not Groseth gave permission to Brenny to use his name and number is immaterial; the single telephone contact between Groseth in Ohio and Brenny in Minnesota is insufficient to create a jurisdictional nexus over M & M. The Eighth Circuit has held repeatedly that use of interstate mail or telephone alone is insufficient to establish minimum contacts with the forum state. *See Krambeer v. Eisenberg,* 923 F.Supp. 1170, 1174 (D.Minn.1996) (citing *Bell Paper Box, Inc. v. Trans Western Polymers, Inc.,* 53 F.3d 920, 923 (8th Cir.1995); *T.J. Raney & Sons, Inc. v. Security Sav. & Loan Ass'n,* 749 F.2d 523, 525 (8th Cir.1984); *Mountaire Feeds, Inc. v. Agro Impex, S.A.,* 677 F.2d 651, 656 (8th Cir.1982)). Interstate communication such as use of telephone and mail is a "secondary or ancillary" factor. *Bell Paper,* 53 F.3d at 923.

***4** Additionally, Plaintiffs purport to allege a conspiracy to defamation claim against M & M. Such a claim fails here for two reasons. First, paragraph 22 of the Complaint does not properly state a conspiracy claim. The mere use of the word "conspired" in a complaint is

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Westlaw.

insufficient to constitute a cause of action for conspiracy. *Ramsay v. Vogel,* 970 F.2d 471, 475 (8th Cir.1992). Second, to the extent Plaintiffs properly state a defamation claim against M & M, Minnesota's long-arm Statute, Minnesota Statute section 543.19, includes a defamation exception barring federal jurisdiction over cases where an act outside Minnesota causes injury within Minnesota where "the cause of action lies in defamation." Minn.Stat. § 543.19 Subd. 1(d)(3). This provision is a preemptive bar to personal jurisdiction over M & M in Minnesota. Senior Judge Magnuson found in *Paulucci v. William Morris Agency, Inc.,* 952 F.Supp. 1335 (D.Minn.1997), there is no personal jurisdiction over a defamation claim *even where* sufficient contacts exist for jurisdiction over other claims. Here, the alleged act of M & M, namely the telephone conversation between Groseth and Brenny, is an act outside Minnesota for jurisdiction purposes. *Northwest Airlines, Inc. v. Friday,* 617 N.W.2d 590, 594 (Minn.Ct.App.2000). "[M]aking telephone calls to Minnesota from another state [is] analogous to mailing letters to Minnesota from [another state]...." *Id.* at 593-94. This act is "such a minimum type of contact that in and of itself it might constitute unfairness against the [caller] if personal jurisdiction could be asserted in this state." *Id.* at 593 (citing *Wheeler v. Teufel,* 443 N.W.2d 555, 558 (Minn.Ct.App.1989)).

Plaintiffs also allege a violation of the Minnesota Deceptive Trade Practices Act, Minnesota Statute section 325D.44, against M & M. Compl. ¶ XXV. Under the remedies section of the statute, the sole remedy for deceptive trade practices is injunctive relief. Minn.Stat. § 325D.45; *Dennis Simmons, D.D.S., P.A. v. Modern Aero., Inc .,* 603 N.W.2d 336, 339 (Minn.Ct.App.1999). There are no material facts at issue regarding the risk of future harm in this case pertaining to M & M. Accordingly, injunctive relief is inappropriate and no other statutory remedy remains available. *Alsides v. Brown Inst., Ltd.,* 592 N.W.2d 468, 476 (Minn.Ct.App.1999).

For the above reasons, M & M's Motion to Dismiss is granted.

B. Dancel and Wright's Motion for Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. *Ludwig v. Anderson,* 54 F.3d 465, 470 (8th Cir.1995). The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." *Krenik v. County of Le Sueur,* 47 F.3d 953, 957 (8th Cir.1995). Further, "the mere existence of some alleged factual dispute between the parties is not sufficient by itself to deny summary judgment.... Instead, 'the dispute must be outcome determinative under prevailing law." ' *Get Away Club, Inc. v. Coleman,* 969 F.2d 664, 666 (8th Cir.1992) (citation omitted).

