> time of disclosure; ... is supplied to the Recipient by a third party having a legal right to do so; can be proved to the reasonable satisfaction of the other Party to have been developed independently by the Recipient without resort to the disclosure; or ... which the Recipient is obligated to disclose by law....
>
> (Distribution Agreement §§ 9.3, 9.3.1-9.3.5.) Even if LGM had alleged in its Complaint that Deltec breached § 9, which is not apparent from either the face of LGM's Complaint or from its memoranda on this motion, its passing reference to this provision is clearly insufficient to show a likelihood of success on the merits.

2. Tortious Interference with Business Relationship

*6 LGM next alleges that Deltec's March 29 letter tortiously interfered with its business relationships with its patients and business partners. (LGM's Mem. in Supp. at 9-11.) Under Minnesota law,

> [t]o establish a claim for tortious interference with prospective business relations, "a plaintiff must prove the defendant intentionally committed a wrongful act which improperly interfered with the prospective relationship." *Hunt v. University of Minn.*, 465 N.W.2d 88, 95 (Minn.Ct.App.1991) (citing *United Wild Rice, Inc. v. Nelson*, 313 N.W.2d 628, 633 (Minn.1982)). Justification or privilege is a defense to a claim of tortious interference. *Nordling v. Northern States Power Co.*, 478 N.W.2d 498, 506 (Minn.1991).

*Glass Service Co., Inc. v. State Farm Mut. Auto. Ins. Co.*, 530 N.W.2d 867, 871 (Minn.Ct.App.1995). "[O]ne intentionally and improperly interferes with another's prospective business relation by (1) inducing a third person not to enter into or to continue the prospective relation, or (2) preventing the other from continuing the prospective relationship." *Hough Transit, Ltd. v. Nat'l Farmers Org.*, 472 N.W.2d 358, 361 (Minn.Ct.App.1991) (citing *United Wild Rice, Inc. v. Nelson*, 313 N.W.2d 628, 632-33 (Minn.1982)).

"The law clearly requires the actor's conduct to be improper before liability for interference with prospective contractual relations will attach. To determine whether the actor's conduct is improper, several factors must be examined." *R.A., Inc. v. Anheuser-Busch, Inc.*, 556 N.W.2d 567, 571 (Minn.Ct.App.1996) (citing Restatement (Second) of Torts § 766B cmt a). These factors are:

> (a) the nature of the actor's conduct,
> (b) the actor's motive,
> (c) the interests of the other with which the actor's conduct interferes,
> (d) the interests sought to be advanced by the actor,
> (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
> (f) the proximity or remoteness of the actor's conduct to the interference, and
> (g) the relations between the parties.

*Id.* (citing Restatement (Second) of Torts § 767; *Northside Mercury Sales & Serv. v. Ford Motor Co.*, 871 F.2d 758, 761 (8th Cir.1989) (applying Minnesota law)).

LGM argues that Deltec intended to induce LGM's patients and business partners not to enter into or continue their prospective relations with LGM "by falsely advising them that LGM was no longer associated with DELTEC and, thus, would not be providing DELTEC products and services." (LGM's Mem. in Supp. at 10.) Deltec responds that it did not commit a wrongful act because it was permitted to send the letter under the Distribution Agreement. (Def.'s Mem. in Opp'n at 19.)

LGM has not shown a likelihood of success on its claim for tortious interference. First, under the Distribution Agreement LGM was a "non-exclusive distributor" and Deltec was permitted to sell its products directly to customers in LGM's territory. (Distribution Agreement § 2.1, *see also id.* § 8.2 ("Nothing in this Agreement shall prevent the Company from selling or supplying Products to third parties in or outside the Territory.") Second, as noted above, the Distribution Agreement permitted Deltec from withholding shipments of its products if LGM did not pay the invoices when due. (*Id.* § 7.4.) Thus, Deltec was entitled to stop offering its products through LGM. Considering the applicable factors, LGM has

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Westlaw.

not established that Deltec's exercise of its contractual rights was improper. *See R.A.*, 556 N.W.2d at 571 (finding as a matter of law that defendant was not liable for tortious interference with prospective contractual relations for exercising its contractual rights).

3. Violation of the Minnesota Deceptive Trade Practices Act ("MDTPA")

*7 LGM also alleges that Deltec's March 29 letter violated the MDTPA, Minn.Stat. 325D.44, subd. 1(3), (8). (LGM's Mem. in Supp. at 11-13.) The MDTPA provides that a person engages in a deceptive trade practice when the person, *inter alia:*

(3) causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another; ...

