# EXHIBIT B

LEXSEE 2003 U.S. DIST. LEXIS 17920

**United HealthCare Insurance Co. and AARP, Plaintiffs, v. AdvancePCS, Defendant.**

**Civil No. 01-2320 (RHK/AJB)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA**

***2003 U.S. Dist. LEXIS 17920***

**October 6, 2003, Decided**

**PRIOR HISTORY:** *United Healthcare Ins. Co. v. Advancepcs, 316 F.3d 737, 2002 U.S. App. LEXIS 22707 (8th Cir. Minn., 2002)*

**DISPOSITION:** **[*1]** Plaintiffs' Partial Motion to Dismiss granted in part and denied in part. Count I of Defendant AdvancePCS's Counterclaim dismissed with prejudice.

**LexisNexis(R) Headnotes**

**COUNSEL:** David B. Potter, Bret A. Puls, and Bray Dohrwardt, Oppenheimer, Wolff & Donnelly L.L.P., Minneapolis, Minnesota, and Michael J. Lyle, Christine P. Hsu, Maureen Testoni, Peter M. Friedman, and George J. Hazel, Weil, Gotshal & Manges, L.L.P., Washington, D.C., for Plaintiff United HealthCare Insurance Company.

Mark J. Briol, Amy J. Ihlan, and Vicki J. Bitner, Briol & Associates, P.L.L.C., Minneapolis, Minnesota, for Plaintiff AARP.

W. Thomas McGough Jr., Mary J. Hackett, and Christopher J. Soller, Reed Smith L.L.P., Pittsburgh, Pennsylvania, and Kevin P. Hickey and Lewis A. Remele Jr., Bassford, Lockhart, Truesdell & Briggs, P.A., Minneapolis, Minnesota, for Defendant AdvancePCS.

**JUDGES:** RICHARD H. KYLE, United States District Judge.

**OPINIONBY:** RICHARD H. KYLE

**OPINION:**

## MEMORANDUM OPINION AND ORDER

### Introduction

This matter comes before the Court on Plaintiffs' Partial Motion to Dismiss. United HealthCare Insurance Company ("United") and AARP (collectively "Plaintiffs") move to dismiss Counts **[*2]** I and II of AdvancePCS's Counterclaim on the ground that they fail to state claims for which relief can be granted under *Rule 12(b)(6)*. (Pls.' Mem. in Supp. at 1.) For the reasons set forth below, the Court will grant the motion in part, and deny it in part.

### Background

AdvancePCS is a "pharmacy benefit manager" for prescription drug discount programs. (Countercl. P4.) It negotiates discounts with entities in the pharmaceutical system for those belonging to the discount programs. (Id.) In 1995, AdvancePCS was chosen by AARP and Retired Persons Services, Inc. ("RPS"), the administrator of AARP's Pharmacy Services, to pilot a discount program for AARP members who lacked prescription drug insurance. (Id. P5.) Drawing on this pilot program, in 1997, AdvancePCS introduced the AARP Member Choice Program, under which enrolled AARP members were sent a card that they could present to participating pharmacies for discounts. (Id. PP6-8.) In September 1997, AdvancePCS and RPS entered into a two-year agreement in which AdvancePCS was responsible for creating the retail pharmacy network, negotiating discounts, and issuing cards, while RPS managed the mail-order component. ( **[*3]** Id. PP9, 11.) In January 2000, AdvancePCS and RPS extended their agreement through December 31, 2002. (Id. PP13-14.)

During 2000, however, RPS experienced financial difficulties and struggled with its obligations under the

agreement. (Id. P17.) In light of RPS's difficulties, AARP, United, RPS, and AdvancePCS discussed a new direction for the program. (Id. P18.) On April 19, 2001, AARP replaced RPS with United as the administrator of AARP's Pharmacy Service, and United replaced AdvancePCS with Express Scripts, Inc. ("ESI") as the discount program's pharmacy benefit manager, effective June 1, 2001. (Id. PP17-22.) Because the agreement between AdvancePCS and RPS was based on RPS administrating the AARP program, AdvancePCS was relieved of its obligations to RPS when RPS ceased being the administrator. (Id. PP23, 24.) As June 1, 2001 approached, United and ESI were not ready to take over the program, so United asked AdvancePCS to continue as pharmacy benefit manager until August 31, 2001. (Id. P25.) AdvancePCS agreed and on September 1, 2001, United and ESI took over the program. (Id. PP26-27.) On that same day, AdvancePCS launched its own AdvancePCS Plan, **[*4]** which it began developing in early 2001 and which continued to use AdvancePCS's "H020" carrier number. (Id. PP28-30, 34-35.)

