# EXHIBIT E

H
Only the Westlaw citation is currently available.

United States District Court,
D. Minnesota.

INTER-TEL, INC., Plaintiff,
v.
CA COMMUNICATIONS, INC., Marc Agar, Michael Agar, Brad Coburn, Jason Archuleta, Bill Pavelko, and Judy Pedlar, Defendants.

**No. Civ. 02-1864PAMRLE.**

Dec. 29, 2003.

Bruce J. Douglas, Dionne M. Benson, Larkin, Hoffman, Daly & Lindgren, Bloomington, MN, for Plaintiff.

Barbara P. Berens, Erin K. Fogarty Lisle, Kelly & Berens, Mpls, MN, for Defendant.

MEMORANDUM AND ORDER

MAGNUSON, J.

***1** This matter is before the Court on Defendants' Motion for Summary Judgment. For the reasons that follow, the Motion is granted in part and denied in part. [FN1]

FN1. This is not the first time the parties have been before this Court. In July 2002, Inter-Tel sought injunctive relief to enforce the individual Defendants' non-competition agreements. The Court found that there was insufficient evidence that the agreements were enforceable and denied Inter-Tel's Motion for a Temporary Restraining Order.

BACKGROUND

Plaintiff Inter-Tel, Inc. is a telephone equipment company headquartered in Arizona. In January 2002, Inter-Tel bought part of the business of McLeodUSA, Inc. ("McLeod"), a company headquartered in Iowa. The portion of McLeod's business that Inter-Tel bought was called Integrated Business Systems ("IBS"). It appears that IBS was located in Minnesota, and primarily performed service on Toshiba telephone equipment for its customers. The assets acquired by Inter-Tel consisted of IBS's service maintenance contracts for telephone equipment.

Five of the individual Defendants, Marc Agar, Michael Agar, Jason Archuleta, Bill Pavelko, and Judy Pedlar, are former employees of McLeod. [FN2] All of these Defendants were terminated as part of a reduction in force on or before the date of Inter-Tel's purchase of IBS. The sixth individual Defendant, Brad Coburn, worked as a subcontractor for McLeod but was never an employee of McLeod. According to Inter-Tel, the five former employees were subject to covenants not to compete and confidentiality agreements and these agreements were assigned to Inter-Tel as part of the purchase of IBS.

FN2. Defendants Pedlar and Archuleta reached a settlement with Inter-Tel and thus no claims against these Defendants remain for resolution.

Inter-Tel alleges that Defendants Marc Agar and Brad Coburn formed Defendant CA Communications, Inc., shortly after Marc Agar was terminated from McLeod in December 2001. CA Communications then hired the remaining individual Defendants, albeit not until after these Defendants were terminated by McLeod. According to Inter-Tel, all of the individual Defendants are either violating the terms of the non-competition and confidentiality agreements they signed with McLeod or are engaging in the common-law torts of unfair competition, business disparagement, misappropriation of trade secrets, and tortious interference with contracts. Among Inter-Tel's allegations are that employees of CA Communications have represented to former McLeod customers that CA Communications, not Inter-Tel, bought their service maintenance contracts, and that one of the individual Defendants, Marc Agar, solicited McLeod employees to break their employment contracts.

Defendants (aside from Coburn) do not dispute that they signed confidentiality and non-competition agreements with McLeod. They contend, however,

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

that those agreements were superseded by the severance agreements each was required to sign when their employment with McLeod ended. As part of the severance agreement, each individual Defendant signed a "Letter of Confirmation" from McLeod that released the employee from any previous non-compete agreement. This Letter of Confirmation contained its own non-competition agreement that required the former employee not to solicit customers or employees of McLeod for one year and not to disparage McLeod, and provided that the terms of any previously signed confidentiality agreement remained in effect until the employee's severance payments ended. The Letter of Confirmation did not specify that it was assignable to any third party or otherwise mention Inter-Tel. Defendants argue that, because Inter-Tel may not enforce the agreements, all of Inter-Tel's claims fail.

