IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| UNITED HEALTHCARE INSURANCE CO. and AARP,<br><br>Plaintiffs,<br><br>v.<br><br>ADVANCEPCS,<br><br>Defendant. | ) | Civil Action No. 01-2320 RHK/AJB |

**DEFENDANT ADVANCEPCS' MEMORANDUM IN SUPPORT OF MOTION TO STRIKE EXPERT REPORT AND TESTIMONY OF DR. CLAUDE R. MARTIN, JR.**

AdvancePCS requests that this Court strike the expert report and testimony of Dr. Claude R. Martin, Jr. (collectively, the "Martin Report"), Plaintiffs' purported expert on confusion, for the simple reason that he relies upon more than 800 pages of documents that Plaintiffs failed to produce in this litigation during fact discovery despite this Court ordering Plaintiffs to do so. As outlined below, Plaintiffs' conduct of hiding these documents until one month ago has, without question, prejudiced AdvancePCS, and consequently, the Martin Report should be stricken.

## FACTUAL BACKGROUND

In seeking a preliminary injunction in 2002, Plaintiffs offered the affidavit of Dr. Claude R. Martin, Jr. to support their claim that AdvancePCS had confused AARP customers. Affidavit of Dr. Martin at ¶ 13, attached to the Affidavit of Christopher J. Soller ("Soller Affidavit") as Exhibit 1. There is no question that documents relating to consumer confusion, including the documents upon which Dr. Martin referenced and relied, are extremely pertinent to the issues at hand—whether the purported diversion or program relaunch caused confusion and whether AdvancePCS caused that confusion. Consequently, in its very first request for production of documents served in the Spring of 2002, AdvancePCS requested from United all documents "referred to by Claude Martin in his affidavit or relied upon by him in making his affidavit

attached to Plaintiffs' Memorandum, including but not limited to, the 'studies' identified in paragraph 13." First Request for Production of Documents Directed to United at No. 57, attached to Soller Affidavit as Exhibit 2. Likewise, AdvancePCS requested from AARP:

> All documents which refer to, reflect or support Plaintiffs' allegations in paragraphs 27, 47, 48, and/or 55 of the Complaint that AARP members are or may be confused, including copies of any documents to, from or about AARP members (Request 49); all documents which refer reflect or refer to any confusion or harm that AdvancePCS has allegedly created for AARP members or pharmacies (Request 50); all documents which reflect or refer to any investigation conducted concerning the drop or decrease in claims submitted to the Express AARP Program (Request 51);

First Request for Production of Documents Directed to AARP, attached to Soller Affidavit as Exhibit 3. Despite having requested these documents on May 15, 2002, when the parties began taking depositions in the fall of 2003, AdvancePCS still did not have the "studies" or other documents relating to purported consumer confusion.

Without these key documents AdvancePCS was shooting in the dark in an attempt to determine which deponents may have knowledge regarding the alleged consumer confusion. For example, during the deposition of Mark Lindsay, Vice President of Public Communications and Strategy at United HealthGroup, AdvancePCS asked him how many customer surveys were conducted that related to or focused on the AARP Pharmacy Program. He responded by saying, "[q]uite a few. I don't remember how many." See Deposition of Mark Lindsay at 55, attached to Soller Affidavit as Exhibit 4. When asked if he received the results of these surveys he stated, "[o]n occasion," but he did not know how many surveys were done or the specifics of any survey. Id. at 56. Thus, AdvancePCS' attempt to ascertain the information relied upon by Dr. Martin through depositions of Lindsay and other fact witnesses was futile.

During a meet and confer conference in December 2003, counsel for United made it clear that documents were being withheld because of United's position that it did not need to produce such documents until expert discovery. AdvancePCS disagreed with that position and

contended that all fact documents upon which experts rely and which witnesses had in their files, including survey materials, needed to be produced during fact discovery. United's counsel also raised various technical objections to producing the documents.

