UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED HEALTHCARE INSURANCE CO. and AARP, Plaintiffs, | ) Case No. 01-CV-2320 |
| vs. | ) |
| ADVANCEPCS, Defendant. | ) |

**DEFENDANT'S FIRST SET OF INTERROGATORIES AND**
**FIRST REQUEST FOR PRODUCTION OF DOCUMENTS DIRECTED TO AARP**

Defendant AdvancePCS, pursuant to the Federal Rules of Civil Procedure, serves the following interrogatories and document requests upon Plaintiff AARP, to be answered under oath within thirty (30) days or an earlier date if the Court so orders.

These interrogatories and requests for production are continuing in nature and AARP is required to provide such additional information as AARP, attorneys for AARP, or anyone acting on behalf of or in concert with AARP, may have or may obtain between the time the answers are served and the time of any hearing or trial. In answer to interrogatories, AARP is requested to furnish all information which is available to AARP or to attorneys representing AARP, including, but not limited to, information in the possession of any attorneys, agents,

EXHIBIT
3

tabbies®

investigators, representatives, or anyone acting in cooperation or in concert with the case to be presented by Plaintiffs.

## I. DEFINITIONS

1. "You" or "Your" shall mean AARP, as well as your agents, attorneys, accountants, consultants, independent contractors, and any other individual or entity associated or affiliated with you or purporting to act on your behalf..

2. "Express Scripts" or "Express" shall mean Express Scripts, Inc., and any division, affiliate, subsidiary, and company of the foregoing, and any director, officer, employee, agent, and any representative of the foregoing.

3. "United Healthcare" or "United" shall mean plaintiff United Healthcare Insurance Co., and any division, affiliate, subsidiary, and company of the foregoing, and any director, officer, employee, agent, and any representative of the foregoing.

4. "AdvancePCS" shall mean AdvancePCS and any division, affiliate, subsidiary, and company of the foregoing, and any director, officer, employee, agent, and any representative of the foregoing.

5. "AARP" shall mean plaintiff AARP and any division, affiliate, subsidiary, and company of the foregoing, and any director, officer, employee, agent, and any representative of the foregoing.

6. The word "document" as used herein shall be understood to mean all written, graphic, audio, or otherwise recorded matter, however produced or reproduced, in the actual or constructive possession, custody, care or control of you, your agents and attorneys, or any of them, including but not limited to originals and all copies of correspondence, electronic

mail, web postings, tapes, disks, notes, photographs, sound recordings, memoranda of all types, reports, copies of tax returns and records, receipts, bills, invoices, purchase orders, charge slips, hotel charges, working papers, computer records and printouts, charts, statistical records, delivery records, stenographers' notebooks, calendars, appointment books, diaries, time sheets and logs, job, matter and transaction files, and any papers or recordings similar thereto, whether made or received by you.

7. The phrase "detailed description" or "describe in detail" as used herein means to describe fully by reference to underlying facts, including date, location and identity of persons involved.

8. The term "identify" with respect to an event, circumstance or particular conduct shall mean to provide the date, a description of the underlying facts or circumstances and the identity of the person(s) involve or have knowledge of the event, circumstance or particular conduct.

9. The term "person" shall mean an individual, corporation, proprietorship, partnership, sole partnership, union, federation, association and any other kind of entity.

10. The terms "identify" and "the identity of," with regard to a person, shall mean to provide name, present or last known residence and business addresses, job title, and present or last known residence and business telephone numbers.

11 The singular of any word used herein shall be deemed to include the plural of such word and the plural shall include the singular.

12. "DUR" shall mean the drug utilization review as that term is used in the Complaint filed in this action.

13. "Plaintiffs' Motion" shall mean Plaintiffs' Motion for Entry of Preliminary Injunctive Relief filed in this action.

14. "Plaintiffs' Memorandum" shall mean Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion.

15. "Complaint" refers to Plaintiffs' Amended Complaint filed in this action.

16. "PBM" refers to a pharmacy benefit management company as referenced in paragraph 11 of the Complaint.

17. "AARP Program" shall mean the AARP prescription drug discount card program in which AdvancePCS acted as the PBM until August 31, 2001.

18. "Express AARP Program" shall mean the AARP prescription drug discount card program for which United assumed operational responsibility on or about June 1, 2001 and for which Express acts as the PBM.

19. "RPS" shall mean Retired Persons Services, Inc. and any division, affiliate, subsidiary, and company of the foregoing, and any director, officer, employee, agent, and any representative of the foregoing.

20. "AdvancePCS Plan" shall mean the AdvancePCS Plan as defined in paragraph 25 of the Complaint.

