UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| UNITED HEALTHCARE INSURANCE CO. and AARP, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 01-CV-2320 |
| | ) | |
| vs. | ) | |
| | ) | |
| ADVANCEPCS, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S FOURTH REQUEST FOR PRODUCTION OF DOCUMENTS**
**DIRECTED TO PLAINTIFF UNITED HEALTHCARE INSURANCE CO.**

Defendant AdvancePCS, pursuant to the Federal Rules of Civil Procedure, serves the following document requests upon Plaintiff United Healthcare Insurance Co., ("United") to be answered within thirty (30) days or an earlier date if the Court so orders.

These requests for production are continuing in nature and United is required to provide such additional information as United, attorneys for United, or anyone acting on behalf of or in concert with United, may have or may obtain between the time the answers are served and the time of any hearing or trial.

1.2.04

EXHIBIT
tabbles
5

# I. DEFINITIONS

1. "You" or "Your" shall mean United, as well as its agents, attorneys, accountants, consultants, independent contractors, and any other individual or entity associated or affiliated with you or purporting to act on your behalf.

2. "Express Scripts" or "Express" shall mean Express Scripts, Inc., and any division, affiliate, subsidiary, and company of the foregoing, and any director, officer, employee, agent, and any representative of the foregoing.

3. "United Healthcare" or "United" shall mean plaintiff United Healthcare Insurance Co., and any division, affiliate, subsidiary, and company of the foregoing, and any director, officer, employee, agent, and any representative of the foregoing.

4. "AdvancePCS" shall mean AdvancePCS and any division, affiliate, subsidiary, and company of the foregoing, and any director, officer, employee, agent, and any representative of the foregoing.

5. "AARP" shall mean plaintiff AARP and any division, affiliate, subsidiary, and company of the foregoing, and any director, officer, employee, agent, and any representative of the foregoing.

6. The word "document" as used herein shall be understood to mean all written, graphic, audio, or otherwise recorded matter, however produced or reproduced, in the actual or constructive possession, custody, care or control of you, your agents and attorneys, or any of them, including but not limited to originals and all copies of correspondence, tapes, disks, notes, photographs, sound recordings, memoranda of all types, reports, copies of tax returns and records, receipts, bills, invoices, purchase orders, charge slips, hotel charges, working papers,

computer records and printouts, charts, statistical records, delivery records, stenographers' notebooks, desk calendars, appointment books, diaries, time sheets and logs, job, matter and transaction files, and any papers or recordings similar thereto, whether made or received by you.

7. The term “person” shall mean an individual, corporation, proprietorship, partnership, sole partnership, union, federation, association and any other kind of entity.

8. The singular of any word used herein shall be deemed to include the plural of such word and the plural shall include the singular.

9. “DUR” shall mean the drug utilization review as that term is used in the Complaint filed in this action.

10. “Plaintiffs’ Motion” shall mean Plaintiffs’ Motion for Entry of Preliminary Injunctive Relief filed in this action.

11. “Plaintiffs’ Memorandum” shall mean Plaintiffs’ Memorandum of Law in Support of Plaintiffs’ Motion.

12. “Complaint” refers to Plaintiffs’ Second Amended Complaint filed in this action.

13. “PBM” refers to a pharmacy benefit management company as referenced in paragraph 11 of the Complaint.

14. “AARP Program” shall mean the AARP prescription drug program referred to in paragraph 10 of the Complaint.

15. "RPS" shall mean Retired Persons Services, Inc. and any division, affiliate, subsidiary, and company of the foregoing, and any director, officer, employee, agent, and any representative of the foregoing.

16. "Advance PCS Plan" shall mean the AdvancePCS Plan as defined in paragraph 28 of the Complaint.

17. "Recovery Period" shall mean the time period for which United claims it incurred expenses related to its damage claim.

18. "Lost Profits" shall mean United's claim related to lost income, anticipated expenses and lost opportunities related to the transition of the AARP Program in September, 2001.

