IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| UNITED HEALTHCARE INSURANCE CO. and AARP, | ) | Civil Action No. 01-2320 JMR/FLN |
| Plaintiffs, | ) | |
| v. | ) | **ADVANCEPCS'S NOTICE OF MOTION AND MOTION TO COMPEL DISCOVERY** |
| ADVANCEPCS, | ) | |
| Defendant. | ) | |

**ADVANCEPCS'S NOTICE OF MOTION AND MOTION TO COMPEL DISCOVERY**

PLEASE TAKE NOTICE that on the 26th of February, 2004 at 11:00 a.m. before the Honorable Arthur J. Boylan in Courtroom 628A. Defendant AdvancePCS will bring the following Motion.

As an initial matter, AdvancePCS hereby certifies that in accordance with Federal Rules of Civil Procedure and Local Rule 37.1, it has in good faith attempted to confer with the Plaintiffs in an effort to secure the information sought herein, without Court action.

1. AdvancePCS moves this Court to compel Plaintiffs United Healthcare Insurance Company ("United") and AARP to produce all remaining relevant documents that have not been produced to AdvancePCS in this case.

2. AdvancePCS also requests that due to the overuse of designations under the Protective Order and Stipulation entered in this case by United, that AdvancePCS be permitted to share all documents designated as "Confidential-Outside Counsel's Eyes Only" and "Confidential-Counsel's Eyes Only" with in-house counsel at AdvancePCS and one business person at AdvancePCS. AdvancePCS shall treat the documents as if they were designated as "Confidential" under the Protective Order and Stipulation.

EXHIBIT
tabbies
6

3. AdvancePCS also moves this Court to compel United to produce all attachments to communications that are not in and of themselves privileged and to produce all "factual investigations" by non-lawyers regarding this matter.

4. AdvancePCS requests that United also be compelled to produce all documents withheld from production through the assertion of the "common interest" privilege and all communications with Express Scripts, Inc., including affidavits drafted by United for non-parties.

5. AdvancePCS also requests that United be compelled to produce a log of all documents that it believes have been properly redacted, or else be compelled to produce those documents to AdvancePCS.

6. This motion is based upon the accompanying memorandum of law and proposed order, the pleadings and papers on file herein, and upon such other matters as may be presented to the Court at the time of hearing on this motion.

Dated: February 12, 2004.

By Mary J. Hackett

REED SMITH LLP
W. Thomas McGough, Jr.
Mary J. Hackett
Christopher J. Soller
435 Sixth Avenue
Pittsburgh, PA 15219-1886
(412) 288-3131

BASSFORD REMLE, P.A.
Lewis A. Remele, Jr.
Kevin P. Hickey
33 South Sixth Street
Suite 3800
Minneapolis, MN 55402-3787
(612) 333-3000

Attorneys for Defendant AdvancePCS

UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

United HealthCare Insurance Company, et al.,

Plaintiffs,

COPY

vs. Case No. 01-CV-2320

AdvancePCS,

Defendant.

---

THE HONORABLE ARTHUR J. BOYLAN

United States Magistrate Judge

* * * *

TAPE-RECORDED HEARING

TRANSCRIPT OF PROCEEDINGS

* * * *

Date: 2/26/04

Reporter: Lisa M. Thorsgaard

EXHIBIT

tabbies

7

work product privilege is that if I have asked a witness or an individual at United to go and research a specific issue and to find information in a specific way or a certain grouping of information, that grouping of information, the fact that I have asked for a specific bit of information, that is privileged because the mere fact of my asking a United employee to go and look for certain specific information and giving them a list of tasks, that is going to be privileged because otherwise, if it's not privileged, it would give AdvancePCS a road map into what did I think was most important in building up the case. What did I feel needed to be investigated from a factual basis.

THE COURT: Are we only talking about specific requests that you have made or are we talking about a broader category of requests that were made by others but that were shared with you?

MS. HSU: I'm sorry, I didn't understand.

THE COURT: In other words, let's suppose that John Doe asked Mary Doe to



do an investigation, and after the investigation, to not only e-mail him but also to include you.

MS. HSU: No.

THE COURT: As opposed to your asking, sending someone with their marching orders to do an investigation of X, Y, or Z and to have that investigation reported directly to you.

MS. HSU: The latter, Your Honor. I withheld these documents because I recognize, when I read through the e-mails, that when they said that they were being asked to do something, they were being asked to do something because I asked them to. And if I don't appear on the to or from line of the e-mail, it does not mean that I was not involved because the text of the e-mail would indicate that they were being asked by outside counsel or by me by name to go and research certain factual issues and to get back to them.