***5** While Dancel and Wright do not contest jurisdiction, "[a] court ... may raise the issue sua sponte and, indeed, the court has the duty to do so if the record suggests jurisdiction is lacking." *Yeldell v. Tutt,* 913 F.2d 533, 537 (8th Cir.1990). Like M & M, Dancel and Wright are out-of-state Defendants accused of committing acts outside the state causing injury in Minnesota. While Wright admits to giving Brenny permission to include the Dancel name and phone number on her letter, there is no evidence that Wright or any Dancel representative assisted in drafting or publishing any version of Brenny's letter. That Wright had multiple telephone conversations with Brenny does not change the jurisdictional analysis from that applied to the M & M fact pattern. For the reasons stated above, the purported conspiracy claim against

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works
Westlaw.

Dancel and Wright in paragraph 22 of the Complaint is insufficient, and the attendant defamation claim is barred by Minnesota Statute section 543.19 Subd. 1(d)(3).

Plaintiffs also allege a violation of the Minnesota Deceptive Trade Practices Act, Minnesota Statute section 325D.44, against Dancel and Wright. Compl. ¶ XXV. Again, the remedies section of the statute provides that the sole remedy for deceptive trade practices is injunctive relief. Minn.Stat. § 325D.45; *Simmons,* 603 N.W.2d at 339. There are no material facts at issue regarding the risk of future harm to Plaintiffs by Dancel and Wright. Accordingly, injunctive relief is inappropriate and no other statutory remedy remains available. *Alsides,* 592 N.W.2d at 476.

For the aforementioned reasons, Dancel and Wright's Motion is granted. [FN4]

FN4. On March 28, 2003, this Court previously granted the Motion to Dismiss of Defendant National Association of Small Trucking Companies [Docket No. 57] on the same jurisdictional and statutory grounds. *See* 3/28/03 Hr'g Tr. at 20-22. Defendants Mike Burke and TransCore Commercial Services, Inc. d/b/a DAT Services were both dismissed pursuant to party stipulations [Docket Nos. 71, 107]. Therefore, the only remaining Defendants in this case are Brenny Transportation, Inc., and Joyce Brenny.

C. Plaintiffs' Motion for Continuance

Plaintiffs seek further time for discovery and request continuing the Motions for Summary Judgment. Plaintiffs have had several months for discovery which concludes August 31, 2003. [FN5] No notices of depositions have been served on Defendants. *See* 7/29/03 Letter Brief of M & M's Counsel at 2. Plaintiffs have failed to establish how additional discovery might alter this ruling and a continuance is unnecessary in this case. The uncontroverted material facts establish the lack of jurisdiction over M & M, Dancel and Wright. Moreover, Plaintiffs' argument that M & M, Dancel and Wright "joined in" the letters written and sent by Brenny would not be further bolstered by obtaining additional deposition testimony or other discovery. The critical testimony regarding the creation of the letters is that provided by Brenny herself, which has already taken place and is of record. The absence of material fact disputes and necessary deposition testimony precludes the need for continuing the pending Summary Judgment Motions. Accordingly, Plaintiffs' Motion is denied.

FN5. The original discovery deadline was August 1, 2003 [Docket No. 15]. Magistrate Judge Erickson granted defense counsel's request for 30 additional days at a July 18, 2003 hearing. *See* 7/29/03 Letter Brief of M & M's Counsel at 2.

IV. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, IT IS HEREBY ORDERED that:

1. M & M's Motion to Dismiss and/or for Summary Judgment [Docket No. 99] is GRANTED.

*6 2. Dancel and Wright's Motion for Summary Judgment [Docket No. 90] is GRANTED and

3. Plaintiffs' Motion for Order Continuing the Motions for Summary Judgment [Docket No. 113] is DENIED.

2003 WL 22047910 (D.Minn.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works