(8) disparages the goods, services, or business of another by false or misleading representation of fact ...

Minn.Stat. § 325D.44, subd. 1. To establish liability under the MDTPA, a complainant need not prove competition between the parties or actual confusion or misunderstanding. *Id.* § 325D.44, subd. 2. Proof of a mere likelihood of confusion or misunderstanding is sufficient. *Claybourne v. Imsland,* 414 N.W.2d 449, 451 (Minn.Ct.App.1987).

With respect to subpart (3) of subsection 1, LGM asserts that it is likely to succeed in showing a violation because "DELTEC's actions likely caused confusion or misunderstanding among LGM's patients and business partners with regard to LGM's affiliation with DELTEC." (LGM's Mem. in Supp. at 12.) LGM's concern is that the letter left its patients and partners wondering if LGM was affiliated with Deltec or not. (*See id.*) Contrary to LGM's assertions, however, there is nothing from the face of the letter that demonstrates a likelihood of confusion or misunderstanding as to LGM's affiliation with Deltec. [FN6] Deltec's statement that it was no longer able to offer its products through LGM was a true statement. LGM has cited no cases in which a court has determined that conduct similar to Deltec's violated the MDTPA. [FN7] Accordingly, at this time and on this record, the Court concludes that LGM has not shown a likelihood of success on this claim.

FN6. Although LGM alleges that Deltec's letter "actually caused such confusion," as one patient "abandoned LGM," (LGM's Mem. in Supp. at 12), ¶ 19 of Kusher's Declaration, which LGM cites in support, does not indicate any confusion on the part of the patient.

FN7. While certainly not a comprehensive survey of the law, it appears that subpart (3) typically deals with confusion or misunderstanding about affiliation in the context of deceptively similar trade names. *See, e.g., Claybourne,* 414 N.W.2d at 451; *Mid-List Press v. Nora,* 275 F.Supp.2d 997, 1003 (D.Minn.2003) (Doty, J.).

With respect to subpart (8) of subsection 1, LGM asserts that it is likely to succeed because "DELTEC's inappropriate communication clearly disparaged LGM's business since they were based on false and misleading representations." (LGM's Mem. in Supp. at 12.) The letter, according to LGM, "left LGM's patients and business partners with the clear impression that LGM had done something seriously wrong which caused DELTEC to no longer wish to do business with LGM." (*Id.*) Deltec responds that stating that it would no longer be offering its products through LGM was truthful and was authorized under the Distribution Agreement. (Deltec's Mem. in Opp'n at 20.) The burden is on LGM to prove that Deltec's statements were false. *United Wild Rice,* 313 N.W.2d at 635. For the reasons previously discussed, LGM has not met its burden. Accordingly, LGM has not demonstrated that it is likely to succeed on this claim.

4. Deceptive Acts Against Senior Citizens

Section 325F.71 provides for a supplemental civil penalty against persons who engage in conduct prohibited by the MDTPA and whose conduct has been perpetrated against one or more senior citizens--i.e., individuals who are age 62 or over. Minn.Stat. § 325F.71, subds. 1(a) and 2(a). Because LGM has not shown a

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

likelihood of success on its MDTPA claims, LGM has not shown a likelihood of success on this claim.

5. Violation of the Minnesota Uniform Trade Secrets Act

*8 LGM asserts that it will succeed on its claim that Deltec's letter misappropriated LGM's confidential patient information in violation of the Minnesota Trade Secrets Act, Minn.Stat. § 325C. (LGM's Mem. in Supp. at 14-15; LGM's Reply Mem. in Supp. at 8-9.) Minnesota's Trade Secrets Act requires the party seeking protection to show both the existence and the misappropriation of a trade secret. *Electro-Craft Corp. v. Controlled Motion, Inc.*, 332 N.W.2d 890, 897 (Minn.1983). To establish that a particular item is a "trade secret" under the Act, LGM bears the burden of proving that (1) the information is not generally known or readily ascertainable, (2) the information derives independent economic value from secrecy, and (3) they make reasonable efforts to maintain the information's secrecy. [FN8] *See NewLeaf Designs, L.L.C. v. BestBins Corp.*, 168 F.Supp.2d 1039, 1043 (D.Minn.2001) (Tunheim, J.); *Lexis-Nexis v. Beer*, 41 F.Supp.2d 950, 958 (D.Minn.1999) (Doty, J.).