Transitioning AARP's discount drug program from RPS and AdvancePCS to United and ESI posed several challenges, including issuing new cards with new identification numbers, setting up a pharmacy network, and persuading participants to present new cards. (Id. PP36-44.) Without AdvancePCS managing the program, however, there was a decrease in the number of claims processed and some claims were rejected. (Id. PP41-44.) AARP, United, and ESI, blamed AdvancePCS for these problems. (Id. P45.) In late 2001, ESI, with the approval of AARP and United, demanded that pharmacies change their customer records to replace AdvancePCS's carrier number with ESI's. (Id. P46.) This change caused customers selecting the AdvancePCS Plan to be unknowingly shifted to ESI and led to the rejection of claims processed by AdvancePCS. (Id. PP47, 48.) In March 2002, the Plaintiffs secured a preliminary injunction in this Court, subsequently affirmed by the Eighth Circuit, stopping AdvancePCS from operating its AdvancePCS Plan. (Id. P49.) AdvancePCS now alleges, **[*5]** by way of its Counterclaim, that Plaintiffs are liable for the economic losses it suffered because (a) Plaintiffs negligently breached an assumed duty to properly transition the program and (b) Plaintiffs engaged in unfair competition.

**Standard of Decision**

Under *Rule 12(b)(6)*, all factual allegations must be accepted as true and every reasonable inference must be granted in favor of the complainant. *Fed. R. Civ. P. 12(b)(6)*; see *Midwestern Mach., Inc. v. Northwest Airlines, Inc., 167 F.3d 439, 441 (8th Cir. 1999)*; *Carney v. Houston, 33 F.3d 893, 894 (8th Cir. 1994)*. "Dismissal under *Rule 12(b)(6)* serves to eliminate actions which are fatally flawed in their legal premises and destined to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles, Mo., 244 F.3d 623, 627 (8th Cir. 2001)* (citation omitted). A cause of action "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Schaller Tel. Co. v. Golden Sky Sys., Inc., 298 F.3d 736, 740 (8th Cir. 2002)* **[*6]** (citations omitted). In analyzing the adequacy of a complaint's allegations under *Rule 12(b)(6)*, the Court must construe the complaint liberally and afford the plaintiff all reasonable inferences to be drawn from those facts. See *Turner v. Holbrook, 278 F.3d 754, 757 (8th Cir. 2002)*. In treating the factual allegations as true, however, the Court need not accept as true wholly conclusory allegations, *Springdale Educ. Ass'n v. Springdale Sch. Dist., 133 F.3d 649, 651 (8th Cir. 1998)*, and will not "blindly accept the legal conclusions drawn by the pleader from the facts." *Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990)* (citation omitted).

**Analysis**

On this motion, Plaintiffs argue that the Court must dismiss two of AdvancePCS's three counterclaims. First, Plaintiffs assert that dismissal of AdvancePCS's claim for breach of an assumed duty is required because economic losses are not recoverable under Minnesota law. Second, Plaintiffs assert that AdvancePCS's claim for unfair competition must be dismissed because it is duplicative of its third counterclaim for tortious interference with contractual relationships. **[*7]** The Court will address each argument in turn.

**I. Assumption of Duty**

Plaintiffs contend that the Court should dismiss AdvancePCS's claim for breach of an assumed duty because it cannot recover economic losses under Minnesota law. AdvancePCS argues that Arizona law applies and that Arizona recognizes claims for economic losses associated with breach of an assumed duty. The Court must therefore determine whether to apply Minnesota or Arizona law.