DISCUSSION

A. Standard of Review

***2** Rule 56(c) provides that a motion for summary judgment shall be granted only if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When considering a motion for summary judgment, the Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the non-moving party. *Enter. Bank v. Magna Bank,* 92 F.3d 740, 747 (8th Cir.1996). The burden of demonstrating that there are no genuine issues of material fact rests on the moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party has carried its burden, the non-moving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Krenik v. County of LeSueur,* 47 F.3d 953, 957 (8th Cir.1995).

The first issue to be determined is whether the individual Defendants are bound by any restrictive covenants. If the individual Defendants are bound by restrictive covenants, the Court must next determine whether Inter-Tel can enforce those covenants.

B. Covenants not to Compete

As noted above, all of the individual Defendants save Coburn signed covenants not to compete at some point during their employment with McLeod. Although the agreements were not identical, each agreement required the employee to maintain McLeod's confidential information and to refrain from competing with McLeod for a certain period of time after the employment relationship ended. (Behrens Aff. Ex. A.) Only one agreement, that of Michael Agar, provided that it could be assigned by McLeod to another company. (*Id.* at McLeod USA 000241.)

The Letter of Confirmation that McLeod required the individual Defendants to sign to receive severance purported to at least partially supersede these employment agreements, however. The Letter states:

> You agree not to solicit customers or employees of McLeodUSA for a period of one year from your last day paid. You also agree not to in any way disparage McLeodUSA. Any other terms of your current nonsolicitation agreement or noncompete agreement with McLeodUSA, including your agreement not to disclose proprietary information (if applicable) remain in force. Effective on last date paid, however, McLeodUSA releases you from any noncompete covenant to which you may have otherwise previously agreed to in writing with McLeodUSA.

(*Id.* Ex. C.) The Letter of Confirmation was clearly intended to, and did, create a new restrictive covenant between McLeod and its soon-to-be-former employees. By the terms of the Letter of Confirmation, the previous employment agreements remained in effect only until the last severance payment. Defendants' severance payments ended at the latest in May 2002. Thus, the employees who signed the Letter of Confirmation are no longer bound by the restrictive covenants in their prior employment agreements. The terms of the Letter of Confirmation now govern Defendants' relationship with their former employer. [FN3]

> FN3. It is undisputed that the covenant not to compete in the Letters of Confirmation has expired. To the extent that Inter-Tel has any claims under the covenant not to compete, those claims are limited to the one-year period outlined in the Letters of Confirmation.

C. Assignment

***3** Having determined that all of the individual Defendants but Coburn were bound by restrictive covenants, the Court must next examine whether Inter-Tel may enforce the covenants. It is undisputed

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

that the Letter of Confirmation did not explicitly provide for assignment. The Letter of Confirmation likewise is silent as to which state's law applies to the terms of that agreement.

Defendants argue that Iowa law should apply because McLeod is an Iowa corporation. They make the curious argument that Iowa law applies because the bill of sale between McLeod and Inter-Tel provides that Iowa law applies to that agreement. A choice-of-law provision in a contract between McLeod and Inter-Tel is of no moment, however, when examining a contract between McLeod and its employees. Inter-Tel contends that, because the employees were located in Minnesota and the business was located in Minnesota, Minnesota law must apply to the Letter of Confirmation.

1. *Choice of Law Analysis*

In diversity cases such as this, the Court applies the choice-of-law principles of the forum state. *See Indep. Sch. Dist. No. 197 v. W.R. Grace & Co.*, 752 F.Supp. 286, 298 (D.Minn.1990). Minnesota's choice-of-law rules are well settled. The Court initially must determine whether the choice of one state's law over the other will determine the outcome of the case. *See Meyers v. Gov't Employees Ins. Co.*, 302 Minn. 359, 225 N.W.2d 238, 241 (Minn.1974).