At the beginning of 2004, AdvancePCS still did not have these requested documents, and in light of Plaintiffs various technical objections to producing the documents, AdvancePCS attempted to address these points, and once again, AdvancePCS served document requests on Plaintiffs on January 2, 2004 requesting documents relating to alleged consumer confusion and surveys. See Fourth Request for Production of Documents Directed to United at ¶ 44, attached to Soller Affidavit as Exhibit 5.[1] In response, Plaintiffs still did not produce any responsive documents.

Finally, Plaintiffs' lack of production of these and other documents precipitated AdvancePCS' Motion to Compel in February of 2004. See AdvancePCS' Motion to Compel, attached to Soller Affidavit as Exhibit 6. AdvancePCS' counsel made clear during the hearing on the Motion to Compel that AdvancePCS knew Plaintiffs were withholding documents hoping to spring the documents on AdvancePCS during expert discovery, thereby precluding any meaningful response or fact discovery as to those documents:

> I mean at some point the fact discovery has to end. If they have fact documents that exist today that the expert's going to rely upon, we should get those while discovery is still open, and that's my concern ... I want to get some confirmation everything's produced but I also want to get what I think is out there ... I think the way to do that is a court order because if they have produced everything, they have nothing more to do, but I get the protection of a court order that they were told to do so and I can't get prejudiced or jammed as the case goes forward . . . .

---

1 AARP was also served with a Fourth Request for Production of Documents, however at the time of the Motion to Compel hearing AARP had not yet answered these requests and were therefore compelled to produce documents in response to the First Request for Production of Documents.

2/26/04 Transcript at 53,54,56, attached to Soller Affidavit as Exhibit 7.

Understanding AdvancePCS' concern, this Court entered an Order on March 9, 2004, requiring Plaintiffs to produce the requested documents including the documents relating to consumer confusion previously requested by AdvancePCS in May of 2002. See Order dated March 9, 2004, ¶¶2(b) 3(g), attached to Soller Affidavit as Exhibit 8.

As the Court explained at the March 31, 2004 proceeding on a different motion in response to AdvancePCS' arguments that all documents related to damages and experts, as ordered by the Court, must be produced:

> I don't think that – I shouldn't preface by saying I don't think. I'll just tell you what my thoughts are. The question of attorneys' fees, in my estimation, is something that comes up later on. It is not, I don't believe, the question of damage analysis in the classic sense of the word. I was more concerned about the damages that would be brought to issue at the trial, and I wanted to make sure that the defendants were not surprised and that you had an adequate opportunity by getting the documents that you thought were - plaintiffs were using to base those damage calculations prior to the close of discovery. I wanted to make sure all that was disclosed to you.

3/31/04 Transcript at 34, attached to Soller Affidavit as Exhibit 12.

Despite being ordered to do so, Plaintiffs did not produce the documents in fact discovery relating to consumer confusion and relied upon by Dr. Martin in his report. Thereafter, fact discovery closed.

In response to expert discovery, in June 2004, Plaintiffs re-bates-numbered previously produced documents in response to AdvancePCS' Expert Document Requests, and then, among the thousands of pages of previously produced documents, included more than 800 hundred pages of documents relating to consumer confusion which should have been produced more than a year ago and certainly in response to the Court's Order in March. See Sample of Martin Documents bates-stamped Martin 4115-4144, 4148-4154, 4161-4163, 4319-4323, 4450, attached to

Soller Affidavit as Exhibit 9.[2] The 840 pages of never-previously produced documents specifically relate to consumer confusion, including:

- questionnaires used to conduct a Prescription Card Discount Study relied on by Plaintiffs to secure the preliminary injunction;
- supervisor instructions for conducting of the study;
- the names of the staff who conducted the study;
- the study results;
- correspondence regarding how the study was to be conducted;
- problem sheets regarding the study;
- daily complete reports from the study; and
- survey quality monitor forms for the study.

See id.[3] These documents are the foundation for Martin's Report. Further, the documents undeniably pertain to Plaintiffs' allegations of consumer confusion, and certainly fell within the scope of this Court's Order. Even more astounding, these documents were in Plaintiffs' possession prior to the entry of the injunction against AdvancePCS in 2002. Fact discovery closed on March 12, 2004, and conveniently, Plaintiffs produced these documents one week after AdvancePCS' expert rebuttal reports were due. Consequently AdvancePCS was unable to question more than 20 fact witnesses concerning the documents nor was it able to have its expert evaluate the components of the studies or the results based upon these documents.