## II. INSTRUCTIONS

With respect to each of the document requests set forth herein, you shall identify and/or produce all documents which are known to you or which can be located or discovered by you through diligent effort on the part of you, your employees, representatives, attorneys, or accountants, including but not limited to all documents which are in the possession of you or your representatives, attorneys, or accountants, or accessible to you or your representatives, attorneys, or accountants.

To the extent that a limiting time frame may be applicable, you should provide information and/or documents from on and after January 1, 1997.

### Objections to Production

In the event that any objection is made to the production of any document fairly comprised within the scope of the following requests, you shall furnish in lieu of the production of such document a list of each document withheld from production together with the following information: (a) the reason for withholding production; (b) a statement of the facts constituting the basis for your withholding the document from production; and (c) a brief description of the documents withheld, including (i) the date upon which the document was originated, (ii) the identity of its author or preparer, (iii) the identify of each person who was a recipient of the document, (iv) the specific request which encompasses the document, (v) a brief description of the subject matter of the document, and (vi) the identity of all persons who have personal knowledge of the subject matter.

AdvancePCS is willing to enter into a protective order to limit, among other things, the disclosure and/use of any alleged confidential and proprietary information. It is not a valid basis to object or to avoid production of materials and information based upon a claim of confidentiality and the need for a protective order.

**Privileged Documents**

To the extent you withhold documents based upon a claim of privilege, please provide a detailed privilege log, including the date of the document, the author, the recipient(s) and a brief description of the subject matter.

## III. INTERROGATORIES

1-2 Other than those people identified in your Initial Disclosures, identify any person with United, Express or AARP who is likely to have discoverable information that AARP may us to support its claims or defenses, and, with regard to each, describe the knowledge which he/she has or claims to have.

ANSWER:

3-4 Regarding the allegation in paragraph 13 of the Complaint that "defendant is confusing pharmacists and AARP Participants":

a) identify each pharmacy and AARP participant, whom you contend has been confused; and

b) identify and describe each communication you, or anyone acting on your behalf, has had with each such person or entity.

ANSWER:

5. Describe in detail each and every "recovery effort" or step you, United and/or Express have taken to address the alleged harm caused by AdvancePCS and/or to avoid the alleged confusion noted in paragraphs 27, 47, 48, and 55 of the Complaint.

ANSWER:

6-7 Regarding the allegation in paragraph 37 of the Complaint that "AARP program participants believe that they are receiving the full benefits of the AARP Program DUR system when, in fact, they are not,"

a) identify each AARP participant who has this belief and/or any individual(s) you believe has (have) knowledge regarding this allegation; and

b) identify and describe each communication you, or anyone acting on your behalf, has had with each such person or entity.

ANSWER:

8. Please identify by name, address and phone number each and every individual, including the "pharmacists from United Health Group and Express Claims Inc." who communicated with Claude Martin as described in Paragraph 5 of Mr. Martin's affidavit.

ANSWER:

9. Please identify all litigation, whether filed or threatened, by an individual against AARP which related in any way to DUR. If filed, please set forth the case caption, including the names of the parties, the court in which the litigation took place and the case number.

ANSWER:

10-11. Please identify any AARP members who have raised, submitted, made or lodged a complaint or concern about the Express AARP Program and describe or detail the complaint or concern.

ANSWER:

12. Please describe in detail the basis for your damage claim of $2,500,000 in the Complaint and as set forth in your Initial Disclosures, including providing the royalty amount used to calculate the number and the amount AARP would receive if the parties are unable to agree on a formula to be applied, and setting forth the precise numbers and calculations made to reach $2,500,000.

ANSWER:

13. Identify each person whom you expect to call as an expert witness at trial.

ANSWER:

14. Identify all cases, hearings, or proceedings in which any experts you intend to offer at trial in this matter have previously testified as an expert or were proffered to the Court as an expert and for each matter, produce a transcript of the testimony.

ANSWER:

## DOCUMENT REQUESTS

1. All documents identified and/or relied upon by you to answer the above Interrogatories.

2. All documents which fall within or contain information concerning or referring to the subject matter of the categories of documents set forth in your Initial Disclosures submitted in connection with this lawsuit, including the AARP HCO Pharmacy Service Agreement.

3. All documents and tapes (video or audio) referring, relating to or constituting any statement, oral, written or recorded, (a) taken or received by you of a potential

witness or person with knowledge of facts pertinent to this lawsuit and/or (b) obtained concerning, referencing, supporting or referring to the allegations in the Complaint.