## II. INSTRUCTIONS

With respect to each of the document requests set forth herein, you shall identify and/or produce all documents which are known to you or which can be located or discovered by you through diligent effort on the part of you, your employees, representatives, attorneys, or accountants, including but not limited to all documents which are in the possession of you or your representatives, attorneys, or accountants, or accessible to you or your representatives, attorneys, or accountants.

To the extent that a limiting time frame may be applicable, you should provide information and/or documents from on and after January 1, 1997.

**Objections to Production**

In the event that any objection is made to the production of any document fairly comprised within the scope of the following requests, you shall furnish in lieu of the production of such document a list of each document withheld from production together with the following information: (a) the reason for withholding production; (b) a statement of the facts constituting the basis for your withholding the document from production; and (c) a brief description of the documents withheld, including (i) the date upon which the document was originated, (ii) the identity of its author or preparer, (iii) the identify of each person who was a recipient of the document, (iv) the specific request which encompasses the document, (v) a brief description of the subject matter of the document, and (vi) the identity of all persons who have personal knowledge of the subject matter.

Since a protective order has been entered in this case, it is not a valid basis to object or to avoid production of materials and information based upon a claim of confidentiality.

**Destroyed Documents**

If any documents requested herein or fairly comprised within the scope of the following requests have been lost or destroyed, you shall provide in lieu of a true and correct copy thereof a list of such documents so lost or destroyed together with the following information: (a) the date of origin, (b) a brief description of such document; (c) the author of the document; (d) the date upon which the document was lost or destroyed; and (e) a brief statement of the manner in which the document was lost or destroyed.

**Privileged Documents**

To the extent you withhold documents based upon a claim of privilege, please provide a detailed privilege log, including the date of the document, number of pages of the document, the author, the recipient(s) and a brief description of the subject matter.

## III. DOCUMENT REQUESTS

1. Produce an electronic readable tape of the claims for all individuals submitted from June, 1, 2001 through and including April 1, 2003 for the retail portion of the Member Choice and Prescription Savings Service ("PSS") non-funded A-G plans of the AARP Program regardless of who was the PBM for the AARP Program. The data should be provided on CD-ROM in one of the following file formats: Microsoft Access, Comma-Delimited Text, Tab-Delimited Text, or Fixed-Width Text, or any other format agreed upon by counsel that will allow for analysis of the information. The following fields should be included in the data: claim number, pharmacy ID (chain, pharmacy name, location), unique member ID, member location, date of claim, drug name, price of the drug, any DUR alerts and the codes associated with the alerts, whether the claim was reversed and any reversal code used and whether the claim was accepted or rejected and/or paid. All data produced pursuant to the is request will be treated as "confidential outside counsel's eyes only" pursuant to the terms and conditions of the Protective Order entered into in this litigation.

2. Produce an electronic readable tape of the claims processed under the H020 carrier number for all individuals submitted from June, 2001 through and including March, 2002 for the retail portion of the Member Choice and Prescription Savings Service ("PSS") non-funded A-G plans of the AARP Program. The data should be provided on CD-ROM in one of

the following file formats: Microsoft Access, Comma-Delimited Text, Tab-Delimited Text, or Fixed-Width Text, or any other format agreed upon by counsel that will allow for analysis of the information.. The following fields should be included in the data: claim number, pharmacy ID (chain, pharmacy name, location), unique member ID, member location, date of claim, drug name, price of the drug, any DUR alerts and the codes associated with the alerts, whether the claim was reversed and any reversal code used and whether the claim was accepted or rejected and/or paid. All data produced pursuant to this request will be treated as "confidential outside counsel's eyes only" pursuant to the terms and conditions of the Protective Order entered into in this litigation.

3. Produce copies of any actual letters sent based on the "Retrospective DUR" performed after March, 2002 for all claims processed under the H020 number. The letters produced may be redacted as to the member's name, address or other contact information (e-mail, phone number) and the individual member identification.

4. With respect to the "Trademark License Agreement for AARP Pharmacy Service," bates numbered AARP 1 – AARP 27, produce copies of all payments and accompanying reports defined to include, at a minimum, the number of members participating in the Pharmacy (as defined in the agreement), categories of products sold and total payment due pursuant to Section 3.5 of this agreement.