THE COURT: How many documents are we talking about that were labeled as privileged under this last category that we're



talking about?

MS. HSU: According to Ms. Hackett, apparently 16 documents.

THE COURT: And is it -- those 16 documents have been identified to you, and is there any problem with supplying those to the Court for an in camera review?

MS. HSU: We can do that. We don't have them here right now.

THE COURT: Sure. Okay.

MS. HSU: If Your Honor doesn't have any further questions.

THE COURT: I don't think so.

MS. HSU: Thank you.

THE COURT: All right. Do you want to wrap it up.

MS. HACKETT: Briefly.

THE COURT: Real briefly.

MS. HACKETT: I will. Since AARP started first, Your Honor, I'd like to start with AARP. And actually, let me take a step back to your question.

When we filed the brief, 36 percent of the documents we produced had a designation under the protective order but that also



includes the confidential designation as well as in-house or outside. We would be happy to live with a 10 percent restriction on counsel eyes only whether inside or outside. So if that were your decision, we'll go back. And it may be we don't have to go back and do anything. It may be we already abide by that. But if you want me to provide more detailed numbers, I can do that.

With respect to AARP, Your Honor, and I apologize, sometimes I feel like we're two children and you're the parent that has to figure out the resolution of our squabbling, but with respect to AARP, for example, we don't have any board minutes. Even though they indicate they produced them, we got 60 pages yesterday, I did fly through them, we don't have them. I don't know what to do about that other than a court order to clarify they better be and AARP says okay and we have a court order.

Let me give you another example. The Julia Alexis e-mails. They told me on January 14 that they were looking for those, that indeed they had not been produced. We

are, therefore, working on locating this batch of e-mails. We're pulling them once again, and this process has taken longer than anticipated. When we have those e-mails in hand, we will promptly provide you with all relevant and responsive copies. I haven't heard a further word. So when they come in here and say they're privileged, maybe I missed something in the communication process, but they weren't produced yesterday and maybe they were all added to the privilege log but that's not what was told to us. So the only option I have, Your Honor, is to come here and say I don't get it and I don't have it and I need some ordered chaos. If they will agree that everything they have agreed to produce has been produced, we're done. What scared me by counsel's statement is he says that of course we have to get the expert report and any documents relied upon the expert report. What are those? I mean, at some point the fact discovery has to end. If they have fact documents that exist today that the expert's going to rely upon, we should get those when discovery is still open, and that's my



concern. I have no problem -- obviously they could produce expert reports but the continuing production needs to end and if we could get that representation here today, I think the issue as to AARP is resolved.

Now, as to scheduling, this is another reason why I'm here today, Your Honor. We don't want to move the deadlines either. But if I get another 6,000 pages of documents dumped on me today, I have a real problem. And so again, I'm here today to try to get confirmation that we are done. I'd like the same thing from United. I'd like confirmation that, other than expert reports, they are done. The reason I am suspicious is that I have had deposition testimony where people say that things exist. For example, I asked Sandra Mead about did you do a damages analysis for Express. And I noted in a bullet on an agenda that it indicated Sandy to develop a one-page summary of our financial request of ESI to include the following. And my question I asked her is did you do that. I don't remember specifically but these are the same. If I was requested to do it, I assume



that I did. Is it possible that this exhibit that is the damages analysis they're now throwing at us that that was prepared as an estimated lost revenue and recovery cost is it possible that that was originally prepared to make the request of ESI. She answered they were all the same categories. I don't recall exactly how it looked, but as we discussed earlier, we were looking for ESI to reimburse us for the cost of the second card. We needed information to go to them with that we thought things would cost. She admits, as far as I can tell, she did that. I don't have that. I don't know what else to do other than, again, if we can get a representation that they're done, I suppose I will have to live with that. It disturbs me in that we think there are documents out there that will help us. It's not up to Ms. Hsu to sit here and say to the Court they don't help them so they shouldn't have them. That's our right to get them to defend the case. That's all that we're asking for is clarity that we have it and clarity and we're done with the document production.



Lastly, Your Honor, and let me make one other point about when Ms. Hsu said that there's no $30 million damages analysis and I'm imagining something and that wasn't done. Their initial disclosures is a $30 million damages analysis. I'm not imagining that this damages analysis exists. What I was told again by Ms. Mead in depositions is that it was repeatedly changed and updated and went down. That's what I'm after. I have one of those. I believe there are more because she said they repeatedly updated it.