FN8. The Act defines a "trade secret" as
information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
(i) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and
(ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.
Minn.Stat. § 325C.01, subd. 5.

LGM has not established a likelihood of success because it has not demonstrated that its customer lists are trade secrets. Beyond mere conclusory allegations (*see* LGM's Reply Mem. in Supp. at 8-9), LGM has not shown that the customer's names are not generally known or readily ascertainable, that the list derives independent economic value from its alleged secrecy, or that it has made reasonable efforts to maintain the lists' secrecy.

6. Business Defamation

Finally, LGM contends that it is likely to succeed in showing that Deltec's March 29 letter defamed it. (LGM's Mem. in Supp. at 15-16.) "In order for a statement to be considered defamatory it must be communicated to someone other than the plaintiff, it must be false, and it must tend to harm the plaintiff's reputation and to lower him in the estimation of the community." *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 255 (Minn.1980) (citations omitted). "Slanders affecting the plaintiff in his business, trade, profession, office or calling are slanders per se and thus actionable without any proof of actual damages." *Id.* (citations omitted). "Truth, however, is a complete defense, and true statements, however disparaging, are not actionable." *Id.*

Again, LGM has not shown a likelihood of success because it has not demonstrated that anything in Deltec's March 29 letter was false. At the cost of being repetitious, the letter stated that "due to business reasons, we are no longer able to offer Smiths Medical--Deltec products ... through LogiMedix." (Kellogg Aff. Ex. L.) This is a true statement. The letter does not say, as LGM believes it does, that "LGM can no longer offer any Deltec products ." (LGM's Reply Mem. in Supp. at 9.) While it is also true that LGM possesses 150 boxes of Deltec insulin cartridges available for sale (Kusher Supp. Decl. ¶ 5), this does not make Deltec's statement false. It is completely consistent for Deltec to state that it will *no longer* be able to offer its products through LGM effective March 29, and for LGM to have Deltec products simultaneously sitting on its shelves.

B. The Remaining *Dataphase* Factors

*9 Having concluded that LGM has not met its burden of establishing a likelihood of success on the merits of its claims, the remaining factors--none of which tip the balance of equities towards an injunction--may



Westlaw.

be dealt with briefly. "The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies. Thus to warrant ... preliminary [injunctive relief], the moving party must demonstrate a sufficient threat of irreparable harm." *Bandag, Inc. v. Jack's Tire & Oil, Inc.*, 190 F.3d 924, 926 (8th Cir.1999) (citation omitted). Because LGM has not met its burden with respect to success on the merits of its claims, the Court cannot infer that LGM would suffer irreparable harm unless Deltec is enjoined from contacting customers. *See Lexis-Nexis,* 41 F.Supp.2d at 959.

Furthermore, LGM has failed to meet its burden to show that the harm it will suffer in the absence of a preliminary injunction outweighs the potential harm that granting a preliminary injunction may cause Deltec. *See Dataphase,* 640 F.2d at 114. The essential inquiry in weighing the equities "is whether the balance of other factors tips *decidedly* toward the movant." *General Mills, Inc. v. Kellogg Co.*, 824 F.2d 622, 624 (8th Cir.1987) (emphasis added). Where the movant has failed, as here, to "demonstrate a probability of ultimate success, the possibility that it will suffer any harm from [the challenged activity] is highly speculative and therefore does not serve to tip the balance of equities." *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1184 (8th Cir.1998). At this stage it would also be contrary to public policy to enjoin Deltec, given that LGM has not carried its burden on the other *Dataphase* factors.

*II. Deltec's Motion*

Deltec has filed a Motion for Temporary Restraining Order or Preliminary Injunction and for Declaratory Relief. It also requests the appointment of a receiver. (Deltec's Mem. in Supp. at 2, 27.) The Court will begin with Deltec's request for a receiver.

A. Appointment of a Receiver

According to its Proposed Order, Deltec requests an order stating that, "A receiver shall be appointed to marshal all assets of LogiMedix so that its debt to Deltec can be fully satisfied." (Proposed Order ¶ B; *see* Deltec's Mem. in Supp. at 2, 27.) "A receiver is a person appointed by the court to be 'an officer of the court to receive, collect, care for, administer, and dispose of the property or the fruits of the property of another or others brought under the orders of the court by the institution of a proper action or actions." ' 13 James Wm. Moore et al., *Moore's Federal Practice* § 66.02 (3d ed.2004) (footnote omitted); *see Booth v. Clark,* 58 U.S. 322, 331 (1854) ("A receiver is an indifferent person between parties, appointed by the court to receive the rents, issues, or profits of land, or other thing in question in this court, pending the suit, where it does not seem reasonable to the court that either party should do it."). "The appointment of a receiver in a diversity case is a procedural matter governed by federal law and federal equitable principles." *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir1993) (citing Fed.R.Civ.P. 66 and Advisory Committee's Note) (other citations omitted).