Before the Court can engage in a choice of law analysis, however, it must first determine whether a conflict exists. *Nodak Mut. Ins. Co. v. Am. Family Mut. Ins. Co., 604 N.W.2d 91, 93-94 (Minn. 2000)*. A conflict exists if the choice of one forum's law over the other is outcome determinative. See *Myers v. Gov't Employees Ins. Co., 302 Minn. 359, 225 N.W.2d 238, 241 (Minn. 1974)*. Here, although both jurisdictions recognize a cause of action for breach of an assumed duty, Arizona allows recovery for economic losses, while Minnesota

does not. Compare *Lloyd v. State Farm Mut. Auto. Ins. Co., 176 Ariz. 247, 860 P.2d 1300, 1303 (Ariz. Ct. App. 1992)* (allowing recovery for economic losses associated with **[*8]** breach of an assumed duty), with *Northfield Ins. Co. v. St. Paul Surplus Lines Ins. Co., 545 N.W.2d 57, 63 (Minn. Ct. App. 1996)* (disallowing recovery). n1 Because AdvancePCS is suing for breach of an assumed duty on account of the economic losses it suffered, the conflict of laws is clear.

n1 Both states follow the Restatement (Second) of Torts *§ 323*, which provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for *physical harm* resulting from his failure to exercise reasonable care to perform his undertaking, if
> (a) His failure to exercise such care increases the risk of such harm, or
> (b) The harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts *§ 323* (emphasis added).

### A. Due Process

Upon **[*9]** finding a conflict of laws, the Court must ensure that each state has significant contacts with the case so that its laws can be constitutionally applied. *Jepson v. Gen. Cas. Co. of Wis., 513 N.W.2d 467, 469 (Minn. 1994)*. As the Supreme Court has stated:

> For a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of law is neither arbitrary nor fundamentally unfair.

*Allstate Ins. Co. v. Hague, 449 U.S. 302, 312-13, 66 L. Ed. 2d 521, 101 S. Ct. 633 (1981)*.

Both states have significant contacts with this litigation. All parties do business in Minnesota, United's headquarters for the AARP program is located in Minnesota (Answer P5; Second Am. Compl. P7), and the injunction issued in this case was obtained in the District of Minnesota, under Minnesota law. AdvancePCS developed its AdvancePCS Plan at its pharmacy program operations center in Arizona and AARP did business in Arizona when AdvancePCS was its pharmacy benefit manager. (Bessant Aff. PP2-7.) United's contacts with Arizona, however, **[*10]** are more tenuous. AdvancePCS alleges that United does business in many, if not all 50 states, and that it, along with AARP, "directed their misconduct into Arizona and the impact of such misconduct affected AdvancePCS's operations in Arizona more so than in any other state." (Def.'s Mem. in Opp'n at 10.) Plaintiffs' reply brief, however, does not actually contest United's Arizona contacts; instead, it focuses on AdvancePCS's contacts with Arizona, or lack thereof. (Pls.'s Reply Mem. in Supp. at 7-10.) Therefore, for the purposes of this motion, the Court finds that it could apply either state's law consistent with due process. See *Allstate, 449 U.S. at 317-18* ("By virtue of [their presence in both states, no party] can hardly claim unfamiliarity with the laws of the host jurisdiction and surprise that the state courts might apply forum law to litigation in which the compan[ies] [are] involved.").

### B. Minnesota Choice of Law Analysis

Federal courts sitting in diversity apply the forum state's conflict of laws rules. *Nesladek v. Ford Motor Co., 46 F.3d 734, 736 (8th Cir. 1995)*; see also *Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 85 L. Ed. 1477, 61 S. Ct. 1020 (1941)*. **[*11]** Minnesota has adopted the following choice-influencing factors for choice of law analysis: (1) predictability of result, (2) maintenance of interstate and international order, (3) simplification of the judicial task, (4) advancement of the forum's governmental interest, and (5) application of the better rule of law. *Milkovich v. Saari, 295 Minn. 155, 203 N.W.2d 408, 412 (Minn. 1973)*. The first three factors are largely inapplicable in tort actions, see *id.*, and the fifth factor only applies when the other factors do not resolve the issue. *Myers, 225 N.W.2d at 244*. Therefore, the fourth factor takes on significant weight in this case.

Advancement of the forum's governmental interest is concerned with determining which law most advances a significant interest of the forum. *Nodak, 604 N.W.2d at 95*. This factor ensures that Minnesota courts are not "called upon to determine issues under rules which, however accepted they may be in other states, are inconsistent with [Minnesota's] own concept of fairness and equity." *Milkovich, 203 N.W.2d at 417*. When applying this factor, courts consider both Minnesota's governmental **[*12]** interests and the relative interests of the non-forum state. *Northwest Airlines, Inc. v. Astraea Aviation Servs. Inc., 111 F.3d 1386, 1394 (8th Cir. 1997)*.