a. *Iowa Law*

Defendants contend that Iowa law clearly precludes the assignment of restrictive covenants to third parties. *Orkin Exterminating Co. v. Burnett*, 259 Iowa 1218, 146 N.W.2d 320 (Iowa 1966). The *Orkin* court found that executory contracts for personal services are not assignable "unless the contract so provides or unless the other party consents thereto or ratifies the assignment or waives his right to object." *Id.* at 327. The court assumed that the contract containing the covenant not to compete was an executory contract for personal services, but found that the contract expressly contemplated assignment and could therefore be assigned. *Id.* It appears as though *Orkin* remains the law of Iowa and thus an employment contract containing a covenant not to compete is not assignable under Iowa law unless the underlying agreement provides for assignment or the employee ratifies or waives her right to object to the assignment. Because the Letter of Confirmation did not contain any assignability clause, nor is there argument that any of the Defendants ratified assignment or waived their right to object to assignment, under Iowa law the Letter of Confirmation could not be assigned to Inter-Tel and Inter-Tel may not enforce it.

b. *Minnesota Law*

Inter-Tel contends that Minnesota law allows the assignment of covenants not to compete in all circumstances. *Saliterman v. Finney*, 361 N.W.2d 175 (Minn.Ct.App.1985). As Inter-Tel notes, the court in *Saliterman* stated that "a covenant not to compete in an employment agreement is assignable ancillary to the sale of a business to protect the goodwill of that business." *Id.* at 178. However, the facts of *Saliterman* do not bear out such a broad reading of that case's holding.

*4 In *Saliterman,* a dentist signed a restrictive covenant with a dental practice. The agreement prohibited the dentist from practicing dentistry within three miles of the practice's office after the termination of his employment. *Id.* at 176. The dental practice was sold, and several months later the dentist left the practice and opened his own practice within three miles of his former office. The new owner sued to enforce the restrictive covenant. *Id.*

The court, in language quoted above, found that the new owner could enforce the restrictive covenant. *Id.* at 178. However, the court's holding regarding assignability rested in large part on the fact that the contract expressly contemplated assignment. *Id.; see also* Enforceability, By Purchaser or Successor of Business, of Covenant Not to Compete Entered into by Predecessor and its Employees, 12 A.L.R.5th 847, 879 (1993) (discussing *Saliterman* ). Thus, in Minnesota, as in Iowa, a finding of assignability likely depends on the language of the contract. Moreover, Minnesota courts are historically reluctant to enforce covenants not to compete, because such covenants decrease competition and restrict the employee's ability to earn a living. *Jim W. Miller Constr., Inc. v. Schaefer*, 298 N.W.2d 455, 458 (Minn.1980). Therefore, where the contract does not provide for assignment, a Minnesota court, like an Iowa court, would likely construe the language of the contract against the employer and find any assignment void. *See, e.g., Hess v. Gebhard & Co.*, 570 Pa. 148, 808 A.2d 912 (Pa.2002) (noting Pennsylvania's reluctance to enforce restrictive covenants and finding that restrictive covenant that does not provide for assignment is not assignable).

The Court determines that the choice of Minnesota's law over Iowa's law will make no substantive difference in the outcome of this case. The Court will therefore apply the law of the forum.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

c. *Merits*

As noted previously, the Letters of Confirmation that the individual Defendants signed do not contain any language indicating that the signer assented to an assignment of the agreement. Thus, these agreements could not be assigned to Inter-Tel and Inter-Tel may not enforce the restrictive covenants in the Letters of Confirmation.

Inter-Tel argues that, at the time the Letters of Confirmation were signed, Inter-Tel's purchase of McLeod had been accomplished, so that the Letters actually evidenced an agreement between Inter-Tel and the signing employees. The dates of the Letters belie this argument, however. Inter-Tel and McLeod signed the purchase agreement on January 24, 2002. Two of the Letters of Confirmation at issue were signed in late 2001. The remaining Letters of Confirmation were signed on January 24, 2002. On that date, McLeod still owned IBS, and, as the Letters of Confirmation make clear, the agreement is between McLeod and the employees, not McLeod's successor and the employees.