---

2 On July 9, 2004, AdvancePCS requested that Plaintiffs identify the bates-numbers from their previous production where AdvancePCS could find these newly produced documents at issue here. Plaintiffs failed to respond. See July 9, 2004 Letter attached to Soller Affidavit as Exhibit 10.

3 Specifically on June 4, 2004, Plaintiffs produced documents from Dr. Martin, which were bates-stamped as Martin 0001-4999. See Letter dated June 4, 2004, attached to Soller Affidavit as Exhibit 11. Of the 4999 Martin documents produced on June 4, 2004, documents bates-stamped Martin 4115-4949 and 4996-4997, amounting to over 800 pages, had not previously been produced.

## ARGUMENT

Plaintiffs' failure to disclose the requested documents violates Federal Rules of Civil Procedure 37(b) and 37(c)(1). To impose discovery sanctions pursuant to Federal Rule of Civil Procedure 37(b), three elements must be satisfied: (1) there must be an order compelling discovery; (2) there must be a willful violation of that order; and (3) the other party must experience prejudice. See Federal Rule of Civil Procedure 37(b); Chrysler Corp. v. Carey, 186 F.3d 1016 (8th Cir. 1999). Each of these elements has been satisfied here.

### A. The Court Order.

Based upon Plaintiffs' failure to produce survey documents and their statement that they believed they did not need to produce documents until the expert discovery phase, AdvancePCS requested a Court Order compelling Plaintiffs to produce documents they were withholding. Indeed, as stated, AdvancePCS knew Plaintiffs were trying to do exactly what they did here - withhold documents to prejudice AdvancePCS' ability to address, respond and question witnesses concerning those documents and to offer rebuttal expert testimony and analysis. Accordingly, on March 9, 2004, this Court entered an Order compelling Plaintiffs to produce the survey and any other documents supporting Plaintiffs' allegation of confusion. The first element - a Court Order - is met here.

### B. Plaintiffs' Violation Of The Order Is Willful.

AdvancePCS, through repeated requests, letters and conference calls, advised Plaintiffs that they could not withhold documents under the guise that they are "expert" documents and need not be produced. Ultimately, AdvancePCS had no choice but to seek a Court Order. There is no question that more than 800 pages of survey and related documents fall within the scope of this Court's Order. These document were generated more than two-and-a-half years ago. There is also no question that Plaintiffs willfully sat on these documents, despite AdvancePCS' requests

and ultimately, this Court's Order that they need to be produced. The violation here was intentional, deliberate and willful.

### C. Plaintiffs' Conduct Has Prejudiced AdvancePCS.

Plaintiffs' failure to produce more than 800 pages of documents in their possession since 2002 has prejudiced AdvancePCS. First, if AdvancePCS had had these documents in 2003, when they should have first been produced, AdvancePCS could have considered a rebuttal survey. Because the documents were not produced until after the expert reports were due to be exchanged, AdvancePCS had no opportunity to review the documents and consider and conduct a rebuttal survey to include in its expert reports. It appears that Plaintiffs withheld the documents until after the reports were submitted to obtain this very result.

Further, having the documents in hand prior to submission of its expert reports certainly would have given AdvancePCS' expert fodder to further criticize Dr. Martin's efforts to find confusion and to blame it on AdvancePCS. In other words, AdvancePCS' expert, in his report, could have further dissected and analyzed Dr. Martin's report if he had had the documents in hand before his report was due.

Even more critically, AdvancePCS could have questioned the more than 20 witnesses it deposed in fact discovery about the survey and the results. Because of Plaintiffs' conduct, AdvancePCS was unable to do so. Certainly, the 800 pages of newly produced documents would have provided fodder for deposition questioning during fact discovery. Witnesses from Walmart, CVS, Express, United and AARP all offered testimony about confusion and customer and pharmacy conduct and expectations. These documents in some instances refute and in some instances support that testimony and would have provided an extensive basis for further questioning.