4. All documents since January 1, 2001, which refer to or reflect information about AdvancePCS in connection with the AARP Program or the Express AARP Program.

5. All documents which refer to or reflect information about the AdvancePCS Plan.

6. All documents which you intend to use or introduce at the trial of this matter.

7. All documents that reflect, refer to or support the statement, "Normally, to avoid confusion, a PBM that is no longer servicing a client re-programs its computer systems to reject claims containing the unique carrier-group numbers assigned to its former client."

8. All documents that reflect or refer to "ongoing efforts to educate AARP Program participants and pharmacists since September 1, 2001" regarding the Express AARP Program.

9. All documents which support, refer or relate to the allegations made in the Complaint, including but not limited to,

a. all documents which refer to, reflect or support the allegation set forth in paragraph 21 of the Complaint "that it is a long standing practice in the industry for pharmacists to rely on PBMs to alert them to any changes relating to specific carrier-group numbers, BIN, or a participants eligibility";

b. all documents which refer to, reflect or support the allegation set forth in paragraph 2 of the Complaint that AdvancePCS "responded by contriving and executing a scheme . . . by manipulating pharmacies and their computer systems," and that "senior citizens . . . intended to use Plaintiffs' program";

c. all documents which refer to, reflect or support the allegation set forth in paragraph 61 of the Complaint that AdvancePCS acted "with intent of injuring Plaintiff United,";

d. all documents which refer to, reflect or support the allegation set forth in paragraph 13 of the Complaint that "defendant is confusing pharmacists and AARP Participants";

e. all documents which refer to, reflect or support the allegation set forth in paragraph 37 of the Complaint that "AARP program participants believe that they are receiving the full benefits of the AARP Program DUR system when, in fact, they are not";

f. all documents which refer to, reflect or support the allegation set forth in paragraph 7 of the Complaint that United reengineered the AARP Program and developed certain innovations; and

g. all documents which refer to, reflect or support the allegation set forth in paragraph 1 of the Complaint that AdvancePCS "intentionally creates confusion in the marketplace."

10. All documents which reflect, refer to or set forth the terms of the agreements or understandings since January 1, 1999 between you, United Healthcare, and/or Express or an affiliate concerning RPS, the AARP Program, the Express AARP Program and/or the subject matter of this lawsuit, including but not limited to, any agreements concerning the prosecution, payment of fees related to, participation in and sharing of any potential proceeds from this litigation, and/or naming or not naming Express as a party.

11. All documents which reflect, refer to or set forth the terms of any agreements or understandings to which AARP is party to the agreement concerning (a) the AARP Program, (b) transition of the AARP Program to United, and/or (c) the transition of PBMs for the AARP Program from AdvancePCS to Express.

12. All documents which reflect or refer to the terms of the agreement(s) between RPS and AdvancePCS or its predecessor concerning the AARP Program, including but not limited to, any drafts of this agreement and any correspondence, memoranda or documents which refer to or summarize this agreement.

13. All documents since January 1, 2001 which reflect or refer to information about any rebate guarantees from any drug manufacturer.

14. All documents which refer to or reflect contracts, agreements or understandings with any pharmacy or drug manufacturer concerning the Express AARP Program.

15. All documents which refer to or reflect information about the H020 carrier number, including but not limited to, any communications with United, Express or pharmacies concerning changing the customer profiles containing the H020 carrier number or blocking the H020 carrier number.

16. All documents referring to or reflecting information about AdvancePCS' rejection of claims after August 31, 2001 or AdvancePCS "turning-off" or disabling the carrier number used in connection with the AARP Program after August 31, 2001.

17. Prescription histories collected for AARP Program participants as referenced in paragraph 37 of the Complaint.

18. All documents which reflect or refer to communications from January 1, 1997 to the present to AARP members concerning DUR.

19. All documents which reflect or refer to DUR results, data and/or statistics for 2000, 2001 and 2002, whether for the AARP Program, the Express AARP Program or otherwise, including all documents that would indicate (a) the actual message that the DUR system sent to the 227,975 participants as alleged in paragraph 39 of the Complaint or (b) the actual reason why 36,751 claims were reversed as alleged in paragraph 39 of the Complaint.

20. Produce all source documents for each and every statistic referenced in the Complaint and Plaintiffs' Memorandum concerning DUR and provide a copy of all documents which reflect, refer or set forth these statistics.

21. All public statements or marketing materials concerning DUR.

22. All documents which refer to DUR in connection with the Express AARP Program, including but not limited to documents which reflect (a) statistics showing DUR alerts and reversal of claims and/or the basis for the reversal of the claim, and (b) communications with United and/or Express concerning or referencing DUR.