5. Produce all documentation which refers, reflects or relates to any payment by ESI or any third party of any cost claimed to be incurred by United for the Recovery Period, including but not limited to: any and all agreements for such payments, invoices, purchase orders, vouchers, and/or credits or discounts provided as payment for the claimed costs.

6. Produce all proformas or projections of the retail pharmacy that was drafted by United and/or Express and/or was exchanged between United and Express, including, but not limited to, those documents identified by Stuart Bascomb on page 40 – 41 of his 11/24/03 deposition.

7. Produce all documents reflecting AARP/United's plans and/or expectations regarding the transition, including but not limited to required card issuance, reissuance, member loss or attrition, necessary costs of transition, and expected contribution by ESI.

8. Produce all documents which refer, reflect or relate to the calculation for United's Lost Profits claim; including, but not limited to all documents utilized or referenced to create UHIC 1758 – UHIC 1762.

9. Produce all documents which refer, reflect or relate to retail volume estimates for the calculation of United's Lost Profits claim.

10. Produce all documents which reflect the actual retail volume for the AARP Program from 2001 to the present.

11. Produce all documents which refer, reflect or relate to mail volume estimates (OTC and Prescription) for calculation of United's Lost Profits claim.

12. Produce all documents which reflect the actual mail volume (OTC and Prescription) for the AARP Program from 2001 to the present.

13. Produce all documents which refer, relate or reflect United's basis for a growth rate of the retail portion of the AARP Program of fifteen percent (15%) for 2001 – 2003.

14. Produce all documents which refer, reflect or relate to the actual growth of the retail portion of the AARP Program for 2002 – 2003.

15. Produce all documents which refer, relate or reflect United's basis for a growth rate of the retail portion of the AARP Program of twenty percent (20%) in 2004 – 2006.

16. Produce all documents which refer, relate or reflect United's basis for a growth rate of the mail portion of the AARP Program of 10, 15 and 20 percent.

17. Produce all documents which refer, reflect or relate to the actual growth of the mail portion of the AARP Program for 2001 – 2003.

18. Produce all documents which refer, relate or reflect the amount of claims processed at the Usual and Customary (as used in document bates-numbered UHIC 1391) for 2001 – 2003.

19. Produce all documents which refer, reflect or relate to the basis for the amount of all future claims processed at the Usual and Customary (as used in document bates-numbered UHIC 1391) for United's Lost Profits claim.

20. Produce all documents which refer, reflect or relate to the basis for any United internal costs incurred for United Lost Profits claim.

21. Produce all documents which refer, reflect or relate to the basis for the costs associated with the internal development of cards for United's Lost Profits claim.

22. Produce all documents which refer, reflect or relate to the basis for the costs associated with the $10 rebate coupon and its development for United's Lost Profits claim.

23. Produce all documents which refer, reflect or relate to the basis for the costs associated with the Call Center Training for United's Lost Profits claim.

24. Produce all documents which refer, reflect or relate to the basis for all future "recovery costs" (as used in document bates numbered UHIC 1759) including, but not limited to costs associated with member education, Call Center training, direct marketing programs, mailings and telemarketing as claimed by United for Lost Profits.

25. Produce all documents which refer reflect or relate to the actual "recovery costs" (as used in document bates numbered UHIC 1759) including, but not limited to costs associated with member education, Call Center training, direct marketing programs, mailings and telemarketing as claimed by United for Lost Profits.

26. Produce all documents which refer, reflect or relate to the retail dispensing fee as claimed by United for its Lost Profits.

27. Produce all documents which refer, reflect or relate to the retail credit as claimed by United for its Lost Profits.

28. Produce all documents which refer, reflect or relate to the retail administration fee as claimed by United for its Lost Profits.

29. Produce all documents which refer, reflect or relate to the number of cards issued and/or reissued by AARP and/or United and the dates on which they were reissued.

30. Produce all documentation regarding the reissue of cards, including but not limited to, all communications with ESI, all correspondence with vendors, all invoices and all payments including but not limited to copies of any and all payments.