And I'm being repetitive but I hope Your Honor understands my frustration. I want to get some confirmation everything's produced but I also want to get what I think is out there and I'm struggling with how deal with that. I think the way to do that is a court order because if they've produced everything, they have nothing more to do, but I get the protection of a court order that they were told to do this and I can't get prejudiced or jammed as the case goes forward.

Lastly, on Ms. Hsu's claims of privilege, all I ask, Your Honor, is look at the cases

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

UNITED HEALTHCARE INSURANCE COMPANY AND AARP,

Plaintiffs,

Civil No. 01-2320 RHK/AJB

v.

**ORDER ON DEFENDANT'S MOTION TO COMPEL**

ADVANCEPCS,

Defendant,

---

The above matter came before the Court on Defendant's Motion to Compel. [Docket No. 143]. A hearing was held on February 26, 2004, at the U. S. Courthouse, 316 Robert St., St. Paul, Minnesota. Christine P. Hsu, Esq., appeared on behalf of Plaintiff United Healthcare; Scott A. Benson, Esq., appeared on behalf of Plaintiff AARP; and Mary J. Hackett, Esq., appeared on behalf of Defendant AdvancePCS. Based on the file, affidavits, memoranda and arguments of counsel,

**IT IS HEREBY ORDERED THAT:**

1. Defendant's Motion to Compel is **granted** in part and **denied** in part, as provided herein. [Docket No. 143].

2. Plaintiff AARP shall produce the following documents, to the extent they exist, within 10 days of this Order:

   a. Documents relevant to the claim of damages, responsive to Document Request Nos. 44-46 and 53.

   b. Customer satisfaction surveys responsive to Document Request Nos. 26 and 49-52. AARP shall produce all customer satisfaction surveys.

EXHIBIT
tabbies
8

3.9.04

c. Documents related to the transition plans, or documents reflecting any steps taken to implement the transition of the Pharmacy Benefit Management on the AARP and/or Express Program, responsive to Document Request No. 35.

3. Plaintiff United shall produce the following documents, to the extent they exist, within 10 days of this Order::

a. Electronic readable tape of the claims for all individuals submitted from June 1, 2001, through and including Aril 1, 2003, for the retail portion of the Member Choice and Prescription Saving Service non-funded A-G plans of the AARP Program regardless of who was the PBM for the AARP Program, responsive to Document Request No. 1.

b. Electronic readable tape of the claims processed under the H020 carrier number for all individuals submitted from June 2001 through and including March 2002, for the retail portion of the Member Choice and Prescription Savings Service non-funded A-G plans of the AARP Program, responsive to Document Request No. 2.

c. Documents related to DUR and alleged irreparable injury, responsive to Document Request No. 3.

d. Documents related to the payments made and reports provided under the agreement between AARP and United, responsive to Document Request No. 4.

e. Documents related to the damages claimed by United and United's calculation

of damages, responsive to Document Request Nos. 6 -10, 13-15, 18-30, 32, 39, 57 and 58.

f. Documents related to contributions by third parties to the damages that United has claimed in this case, including payments by and agreements with ESI and other third parties, responsive to Document Request Nos. 5 and 31.

g. Other documents relevant to the claims and the defenses in this case, including meeting minutes and reports for the program at issue, e-mail, business plans for the program, comparisons of benefits between AARP Plan and other plans, attachments to e-mails, severance agreements, customer satisfaction surveys and work plans, audits and reports regarding the program, responsive to Document Request Nos. 33-35, 37-38, 40-45, 48-49, 51, 54, and 59-61.

h. To the extent that they are not included in the above categories, those documents identified by Sandra Mead in her deposition and not yet produced.

4. Plaintiff United has not abused the privilege designations under the Protective Order. All designations made by the parties throughout discovery shall stand. A numerical analysis does not reflect the nature of the document produced. Further, all parties will be able to share documents with their experts. There is therefore no need for in-house business people to view privileged documents.

5. Plaintiff United shall produce the following categories of documents for in camera review within ten days of this Order:

a. Documents in dispute regarding communications with ESI; and

b. Documents in Dispute regarding factual investigations requested or supervised by Plaintiff's counsel

Defendant represented that this would be approximately thirty documents. After the Plaintiff submits the documents, the Court will determine whether these documents constitute work product or are protected by the attorney-client privilege.

Dated: March 9, 2004

s/Arthur J. Boylan
Arthur J. Boylan
United States Magistrate Judge