***10** "A receiver is an extraordinary equitable remedy that is only justified in extreme situations." *Id.* Although there is no precise formula for determining when to appoint a receiver, factors typically warranting appointment are (1) a valid claim by the party seeking the appointment, (2) the probability that fraudulent conduct has occurred or will occur to frustrate that claim, (3) imminent danger that property will be concealed, lost, or diminished in value, (4) inadequacy of legal remedies, (5) lack of a less drastic equitable remedy, and (6) likelihood that appointing the receiver will do more good than harm. *Id.* 316-17.

Deltec contends that a receiver should be appointed in this case because "LogiMedix is in desperate financial straits and Kusher has been indicted on serious criminal charges." (Deltec Mem. in Supp. at 27.) Without a receiver, Deltec continues, it "is in danger of being deprived of any remedy, both with respect to its current possessory interest in collateral under the Security Agreement, and with respect to other assets that could be used to satisfy LogiMedix's multi-million dollar

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Westlaw.

debt to Deltec." (*Id.*) LGM responds that the extraordinary remedy of a receiver should not be allowed because Deltec has not shown any evidence of fraud, imminent danger, or inadequacy of legal remedies. (LGM's Mem. in Opp'n at 3.)

The Court will not appoint a receiver at this time. A receiver is an "extraordinary remedy that is only justified in extreme situations." *Aviation Supply Corp.*, 999 F.2d at 316. Although LGM is deep into debt to Deltec and Kusher has been indicted in an unrelated Medicare fraud case, this is not an "extreme situation." Deltec has not shown a sufficient probability that fraudulent conduct has occurred or will occur to frustrate its claims. Nor has it shown that its property interests are in imminent danger of being concealed, lost, or diminished in value. Furthermore, Deltec has available adequate legal remedies--i.e., exercising its rights as a secured party under the Uniform Commercial Code and seeking damages at trial. Finally, Deltec has not established that appointing a receiver would do more good than harm, given the costs of appointment.

B. Deltec's Motion for a Temporary Restraining Order or Preliminary Injunction

In addition to a receiver, Deltec also requests an order stating that:

. "LogiMedix, Kusher, KFLP" and their agents "are prohibited [from] taking any action to encumber, convey, transfer, or alienate any assets, including but not limited to accounts receivable, inventory, real estate, or any other thing of value owned, in whole or in part, by LogiMedix" (Proposed Order ¶ A);

. "LogiMedix, Kusher and KFLP shall cooperate in a complete accounting of all assets, operations and financial condition of LogiMedix" (Proposed Order ¶ E);

. "All LogiMedix's customer information may lawfully [be] used by Deltec for the purposes of 1) contacting such customers to assure them of the availability of continued supply from Deltec and/or other distributors, and 2) collecting all accounts payable to LogiMedix which comprise Deltec collateral" (Proposed Order ¶ F); and

*11 . "LogiMedix, Kusher, KFLP" and their agents "are prohibited from making, either directly or indirectly, any disparaging or untrue statements about Deltec to any LogiMedix customer" (Proposed Order ¶ G).

The Court will start its *Dataphase* analysis by assessing Deltec's likelihood of success on its claims.

1. Likelihood of Success

Although the Court is satisfied that Deltec has shown a likelihood of success on each of its breach of contract claims, [FN9] it has not shown a likelihood of success on any other claim. First, Deltec has made no effort in its memoranda to show a likelihood of success on its claims for intentional and negligent misrepresentation and its claims under the Minnesota Uniform Deceptive Trade Practices Act. Second, while Deltec at least made an effort to show a likelihood of success on its defamation claim, its effort fails. The only evidence put forth of LGM's alleged defamation comes from the affidavit of Rod Kellogg. (*See* Deltec's Mem. in Supp. at 21.) Kellogg states, "Deltec informed LogiMedix that LogiMedix's representative had been stating to customers that Deltec pumps were 'not available." ' (Kellogg Aff. ¶ 57.) Deltec has not shown, however, that this statement was false. *See Stuempges*, 297 N.W.2d at 255 (stating that for a statement to be defamatory "it must be false"). It is possible that when this statement was made, if it was made, Deltec's products where actually--if only temporarily--"not available." This is especially possible in the case of the alleged supply shortage. *See supra* n. 3. Therefore, the Court cannot conclude that Deltec has shown likely success on this claim.