AdvancePCS asserts that application of Arizona law would advance both states' interests in compensating tort victims and advance Arizona's interest in ensuring that commercial matters are addressed when a duty is voluntarily assumed. Conversely, Plaintiffs contend that allowing recovery of economic losses would be inconsistent with Minnesota's concept of fairness and equity because Minnesota courts apply the law as it presently exists and are reluctant to impose duties to protect on those doing business with each other.

Comparing the relative policy interests of the two states, this Court concludes that Minnesota's interest is stronger. While Arizona may allow recovery of economic losses when an assumed duty is breached, Minnesota's "concept of fairness and equity," *Milkovich, 203 N.W.2d at 417*, simply does not permit such recovery. Minnesota courts are "bound to apply the law as it presently exists," *Northfield, 545 N.W.2d at 62*, and thus favor a plain text reading of *§ 323*, **[*13]** which does not allow recovery for economic losses. *Id. at 62-63*; Restatement (Second) of Torts *§ 323*. In contrast, the Arizona court's cursory reading of this cause of action in Lloyd provides no rationale for departing from the plain text of the Restatement by allowing recovery of economic losses. *Lloyd, 860 P.2d at 1303*. Rather, Arizona's treatment of economic losses is limited to one sentence in one opinion. *Id.* ("The volunteer may be liable for economic harm as well as physical harm."). Without the Arizona courts articulating some reason for allowing recovery of economic losses, this Court cannot find a coherent governmental interest that outweighs Minnesota's interests in applying the law as it presently exists. Thus, comparing the overall government interests of the two states, the Court finds that Minnesota's governmental interests are stronger and better articulated than Arizona's. Accordingly, this factor favors application of Minnesota law.

**C. Conclusion**

Factors one, two, and three favor neither state, while factor four favors Minnesota. Because the fourth factor resolves the choice of law **[*14]** issue, the fifth factor need not be examined. n2 Therefore, the choice-influencing factors favor application of Minnesota law, which does not allow recovery for economic losses stemming from a breach of an assumed duty. Accordingly, the Court concludes that AdvancePCS has failed to state a claim upon which relief can be granted and Count I must be dismissed. n3

n2 The fifth factor applies only when the other choice-influencing factors leave the choice of law uncertain. *Myers, 225 N.W.2d at 368*. Although the Court need not determine the better rule of law in this instance, other courts have been unwilling to follow Arizona and "limit recovery under the voluntary undertaking doctrine to bodily injury or physical damage which is the context within which this doctrine developed." *Weisblatt v. Chicago Bar Ass'n, 292 Ill. App. 3d 48, 684 N.E.2d 984, 988, 225 Ill. Dec. 993 (Ill. Ct. App. 1997)*. See, e.g., *Thiessen v. Covenant Med. Ctr., Inc., 636 N.W.2d 74, 82 (Iowa 2001)*; *Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris, Inc., 17 F. Supp. 2d 1170, 1182-83 (D. Or. 1998)*; *Shaner v. United States, 976 F.2d 990, 994 (6th Cir. 1992)*. Were the Court required to address the fifth factor, however, it would determine that Minnesota has the better rule of law. **[*15]**

n3 Were Arizona law to be applied, the Court would find that AdvancePCS has failed to allege facts sufficient to permit a finding that Plaintiffs assumed a duty. An assumed duty requires one to "render services to another" and the service must be relied upon to induce the other from taking precautionary measures. Restatement (Second) of Torts *§ 323*; see *Lloyd, 860 P.2d at 1304*; *Tollenaar v. Chino Valley Sch. Dist., 190 Ariz. 179, 945 P.2d 1310, 1312 (Ariz. Ct. App. 1997)*. AdvancePCS baldly asserts that Plaintiffs voluntarily assumed a duty to properly transition the discount program. (Countercl. P51.) Plaintiffs respond that AdvancePCS has not alleged a service, as recognized under Arizona law, or that it forwent other precautions in reliance. Plaintiffs are correct. AdvancePCS has not provided any authority recognizing that this transition is a service rendered to them. AdvancePCS relies exclusively on Lloyd, but Lloyd dealt with an insurance company's breach of an assumed duty to defend, which is a far cry from what AdvancePCS advocates here. See *Lloyd, 860 P.2d at 1304*. Reading Lloyd as AdvancePCS suggests would distort it beyond recognition and imprudently inject the doctrine of assumed duties into situations the Arizona court surely did not contemplate. Moreover, although AdvancePCS asserted at oral argument that it relied on a non-negligent transition by "setting up our own program" (Tr. Oral Argument at 20-21), it has not alleged what precautionary measures they were induced to forgo. *Tollenaar, 945 P.2d at 1312*. Asserting that Plaintiffs voluntarily assumed a duty does not make it so. The Court need not accept as true wholly conclusory