***5** The Court notes that both Inter-Tel and McLeod are sophisticated companies and could easily have avoided the result here. Inter-Tel was undoubtedly aware when it was negotiating to purchase IBS that McLeod was in the process of reducing the IBS workforce. Inter-Tel knew or should have known that such a reduction in force would entail severance agreements. At a minimum, Inter-Tel should have insisted that any severance agreements provide specifically for assignment. Inter-Tel's failure to ensure that the restrictive covenants were assignable is fatal to its claims seeking to enforce those covenants. Thus, Inter-Tel's claims for tortious interference with the restrictive covenants (Count VI), and breach of contract against Michael Agar and Pavelko (Counts VII and IX) are dismissed. [FN4]

FN4. As noted previously, Inter-Tel and Archuleta have reached a settlement and thus the breach of contract claim against Archuleta (Count VIII) will be dismissed.

C. Unfair Competition and Trade Secrets

The Court's determination that Inter-Tel may not enforce the contractual restrictive covenants does not deprive Inter-Tel of all remedy for Defendants' allegedly anti-competitive conduct. Indeed, despite Defendants' contention to the contrary, Inter-Tel's claims for unfair competition and misappropriation of trade secrets do not depend on the existence of restrictive covenants. Inter-Tel may maintain these claims whether or not Defendants had any sort of restrictive covenant with Inter-Tel. *See, e.g., Saliterman,* 361 N.W.2d at 178-79 (describing common-law duty not to disclose or use confidential information).

In Counts I, II, III, and X, Inter-Tel contends that Defendants violated the Lanham Act, the Minnesota Deceptive Trade Practices Act ("DTPA"), Minn.Stat. § 325D.44, the Minnesota Prevention of Consumer Fraud Act ("CFA"), Minn.Stat. § 325F.69, and committed common-law business disparagement. These allegations arise out of several instances when individual Defendants, after commencing employment with CA Communications, allegedly made disparaging remarks about Inter-Tel or allegedly told customers that CA Communications, not Inter-Tel, had purchased the customer's service maintenance contracts from McLeod. Defendants contend that all of these claims fail because Inter-Tel has failed to raise a genuine issue of fact on the claims.

1. *Deceptive Trade Practices*

Inter-Tel claims that Defendants have used deceptive trade practices in violation of the Lanham Act, the DTPA, and the CFA. In pertinent part, the Lanham Act proscribes the use in commerce of

> any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which ... is likely to cause confusion, or to cause mistake, or to deceive as to ... the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

15 U.S.C. § 1125(a)(1). [FN5]

FN5. The Complaint also contends that Defendants are violating 15 U.S.C. § 1125(b). (Compl.¶ 47.) This section pertains to the importation of falsely labeled goods into the United States and has no bearing on Inter-Tel's allegations against Defendants.

Inter-Tel contends that Defendants violated the DTPA, Minn.Stat. § 325D.44, subd. 1(1)-(3), (8), by: (1) passing off CA Communications' services as those of McLeod; (2) causing a likelihood of

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

confusion or of misunderstanding among McLeod customers as to the source, sponsorship, approval, or certification of goods or services; (3) causing a likelihood of confusion or of misunderstanding as to CA Communications' affiliation, connection, or association with, or approval by Inter-Tel; and (4) making false, misleading, and disparaging statements about Inter-Tel. (Compl.¶ 53.) Similarly, Inter-Tel alleges that Defendants violated the CFA by employing "fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice ... in connection with the sale" of CA Communications' services. Minn.Stat. § 325F.69, subd. 1; Compl. ¶ 100. Inter-Tel also claims that Defendants' conduct constituted common-law business disparagement. (Compl.58.)

*6 According to Inter-Tel, Defendants' deceptive trade practices include: (1) telling Inter-Tel (former McLeod) customers that McLeod is now CA Communications; (2) putting a CA Communications sticker on a phone serviced by Inter-Tel (formerly by McLeod); (3) using the former McLeod telephone number as CA Communications' number, (4) wearing McLeod clothing when calling on Inter-Tel (former McLeod) customers; and (5) telling customers that Inter-Tel cannot properly service their Toshiba phone systems. Defendants assert that Inter-Tel has no evidence to establish any of these violations and thus that summary judgment is appropriate on Inter-Tel's deceptive trade practices claims.