Further, a key defense here is whether United and Express created the confusion with their botched transition plan and relaunch of the program at issue. The survey documents, which purportedly reflect confusion, absolutely support AdvancePCS' defense. For example, the fact that customers did not know which card to use or which program they were using confirms Express' failure to communicate with members. To the extent the survey documents reflect confusion, they are not conclusive that AdvancePCS caused this confusion, and certainly, AdvancePCS was entitled to question Plaintiffs' witnesses that the purported confusion reflected in the documents was caused or could have been caused by Plaintiffs.

Finally, AdvancePCS could have obtained names of the survey participants to further test the results of the survey. Again, Plaintiffs' conduct of hiding these documents until the last moment foreclosed any follow-up discovery by AdvancePCS.

**D. Striking Martin's Report is an Appropriate Sanction.**

Plaintiffs' willful failure to abide by this Court's Order and the failure to disclose the documents constitutes sanctionable conduct. Chrysler, 186 F.3d at 1022 ("The district court is not constrained to impose the least onerous discovery sanction available, but may exercise its discretion to choose the most appropriate sanction under the circumstances.") Indeed, in Mems v. City of St. Paul, Dept. of Fire and Safety Servs., 327 F.3d 771 (8th Cir. 2001), the Court found that the exclusion of testimony of an expert damages witness was warranted as a sanction for violation of a discovery rule under Rule 37 when the Appellant failed to disclose to Appellee a complete statement of all opinions to be expressed by the expert, and the basis for those opinions until the eve of trial. Id. at 780. Such prejudice is also found here. Plaintiffs refused to produce the documents relevant to the purported consumer confusion until after the close of fact discovery and after enough time had passed that AdvancePCS' expert was unable to either properly critique the results of the study, or conduct his own study.

Plaintiffs have violated Rules 37(b) and (c)(1) of the Federal Rules. Rule 37(c)(1) provides in pertinent part: "a party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) . . . is not, unless such failure is harmless, permitted to use evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." The Federal Rules of Civil Procedure "permit a court to exclude untimely evidence unless the failure to disclose was either harmless or substantially justified." Trost v. Trek Bicycle Corp., 162 F.3d 1004 (8th Cir. 1998).

Plaintiffs failure to produce the documents more than two years after they were initially asked to do so, and more than two months after this Court ordered their production, is not justified. The documents have been in Plaintiffs' possession since the entry of the injunction in March of 2002. Dr. Martin's affidavit provided in part a basis upon which this Court granted Plaintiffs a preliminary injunction, and yet more than two years after the injunction was entered, the surveys and studies were only now produced. This failure to produce the documents is certainly not harmless as AdvancePCS has been severely prejudiced in both its fact and expert discovery process.

In Arabian Agriculture Serv. v. Chief Indus., Inc., 309 F.3d 479 (8th Cir. 2002), the Court found that the party's failure to disclose the calculations of manufacturing experts in accordance with Rule 26 was not substantially justified nor harmless because the plaintiff experienced prejudice due to the late disclosure. The Court held that admitting the calculations would be an "ambush." Id. at 483. The same is true here. AdvancePCS' inability to question fact witnesses regarding consumer confusion and their bases for the belief that such confusion existed impeded AdvancePCS' ability to prepare a proper defense to the allegation that consumers were confused due to the purported diversion of claims. An appropriate sanction for withholding these documents in violation of a Court Order is striking the expert report and testimony of Dr. Claude R. Martin, Jr.

## CONCLUSION

For the foregoing reasons, AdvancePCS respectfully requests that this Court grant its Motion to Strike the Expert Report and Testimony of Dr. Claude R. Martin, Jr.

Respectfully submitted,

Dated: July 19, 2004

s/ Kevin P. Hickey
REED SMITH LLP
W. Thomas McGough, Jr.
Mary J. Hackett
Christopher J. Soller
435 Sixth Avenue
Pittsburgh, PA 15219-1886
(412) 288-3131

and

BASSFORD REMELE, P.A.
Lewis A. Remele, Jr.
Kevin P. Hickey
33 South Sixth Street
Suite 3800
Minneapolis, MN 55402-3787
(612) 333-3000

Attorneys for Defendant AdvancePCS