23. Copies of any AARP Program card which AARP has issued or caused to be issued since United Healthcare and/or Express became the PBM for the AARP Program and copies of the form document(s) sent to any AARP members concerning, enclosing or referring to the new card.

24. All documents reflecting or referring to any lawsuits against AARP or its agents relating, in any way, to DUR.

25. All documents which reflect or refer to any communications with AARP members concerning the AARP Program or the Express AARP Program, including but not limited to, documents which refer to the transition from AdvancePCS to United and/or Express, any communications that you and/or Express sent to AARP members concerning what would occur with the AARP Program after August 31, 2001, and all marketing materials (brochures, mailers, AARP website information and card distribution) or other communications sent to AARP members concerning the AARP Program or the Express AARP Program.

26. All documents which reflect or refer to any complaint, problem, criticism or concern about the Express AARP Program or the AdvancePCS Plan, including but not limited to, any documents which reflect or refer to communications from third parties, including United, Express, an AARP member or pharmacy, concerning (a) a health issue, sickness, death, injury that arose or occurred specifically due to a claimed lack of patient history in the DUR clinical alert editing process, or (b) confusion, financial hardship, harm, injury, lost savings or discount.

27. All documents which reflect or refer to communications or information provided or to be provided to AARP members and pharmacies since January 1, 2001 concerning the Mail Service Program, including but not limited to, the pricing, services available, shipping and dispensing fees.

28. All documents since January 1, 1997 which reflect or refer to communications with AARP members concerning any clinical programs offered to program members or DUR.

29. All documents which reflect or refer to communications to or from AARP members or pharmacies concerning DUR, the AARP Program, the Express AARP Program, the

launch of the Express AARP Program, the transition to United and/or Express on September 1, 2001, the continuing management of the Express AARP Program, the H020 carrier number, the AdvancePCS Plan and/or this lawsuit.

30. All documents which refer to or reflect communications concerning the AdvancePCS Plan or the subject matter of this lawsuit, including any communications between or among you, United, Express and/or any other third-party concerning the AdvancePCS Plan on the subject matter of this lawsuit.

31. All documents which refer to or reflect why the launch date for the Express AARP Program was changed from June 1, 2001 to September 1, 2001, including documents which reflect any communications to AARP members concerning this change.

32. All documents reflecting or referring to the decision to obtain a new company to assume operational responsibility for the AARP Program and request for proposals to assume operational responsibility for the AARP Program.

33. All documents reflecting the terms under which United assumed operational responsibility for the AARP Program and/or the Express AARP Program, including any documents reflecting or referring to any agreements or understandings between or among you, RPS and/or United.

34. All documents since January 1, 2000 which reflect, refer to or set forth offers, bids, proposals or efforts of third-party entities, including United and Express, to become the administrator of the Express AARP Program and/or the PBM for the Express AARP Program, including but not limited to, all fee, revenue and profit projections.

35. All documents which reflect or refer to any transition plans or any steps to implement the transition of PBMs on the AARP Program and/or the Express AARP Program.

36. All documents and statements, including but not limited to recordings, press releases or web postings, which reflect statements made to analysts or the public concerning award of the Express AARP Program to United and/or United's award of the AARP Program business to Express. Your response should include any documents which reflect or refer to comments, statements or information which Express's chief executive officer made to any third parties on or soon after United awarded the Express AARP Program contract to Express.

37. All documents which concern, refer to or reflect the termination of AdvancePCS' role in the AARP Program.

38. All documents which concern, refer to or reflect the award of the AARP Program business to United and/or United's contract with Express.

39. All documents which reflect or refer to bids, proposals or offers since January, 2000 to acquire RPS or any assets of RPS or to succeed to RPS' role in the AARP Program, including all financial projections provided concerning projected revenue and/or income streams from the AARP Program and/or the Express AARP Program.

40. All documents, including but not limited to, contracts, agreements and payment receipts, pertaining to, referring to or reflecting money or consideration paid to AARP or United for participation in the AARP Program, including but not limited to, any one-time fees or payments to AARP by United, Express, or any other party concerning the AARP Program for the award of the contract.

41. All documents which reflect or refer to industry standards as referenced in the Complaint, including but not limited to, any documents which reflect or refer to United and/or Express' experience with the termination or transfer of any discount card prescription drug program to a new PBM.

42. All documents reflecting, referring or relating to Express in connection with the Express AARP Program, including but not limited to, communications between Express and plaintiffs.

43. All documents reflecting or demonstrating the current status of RPS and the disposition of all assets and/or stock of RPS.