31. Produce all documentation referring, reflecting or relating to any payments made by ESI to United pursuant to any contract or other similar agreement entered into between ESI and United with respect to the AARP Program and in this litigation.

32. Produce all documents related to United's damage claim, including all background and supporting material, including, but not limited to invoices and payments, as well as any calculations prepared. Specifically, produce: (a) all documents which refer, reflect or relate to the "Intermediary Remedies," the costs associated with every aspect of such remedies and bills for such costs if paid by a third party, including ESI (which were identified in Mr. Bascomb's deposition); (b) all documents which refer, reflect or relate to United's damage computation of over $2 million dollars for the issuance of new cards; (c) all documents which refer, reflect or relate to United's legal expenses; and (d) all documents which refer, reflect or relate to "Future Recovery Costs" including but not limited to, all documents which refer, reflect or relate to the "retrospective DUR project" and the costs associated with any related projects.

33. With respect to United's document production of UHIC 7833 – UHIC 8093, which consisted of various AARP Pharmacy Services Management Team meetings and Daily Pharmacy Minutes and Pharmacy Services Notes, produce (a) all minutes or similar minutes for 2001 through the present and (b) produce all documents referenced in the minutes, including, but not limited to any hand-outs or presentations.

34. Produce all e-mails to or from Lois Quam.

35. Produce the Business Plan for the AARP Pharmacy Service for 2001, 2002 and 2003. A draft of this Plan for 2001 was marked as Defendant's Deposition Exhibit 227, bates-numbered AARP 1705-1718.

36. Produce a copy of the AARP Benefit Comparison Memo as reflected in Defendant's Deposition Exhibit 248, bates-numbered UHIC 1278-1280.

37. As referenced and attached in documents bates-numbered UHIC 1992 – UHIC 2017, produce all the documents which are referenced in and/or attached to these e-mail communications, including, but not limited to the following documents: (a) 11-29 mtg notes.doc; (b) Top 8 chains for AARP Report 12112001.xls; (c) weekly claim totals history 1212001; (d) ESI to PCS claim volume comparison by chain 12042001.xls; (e) Retail Claim Volume; (f) Top 12 Chains for AARP Report 12262001.xls; (g) Mgmt update 1.3 doc; (h) volume forecast-updated 1-9.xl; (i) Top 13 Chains for AARP Report 01032002.xls; (j) New Old AARP Member Notificationll.doc; (k) att1.htm; (l) Retail Utilization-Impact of Activities; (m) Top Chains AARP Report.xls; and (n) AARP weekly claims totals 02212002.xls.

38. As referenced and attached in documents bates-numbered UHIC 1937 – UHIC 1975, produce all the documents which are referenced in and/or attached to these e-mail communications, including, but not limited to the following documents: (a) AARP 0901 thru 10.20.retail only.xls; (b) daily totals 09_01_01 through 10.20.01 RETAIL ONLY.xls; (c) Letter to Chains re: PCS AARP issue Draft 4-Beth sig.doc; (d) AARP claim totals 9-1-10-23.xls; (e) AARP claim totals9.1-10.28 retail.xls; (f) AARP claim totals 9.1-10.31.xls; (g) AARP claim totals 9.1-11.10.xls; (h) AARP claim totals 11.14.01.xls; (i) AARP claim totals 11272001.xls; (j) AARP claim totals 9.1-11.25.xls; (k) AARP claims totals 11.29.01.xls; (l) 12-4 Card Rationale.doc; (m) 11-30 Card.Value.xls; (n) AARP Pharmacy Notification with BIN Change 2nd Notice.doc; (o) AARP-Alertcare Summary Document.doc; (p) ESI to PCS claim volume comparison by Chain 12042001.xls; (q) Volume Report-modified 12-5 updated 12-11; (r) Top 8