FN9. Deltec has shown it is likely to succeed on its claims that (1) LGM is in breach of § 7.4 of the Distribution Agreement by not paying Deltec's invoices within 30 days of the date of the invoice; (2) LGM is in breach of § 11(a) of the Security Agreement by failing to secure financing to pay its debt to Deltec, and (3) that KFLP is in default of the Guaranty.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Westlaw.

2. Irreparable Harm

Although Deltec has shown a likelihood of success on its breach of contract claims, it has not shown irreparable harm. "Failure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction." *Watkins,* 346 F.3d at 844 (citations omitted). "When there is an adequate remedy at law, a preliminary injunction is not appropriate." *Id.* (citation omitted). Here, Deltec has an adequate remedy at law. As Deltec recognizes in its memoranda, and as LGM's counsel noted at oral argument, Deltec has rights as a secured party under the Security Agreement and the Uniform Commercial Code to foreclose on its security interests. It has made no attempt, however, to exercise its rights.

Moreover, while "[t]he Eighth Circuit has held that the threat of unrecoverable economic loss due to a company's bankruptcy or insolvency can constitute irreparable harm," *Slidell, Inc. v. Millennium Inorganic Chemicals, Inc.,* Civ. No. 02-213, 2002 WL 649086, at *4 (D.Minn. Apr. 17, 2002) (Tunheim, J.) (citing *Iowa Utilities Board v. Fed. Communications Comm'n,* 109 F.3d 418, 425-26 (8th Cir.1996); *Airlines Reporting Corp. v. Barry,* 825 F .2d 1220, 1227 (8th Cir.1987)), Deltec has made no showing that LGM is bankrupt or insolvent. Despite demonstrating that LGM has not paid its invoices, Kusher has laid-off his sales force, and Kusher has been indicted in an unrelated matter, Deltec has not yet "demonstrated a clear probability that [LGM] will not be able to satisfy an award of adequate damages." *Airlines Reporting Corp.,* 825 F.2d at 1227. If discovery reveals evidence of LGM's insolvency, to give one example, Deltec may return to this Court for an appropriate order. At this time, however, Deltec has not satisfied its burden for the requested preliminary injunctions.

C. Deltec's Motion for Expedited Discovery

***12** Finally, Deltec has filed a Motion for Expedited Discovery in which it requests an order that:

. "LogiMedix, Kusher and KFLP shall produce to Deltec's counsel in Minneapolis by May 17, 200[4] all documents responsive to Delte[c's] First Set of Document Requests" (Proposed Order ¶ C); and

. "Kusher shall submit to a deposition at the offices of Deltec's counsel in Minneapolis commencing May 21, 2004, and continuing thereafter until completed" (Proposed Order ¶ E).

At oral argument, LGM's counsel represented that LGM, Kusher, and KFLP would respond to Deltec's document requests if given a few weeks. LGM's counsel also represented that Kusher would be available for a deposition in Florida. Based on these representations, the Court will grant Deltec's motion, but the Court will modify the requested date by which LGM, Kusher, and KFLP must respond to Deltec's document request and will modify the requested location and date of Kusher's deposition.

Conclusion

Based on the foregoing, and all of the files, records, and proceedings herein, IT IS HEREBY ORDERED that:

1. Plaintiff Hollywood Healthcare Corp., d/b/a LogiMedix's Motion for a Temporary Restraining Order, Preliminary Injunction and Expedited Hearing (Doc. No. 2) is DENIED;

2. Defendant Deltec, Inc.'s Motion for Temporary Restraining Order or a Preliminary Injunction and for Declaratory Relief (Doc. No. 5) and its request for the appointment of a receiver is DENIED;

3. Defendant Deltec, Inc.'s Motion for Expedited Discovery (Doc. No. 8) is GRANTED:

a. LGM, Kusher and KFLP shall produce to Deltec's counsel in Minneapolis on or before June 1, 2004, unless a later date is agreed upon by the parties, all documents responsive to Deltec's First Set of Document Requests; and