allegations, *Springdale, 133 F.3d at 651*, and will not "blindly accept the legal conclusions drawn by the pleader from the facts." *Westcott, 901 F.2d at 1488* (citation omitted). Accordingly, had the Court been called upon to decide the issue, the Court would dismiss Count I under Arizona law.

**[*16]**

**II. Violation of Unfair Competition Statutes**

Plaintiffs contend that Count II (unfair competition) of AdvancePCS's Counterclaim must be dismissed because it is duplicative of Count III (tortious interference). n4 Count II realleges the preceding paragraphs of the Counterclaim and claims:

> By engaging in the wrongful conduct described above, including but not limited to, mandating that pharmacies reject all claims directed to the AdvancePCS Plan, encouraging pharmacists to alter patient information to remove references or identifiers to the AdvancePCS Plan, and taking steps to destroy the AdvancePCS Plan, United and AARP acted unlawfully and engaged in unfair competition in violation of the law.

(Countercl. P59.) Count III realleges the preceding paragraphs and claims interference with existing contracts AdvancePCS had with pharmacists and interference with prospective contractual relationships with pharmacists and physicians. (Countercl. PP64-70.)

> n4 AdvancePCS asserts that it has sufficiently stated a claim for unfair competition under Minnesota law. (Def. Mem. in Opp'n at 2, 14-15.) But even if there were a choice of law issue here, the Court concludes that Minnesota law applies because there is no conflict between Minnesota and Arizona law. Compare *Fairway Constructors, Inc. v. Ahern, 193 Ariz. 122, 970 P.2d 954, 956 (Ariz. Ct. App. 1998)* (relying on W. Prosser and W. Keeton, The Law of Torts § 130, at 1013-30 (5th ed. 1984), with *Rehabilitation Specialists, Inc. v. Koering, 404 N.W.2d 301, 305-06 (Minn. Ct. App. 1987)* (same).

**[*17]**

Under Minnesota law, "unfair competition is not a tort with specific elements; it describes a general category of torts which courts recognize for the protection of commercial interests." *Rehabilitation Specialists, Inc. v. Koering, 404 N.W.2d 301, 305-06 (Minn. Ct. App. 1987)*. Torts included under the unfair competition umbrella include improper use of trade secrets and *tortious interference with contract*, among others. *Id.* (citing *United Wild Rice, Inc. v. Nelson, 313 N.W.2d 628, 632 (Minn. 1982))*.

The Court finds that AdvancePCS's unfair competition claim is sufficient to put Plaintiffs on notice as to the claims against them. "The [counterclaim] does not, and need not, set forth a detailed account of the manner in which the [Plaintiffs] engaged in unfair competition." *Radisson Hotels Int'l, Inc. v. Westin Hotel Co., 931 F. Supp. 638, 643-44 (D. Minn. 1996)*. Construing AdvancePCS's counterclaim liberally and affording it all reasonable inferences, the Court cannot determine that AdvancePCS's unfair competition claim is necessarily based on precisely the same conduct as its tortious interference claim. *Id. at 644.* **[*18]** Nor does the Court find that the legal elements of AdvancePCS's unfair competition claim are necessarily subsumed within the requirements of tortious interference. Id. This question is more appropriate for the summary judgment stage when the facts will be more developed. Accordingly, the Court will deny Plaintiffs' request to dismiss Count II.

**Conclusion**

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS ORDERED** that Plaintiffs' Partial Motion to Dismiss (Doc. 115) is **GRANTED IN PART** and **DENIED IN PART**. Count I of Defendant AdvancePCS's Counterclaim (breach of an assumed duty) is **DISMISSED WITH PREJUDICE**.

Dated: October 6, 2003

RICHARD H. KYLE

United States District Judge