Inter-Tel insists that it has raised a genuine issue of fact on its claims. However, for most of its allegations, Inter-Tel does not point the Court to any deposition testimony or affidavit that raises these questions of fact. For example, Inter-Tel insists that Defendants altered service stickers on Inter-Tel's customer's telephones but does not cite to any evidence in the record establishing that such alterations actually occurred. (*See* Pl.'s Opp'n Mem. at 24.) The Court reminds counsel that it is not the role of the Court to search the record for facts that might create a genuine issue for trial. *See* *Northwestern Nat'l Ins. Co. v. Baltes*, 15 F.3d 660, 662-63 (7th Cir.1994) (Easterbrook.J.) ("District judges are not archaeologists."); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991) (per curiam) ("Judges are not like pigs, hunting for truffles buried in briefs"); *Nicholas Acoustics & Specialty Co. v. H & M Constr., Co., Inc.*, 695 F.2d 839, 846-47 (5th Cir.1983) ("Judges are not ferrets!"). The Court will presume from Inter-Tel's failure to come forward with evidence that there is no such evidence in the record.

Inter-Tel has established questions of fact on only two of its deceptive trade practices claims. The first claim is the claim arising out of Michael Agar's visit to McLeod customer AmeriStar Agency, Inc. ("AmeriStar"). Although Defendants attempt to paint this visit as innocent, it is apparent from the AmeriStar representative's deposition testimony that Michael Agar either told her or led her to believe that CA Communications and McLeod were one and the same. [FN6] (Behrens Aff. Ex. Q (Peterson Dep.) at 19 ("Q: So did [Michael Agar] say that McCloud [sic] had sold Toshiba phone accounts to CA Communications? A: Yes he did.").)

FN6. The Court notes that Defendants, not Inter-Tel, cite the relevant pages of the representative's deposition.

The second claim that remains for trial is Inter-Tel's claim for business disparagement. Marc Agar testified that he told customers that Inter-Tel was not able to get new Toshiba equipment. (Steffenhagen Aff. Ex. G (Marc Agar Dep.) at 215-16.) Inter-Tel contends that it was able to purchase new Toshiba equipment. (*Id.* Ex. A (Johnson Dep.) at 122.) If Marc Agar's statement is false, it could constitute business disparagement. Inter-Tel has raised a genuine issue of fact on this claim. However, Inter-Tel has failed to establish that genuine issues of fact exist on its remaining allegations of deceptive trade practices.

2. *Misappropriation of Trade Secrets*

*7 Minnesota law prohibits the misappropriation of information that "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use." Minn.Stat. § 325C.01, subd. 5(i). Neither the Complaint nor Inter-Tel's memorandum specifies precisely what trade secrets Inter-Tel is seeking to protect. It appears as though the trade secrets at issue are customer lists and pricing information.

Defendants contend that there is no evidence that they misappropriated any of Inter-Tel's confidential information. According to Defendants, CA Communications purchased customer lists from other entities, including Toshiba. Moreover, Defendants argue that Inter-Tel cannot pursue a misappropriation claim because Inter-Tel has not established that it takes steps to protect these alleged trade secrets.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Defendants assert that Inter-Tel has waived its misappropriation claim by not pursuing the alleged misappropriation of these same trade secrets by another former McLeod employee, Peter Johnson.

There are significant factual disputes between the parties on Inter-Tel's misappropriation claim. For example, Inter-Tel contends that CA Communications used Inter-Tel's customer lists, and Defendants contend that CA Communications purchased customer lists from other entities. Similarly, Defendants contend that former McLeod employee Peter Johnson has misappropriated Inter-Tel's trade secrets, often with the blessing of Inter-Tel, while Inter-Tel asserts that it has no knowledge that Peter Johnson has misappropriated any trade secret. There is likewise a factual dispute as to whether Inter-Tel took steps to maintain the confidentiality of the alleged trade secrets. These factual disputes preclude summary judgment on Inter-Tel's misappropriation of trade secrets claim.