44. All documents which refer to, reflect, support or were used by you in the calculation of your damage claim in the Complaint and/or as set forth in your Initial Disclosures, including but not limited, all documents, contracts, agreements, profit and loss statements, payments and payment receipts pertaining to, referring to or reflecting money or consideration paid to AARP for the Express AARP Program, all financial statements or any financial reports (whether actual or projections), sales and claim volumes, invoices, and cost reports.

45. All documents which reflect any revenue, income, fees, profits, costs, or expenses in connection with the AARP Program or Express AARP Program, whether actual or projections, including but not limited to, any monthly or quarterly reports reflecting income, costs, expenses or revenue for the AARP Program or Express AARP Program.

46. All documents, including but not limited to, contracts, agreements, and financial models, documents pertaining to, referring to or reflecting revenue streams paid to AARP for the AARP Program administered by RPS or for the Express AARP Program managed

by United and/or Express, including any one time fees or payments to AARP by United, Express, or any other party concerning the AARP Program for the award of the contract.

47. All documents which summarize the number of claims that Express has processed for the Express AARP Program (1) on a weekly basis from September 1 2001 through the date of your response, and (2) daily from March 18, 2002 through the date of your response.

48. All documents which summarize the number of claims that Express has processed for the Express AARP Program (1) on a weekly basis from September 1 2001 through the date of your response per pharmacy or pharmacy chain, and (2) daily from March 18, 2002 through the date of your response per pharmacy or pharmacy chain.

49. All documents which refer to, reflect or support Plaintiffs' allegations in paragraphs 27, 47, 48 and/or 55 of the Complaint that AARP members are or may be confused, including copies of any documents to, from or about AARP members.

50. All documents which reflect or refer to any confusion or harm that AdvancePCS has allegedly created for AARP members or pharmacies.

51. All documents which reflect or refer to any investigation conducted concerning the drop or decrease in claims submitted to the Express AARP Program.

52. All documents reflecting or referring to any complaints or criticisms received from AARP members and/or pharmacies after September 1, 2001 regarding the Express AARP Program and/or the AdvancePCS Plan.

53. All documents which reflect or refer to present or prospective agreements, contracts or economic advantages with which you contend AdvancePCS has either tortuously interfered and/or will tortuously interfere.

54. All documents which you provided to Claude Martin or any other expert you intend to have testify on your behalf in this matter.

55. All documents referred to by Claude Martin in his affidavit or relied upon by him in making his affidavit attached to Plaintiffs' Memorandum, including but not limited to, the "studies" identified in paragraph 13.

56. All documents that you or United provided to Charles Kneese, Marjorie Simos, or Thomas Morrison related to the allegations raised in this lawsuit, including but not limited to draft affidavits and any communications with your counsel or counsel for United.

57. All work papers and other documents which Claude Martin or any other expert has generated in connection with this case who you intend to call to testify at trial, including but not limited to, documents or tapes that reflect interviews conducted by the proffered expert, documents provided to the expert from individuals other than counsel, summaries of interviews, drafts of any affidavits and surveys performed and/or data obtained from surveys.

58. Any other affidavits which are in your possession concerning the subject matter of this lawsuit but which have not been served or filed in this matter.

59. All expert reports, including expert reports provided to you or your counsel by an expert who you do not intend to call as a witness at trial.

W. Thomas McGough
Mary J. Hackett
Christopher J. Soller
REED SMITH LLP
435 Sixth Avenue
Pittsburgh, PA 15219-1886
(412) 288-3088

and

Lewis A. Remele, Jr.
BASSFORD, LOCKHART, TRUESDELL & BRIGGS, P.A.
3550 Multifoods Tower
Minneapolis, MN 55402-3787
(612) 333-3000

Counsel to Defendant, AdvancePCS

CERTIFICATE OF SERVICE

The undersigned does hereby certify that she caused to be served a true and correct copy of the foregoing Defendant's First Set of Interrogatories and First Request for Production of Documents Directed to AARP by U.S. mail, first class, postage prepaid on this 15th day of May, 2002, to the following:

Michael J. Lyle
Weil, Gotschal & Manges LLP
1501 K Street NW, Suite 100
Washington, DC 20005

David B. Potter
Oppenheimer Wolff & Donnelly LLP
Plaza VII, Suite 3300
45 South Seventh Street
Minneapolis, MN 55402

Mark Briol
Briol & Associates
3700 IDS Center
80 South Eighth Street
Minneapolis, MN 55402

Anthony Herman
Covington & Burling
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 2004-2401

Counsel for Defendant