12-12.xls; (s) AARP claim totals 12-08-01.xls; (t) week ending 12-08-01.xls; (u) volume forecast.xls; (v) AARP claim totals 12142001.xls; (w) AARP Coupon Redemption Options to Kristing.doc; (x) AARP claim totals 12152001.xls; (y) 12.29.01-1.xls; (z) AARP claim totals 12-29-2001.xls; (aa) AARP claim totals graph 9.1-12-31-2001.xls; (bb) Retail Claim Volumes 9.1-12.31.xls; (cc) Key lawsuit dates; (dd) AARP claim totals 01052002.xls; (ee) AARP claim totals graph 9.1-1.5 with graph.xls; (ff) ESI to PCS Claim Volume Comparison by Chain 01082; (gg) AARP claim totals 01102002.xls; (hh) CVS AARP claim totals 01142002.xls; (ii) AARP claim totals 01152002.xls; (jj) AARP claim totals for Rite-Aid 01152002.xls; (kk) AARP claim totals 0112202.xls; (ll) AARP claim totals 01102002 w/ graph.xls; (mm) AARP claim totals for Wal-Mart.xls; (nn) Blocking AARP Claims Currently Submitted to Advance PCC-Draft.doc; (oo) AARP Claim Totals for Brooks and Publix 01232002.xls; (pp) Top 13 Chains for AARP Report 01032002.xls; (qq) ESI to PCS Claim Volume Comparison by Chain 12042001.xls; (rr) Blocking by Pharmacies; (ss) AARP claim totals for Rite-Aid 01162002.xls; (tt) AARP claim totals 01242002.xls; (uu) AARP claim totals for Wal-Mart.xls; (vv) AARP claim totals for Rite-Aid.xls; (ww) aarp card production 08.24.01.xls; (xx) ID Card Production Schedule (rev).doc.; (yy) Documentation of Events 11_16_01.doc; (zz) Recapturing Members Activities and Options.doc; (aaa) AARP claim totals 02052002.xls; (bbb) ESI to PCS Claim Volume Comparison by Chain 12042001.xls (updated with actual January totals); (ccc) Mgmt Update 2-11.doc; and (ddd) Top 13 Chains for AARP Report 02062002.

39. With regard to any damages estimates made since August, 2002, produce supporting documentation as requested in Request No. 32 (a) through (e) and Request No. in addition to other costs United claims to have incurred.

40. Produce all severance agreements or similar agreements for any individual who was involved with the transition of the AARP Program and is no longer employed by or associated with United, including, but not limited to, Ed Hedblom, Tom Erickson and Kristin Johnson.

41. Produce the following: (a) as referenced in document bates-numbered AARP 28-65, produce all reports described in Section 3.13 for 2001-present; (b) as referenced in document bates-numbered AARP 28-65, produce all documents which refer, reflect or relate to Section 3.13.1.

42. As referenced in AARP 1600-1663, Express Scripts, Inc. Managed Prescription Drug Program Agreement, (Lindsay Deposition Exhibit No. 4) produce (a) all documents which refer, reflect or relate to Section 3.8 including all reports; (b) all reports and audits pursuant to the terms of the Express Scripts, Inc. Managed Prescription Drug Program Agreement (AARP 1600-1663) for 2001 and 2002.

43. As referenced in document bates-numbered UHIC 915-917, produce all written weekly status reports to senior management.

44. Produce the following: (a) as referenced in document bates-numbered AARP 2676, produce all customer satisfaction reports and/or surveys; (b) all documents which refer, reflect or relate to any surveys conducted in connection with the transition of the AARP Program from 2001 to the present, including, but not limited to, all raw data and draft questions; (c) all documents which refer, reflect or relate to any studies or surveys performed by United or at the direction of United after September 1, 2001 regarding AARP member confusion.

45. Produce all documents including, but not limited to transcripts and surveys relating to the Hartford Call Center from September 1, 2001 to present that refer, reflect or relate to (a) the transition of the AARP Program as of September 1, 2001, and (b) calls associated with the erroneous mailing to 10,000 PSS members as reflected in Deposition Exhibit 33 marked at Tom Erickson's deposition.

46. With respect to document bates-numbered UHIC 937-945, there is no information on this document in the "update" or "resolution" columns. Please produce all subsequent versions of this document to the extent any exist.