If, however, the facts show that Inter-Tel acquiesced in Peter Johnson's use of Inter-Tel's trade secrets for a competing company, then the Court will determine, as a matter of law, that Inter-Tel cannot maintain a trade secret claim against Defendants.

3. *Tortious Interference with Customer Contracts*

In Count V of the Complaint, Inter-Tel contends that Defendants' deceptive trade practices and misappropriation of trade secrets constituted tortious interference with Inter-Tel's customers. The Court has concluded that Inter-Tel has succeeded in raising a genuine issue of fact as to some of its allegations of deceptive trade practices and misappropriation of trade secrets. A reasonable jury could find that this conduct also amounted to tortious interference with Inter-Tel's customer contracts. Thus, this claim survives summary judgment.

4. *Conspiracy*

Inter-Tel claims that Defendants' "coordinated misappropriation of trade secrets" and "consistent, uniform use of deceptive and untrue statements regarding Inter-Tel" constituted a civil conspiracy to deprive Inter-Tel of its customers. (Pl.'s Opp'n Mem. at 21.) In order to establish a conspiracy, Inter-Tel must prove, among other things, a meeting of the minds between two or more persons to perform an act or accomplish an unlawful purpose and the commission of one or more overt acts in pursuit of the illegal objective. *Anderson v. Douglas County*, 4 F.3d 574, 578 (8th Cir.1993); *In re Temporomandibular Joint* Implants Prods. Liab. Litig., 880 F.Supp. 1311, 1320 (D.Minn.1995) (Magnuson, J.).

*8 Inter-Tel has failed to establish any sort of meeting of the minds. There is no evidence that the alleged misappropriation of trade secrets was in any way "coordinated." Similarly, the record, at least as cited by Inter-Tel, is devoid of evidence that Defendants used any sort of consistent misrepresentations regarding Inter-Tel. At most, the record shows that Marc Agar may have told customers that Inter-Tel could not buy new Toshiba equipment and that Michael Agar may have told one customer that CA Communications bought McLeod's customer service contracts. This evidence simply does not amount to a meeting of the minds of the sort necessary to support a civil conspiracy claim, and summary judgment is appropriate on Inter-Tel's conspiracy claim (Count XI). *See In re Temporomandibular Joint Implants Prods., Liab., Litig.*, 113 F.3d 1484, 1489 (8th Cir.1997) ("Without evidence of specific facts tending to show an agreement or a 'meeting of the minds' and concerted action, a plaintiff seeking to show a civil conspiracy cannot survive a defendant's summary judgment motion.")

5. *Unjust Enrichment*

Count XII of the Complaint alleges that Defendants have been unjustly enriched by virtue of their allegedly unlawful conduct. Specifically, Inter-Tel claims that Defendants have been enriched "as a result of deceptive trade practices, violations of the Lanham Act, misappropriation of trade secrets, and breach of restrictive covenants." (Pl.'s Opp'n Mem. at 21.) To the extent that Inter-Tel has succeeded in raising a genuine issue of fact on its claims for deceptive trade practices under Minnesota and federal law and its claims for misappropriation of trade secrets, the unjust enrichment claim likewise survives summary judgment.

CONCLUSION

Questions of fact exist as to two of the allegations of unfair competition and as to the misappropriation of trade secrets, tortious interference with customer contracts, and unjust enrichment claims. Summary judgment is granted with respect to Inter-Tel's remaining claims. Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' Motion for Summary Judgment (Clerk Doc. No. 41) is GRANTED in part and DENIED in part; and

2. Counts VI, VII, VIII, IX, and XI of the Complaint (Clerk Doc. No. 1) are DISMISSED WITH PREJUDICE.

2003 WL 23119384 (D.Minn.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works