47. As referenced in documents bates-numbered UHIC 1705-1706, 1306-1307, 2781-2782, and 2808, produce all documents which refer, reflect or relate to: (a) offering AARP members the choice to opt-out of the AARP Program in 2001 prior to transition of the AARP Program, and (b) the decision to decline AARP members the opportunity to opt-out of the AARP Program in 2001 prior to the transition of the AARP Program.

48. As referenced in document bates-numbered UHIC 3554-3566, (more specifically on UHIC 3563), produce all documents which refer, reflect or relate to: (a) the issue that potential drug interaction could only be monitored if an AARP member went to a participating pharmacy post-transition of the AARP Program; (b) any effort made prior to the transition of the AARP program to communicate this issue to AARP members.

49. As referenced in UHIC 3877-3878, produce copies of all work plans for all areas and all drafts of the master work plan.

50. Produce copies of all ESI work plans for the AARP Program from January 1, 2001 through December 2002.

51. As referenced in document bates-numbered UHIC 3841-3842, produce all AARP Board Meeting presentations made by United and/or ESI including all documents related to ESI's "talking points."

52. Produce copies of all forms of new processing information provided to pharmacy chains and independents which were "batch faxed" or mailed regarding the transition of the AARP Program as referenced in Tom Erickson's deposition.

53. Produce all documents which refer, reflect or relate to the information technology aspect of properly transferring the claims history to the AARP Program as of September 1, 2001 as referenced in Tom Erickson's deposition.

54. As referenced in documents bates-numbered UHIC 3869 and UHIC 3856, produce all documents which refer reflect or relate to strategic plans and competitive analysis including all drafts of such plans and analysis.

55. Produce all documents from Sandy Coffey Mead's files which refer, reflect or relate to volume, revenue, profile and cost projections for processing claims for the AARP Program. To the extent that United claims that Ms. Mead's files were previously produced, please provide the bates-numbers for such files.

56. Produce all documents from Sheila McMillan's files which refer, reflect or relate to the AARP Program for 2001 to the present. To the extent that United claims that Ms. McMillan's files were previously produced, please provide the bates-numbers for such files.

57. Produce all documents which refer, reflect or relate to volume, revenue, profile and cost projections for processing claims for the AARP Program.

58. Produce all documents which refer, reflect or relate to volume projections estimated prior to September 1, 2001 for processing claims post-transition of the AARP Program, including the projections that were described in Mr. Bascomb's deposition.

59. The Arthur Andersen audit as referenced in document UHIC 7905-7906, Defendant's Deposition Exhibit No. 240.

60. As referenced in Roberta Milman's deposition, produce a copy of the Lewin Report.

61. Produce the survey of 1000 Minnesotans as referenced in ESI 0059-0061, including all supporting documents, raw data, draft questions and related documents.

W. Thomas McGough
Mary J. Hackett
Christopher J. Soller
REED SMITH LLP
435 Sixth Avenue
Pittsburgh, PA 15219-1886
(412) 288-3088

and

BASSFORD REMLE, P.A.
Lewis A. Remele, Jr.
Kevin P. Hickey
33 South Sixth Street
Suite 3800
Minneapolis, MN 55402-3707
(612) 333-3000
Counsel to Defendant, AdvancePCS

January 2, 2004

**CERTIFICATE OF SERVICE**

The undersigned does hereby certify that an original and two copies of the foregoing Defendant's Fourth Request for Production of Documents Directed to Plaintiff United Healthcare Insurance Co. was served by overnight mail this 2nd day of January, 2004, to the following:

Michael J. Lyle
Christine Hsu
Weil, Gotschal & Manges LLP
1501 K Street NW, Suite 100
Washington, DC 20005

David B. Potter
Bret Puls
Oppenheimer Wolff & Donnelly LLP
Plaza VII, Suite 3300
45 South Seventh Street
Minneapolis, MN 55402

Counsel for United Healthcare Ins. Co.

Mark Briol
Vicki Bitner
Briol & Associates
3700 IDS Center
80 South Eighth Street
Minneapolis, MN 55402

Counsel for AARP

Counsel for Defendant